BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: 415-813-6210
Facsimile: 415-813-6222

DESMARAIS LLP
Paul A. Bondor (admitted *pro hac vice*)
pbondor@desmaraisllp.com
Justin P.D. Wilcox (admitted *pro hac vice*)
jwilcox@desmaraisllp.com
Jonas R. McDavit (admitted *pro hac vice*)
jmcdavit@desmaraisllp.com
Lauren M. Nowierski (admitted *pro hac vice*)
lnowierski@desmaraisllp.com
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

*Attorneys for Defendant and Counterclaim Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **ASUS COMPUTER INTERNATIONAL,**<br>***Plaintiff*,**<br>**v.**<br>**ROUND ROCK RESEARCH, LLC,**<br>***Defendant.*** | **Civil Action No. 3:12-cv-02099-JST**<br>**JURY TRIAL DEMANDED**<br>**ROUND ROCK RESEARCH, LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |
| **ROUND ROCK RESEARCH, LLC,**<br>***Counterclaim Plaintiff*,**<br>**v.**<br>**ASUSTEK COMPUTER INC. AND ASUS COMPUTER INTERNATIONAL,**<br>***Counterclaim Defendants.*** | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................4

LEGAL STANDARDS ...........................................................................................................5

ARGUMENT.........................................................................................................................8

I. BOTTOM ANTIREFLECTION COATING ('276 PATENT) ..............................8

II. "PLANARIZING" ('353 PATENT)......................................................................10

III. "ACTIVE STANDBY MODE" ('949 PATENT) ................................................13

IV. "OVER" ('353 PATENT)......................................................................................15

V. "DIFFERENTIAL VOLTAGE FROM THE ARRAY OF NON-VOLATILE MEMORY CELLS" ('791 PATENT) .............................................17

VI. "ADJUSTABLE CURRENT CONSUMPTION BEING SET TO THE LOW POWER MODE IN RESPONSE TO A STATE OF THE MODE CONTROL BIT" ('053 PATENT) ............................................................19

CONCLUSION....................................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Fiber Techs. Trust v. J&L Fiber Servs.*, 674 F.3d 1365 (Fed. Cir. 2012) .......... 7

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246 (Fed. Cir. 2011) .......... 6, 17

*ASM Am., Inc. v. Genus, Inc.*, 60 F. Supp. 2d 827, 852 (N.D. Cal. 2002) .......... 12

*Augme Techs., Inc. v. Pandora Media, Inc.*, C.A. No. 11-379, 2012 U.S. Dist. LEXIS 172820 (D. Del. Dec. 5, 2012) .......... 8

*Bd. Of Trs. v. Roche Molecular Sys.*, 528 F. Supp. 2d 967 (N.D. Cal. 2007) .......... 12, 15

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989) .......... 5

*Fujitsu Ltd. v. Belkin Int'l*, No. 10-cv-03972, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012) .......... 6, 16

*ICU Med., Inc. v Alaris Med. Sys, Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009) .......... 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) .......... 5

*Kara Tech. Inc. v. Stamps.com Inc., 582 F.3d 1341 (Fed. Cir. 2009)* .......... 6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) .......... 6

*Nomura v. YouTube, LLC*, No. 11-01208, 2013 U.S. Dist. LEXIS 18292 (N.D. Cal. Feb. 8, 2013) .......... 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......... passim

*ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) .......... 7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) .......... 6, 7

Case3:12-cv-02099-JST Document52 Filed02/26/13 Page4 of 23

*Thorner v. Sony Computer Entertainment America LLC.*, 639 F.3d 1362 (Fed. Cir. 2012) ........ 5, 7, 8

*United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ........ 7

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........ 5, 7, 10

*White v. Dunbar, 119 U.S. 47 (1886)* ........ 6

*Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*, 692 F.3d 1272 (Fed. Cir. 2012) ........ 15

3

Round Rock's Opening Claim Construction Brief 3:12-cv-02099-JST

Plaintiff Round Rock Research, LLC ("Round Rock") respectfully submits this Opening Claim Construction Brief in support of its proposed constructions set forth in the parties'[1] Joint Claim Construction and Prehearing Statement. (D.I. 43.)

**INTRODUCTION**

ASUS filed this suit for a declaratory judgment, and Round Rock counterclaimed for infringement for six of Round Rock's U.S. patents: U.S. Patent Nos. 6,570,791 ("the '791 patent") (Ex. 1); 6,765,276 ("the '276 patent") (Ex. 2); 6,845,053 ("the '053 patent") (Ex. 3); 6,930,949 ("the '949 patent") (Ex. 4); 7,021,520 ("the '520 patent"); and 7,279,353 ("the '353 patent") (Ex. 5) (collectively "the Patents-in-Suit"). These six patents generally claim novel netbook, laptop, and desktop computer devices including dynamic random access memory ("DRAM") (specifically, double data rate ("DDR") memory), flash memory, and complementary metal-oxide semiconductor ("CMOS") image sensors.

The claims Round Rock is asserting are straightforward and clear. Most of the claim language consists of common English language words that any jury will understand, and therefore does not require construction. Round Rock's proposed constructions comport with the plain meaning of the claim language and the intrinsic evidence. In contrast, ASUS's proposed constructions seek to rewrite the claim language and unduly narrow the claimed inventions by importing specific embodiments or figures into the claims. Because claim constructions must be faithful to the intrinsic record and not unduly limit the scope of the claims to specific examples

---

[1] "Parties" collectively refers to Plaintiff and Counterclaim Defendant ASUS Computer International, Counterclaim Defendant ASUSTeK Computer Inc., (collectively, "ASUS"), and Round Rock.

or embodiments, the court should deny ASUS's attempts to introduce unnecessary limitations for various claim terms.

**LEGAL STANDARDS**

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)). Patent claims are the "metes and bounds" of that right. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) ). Accordingly, claim construction begins with and "remain[s] centered on the claim language itself." *Innova*, 381 F.3d at 1116.

Claim terms are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Indeed, the words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history at the time of the invention. *Thorner v. Sony Computer Entertainment America LLC*, 639 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313); *ICU Med., Inc. v Alaris Med. Sys, Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). The Federal Circuit has made clear that "[t]here are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim terms either in the specification or during prosecution." *Thorner*, 639 F.3d at 1365 (citing *Vitronics Corp.*, 90 F.3d at 1580. In cases where the claim terms are clear and would not be confusing to a jury, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

"To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)(citation omitted). The specification usually is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. But the specification should be used "for the purpose of better understanding the meaning of the claim . . . not for the purpose of changing it, and making it different from what it is." *White v. Dunbar*, 119 U.S. 47, 51-52 (1886). At all times, the invention should still be limited by the language of the claims, and not the specification. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1256 (Fed. Cir. 2011) ("[T]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.") (quoting *Markman*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc)). Indeed, a "patentee is entitled to the full scope of his claims, and [a Court] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (referring to unjustifiably importing limitations from the specification as a "cardinal sin of claim construction") (internal quotation marks omitted). Similarly, a Court will not confine the scope of the claims to the figures or drawings in a patent's specification. *Arlington Indus.*, 632 F.3d at 1254 (Fed. Cir. 2011) (finding drawings "need not illustrate the full scope of the invention"); *Fujitsu Ltd. v. Belkin Int'l*, No. 10-cv-03972, 2012 U.S. Dist. LEXIS 142102, at *39-40 (N.D. Cal. Sept. 28, 2012).

It is well-established that "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics*, 90 F.3d at 1582; *see also Phillips*, 415 F.3d at 1316 ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess."). If the patentee has elected to define a claim term in the specification or the prosecution history, "that definition shall apply even if it differs from the term's ordinary meaning." *Advanced Fiber Techs. Trust v. J&L Fiber Servs., Inc.*, 674 F.3d 1365, 1372 (Fed. Cir. 2012); *see also Phillips*, 415 F.3d at 1316 ("In such cases, the inventor's lexicography governs.").

It is also well-established that a "patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc.*, 299 F.3d at 1325; *see also Thorner*, 669 F.3d at 1366. However, to limit the claim's scope, the disavowal must be "clear and unmistakable." *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003); *see also Thorner*, 669 F.3d at 1366-67 ("To constitute disclaimer, there must be a clear and unmistakable disclaimer.").

Moreover, under well-established principles of claim construction, the court need not construe terms where the terms have plain, ordinary meanings that would not be confusing to a jury. Claim construction is a matter of resolving "disputed meanings and technical scope, to clarify when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Indeed, "[s]ometimes a

claim construction dispute may be resolved without adopting a construction of the disputed term other than 'plain and ordinary meaning.'" *Augme Techs., Inc. v. Pandora Media, Inc.*, C.A. No. 11-379, 2012 U.S. Dist. LEXIS 172820, at *11 n.4) (D. Del., Dec. 5, 2012) (citing *Thorner*, 669 F.3d at 1365-66); *see also Nomura v. YouTube, LLC*, No. 11-01208, 2013 U.S. Dist. LEXIS 18292, at *24-25 (N.D. Cal. Feb. 8, 2013) (citing cases for declining to construe the term "error").

**ARGUMENT**

## I. Bottom Antireflection Coating ('276 Patent)

| Claim(s) | Term | Round Rock's Proposed Construction | ASUS's Proposed Construction |
|---|---|---|---|
| '276 patent, claims 1, 2, 3, 4, 5, 7, 9, 10, 11 | "bottom antireflection coating" | "a coating that has an index of refraction, an extinction coefficient, and a thickness" | "coating that is disposed between a patterning resist layer and underlying reflective structures to enhance control of critical dimensions in the patterning resist layer by suppressing reflective notching, standing wave effects, and the swing ratio caused by thin film interference" |

The Court should construe the phrase "bottom antireflection coating" of claims 1-5, 7, and 9-11 to mean "a coating that has an index of refraction, an extinction coefficient, and a thickness." This construction is consistent with its commonly understood meaning in the field and is supported by the intrinsic record.

The '276 patent, entitled "Bottom Antireflection Coating Color Filter Process For Fabricating Solid State Image Sensors," relates to "solid state image sensors that include color filter arrays that are formed by a bottom antireflection coating (BARC) color filter process, and methods of making the same." (Ex. 2, col. 1:7-10.) The specification explains that the "bottom antireflection coating" "forms a protective layer that protects exposed areas of the active image

sensing device structure during formation of the color filter array and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure." (Ex. 2, at col. 2:3-8.) The specification further details various possible embodiments of the bottom antireflection coating ("BARC"). For example, the specification notes that it "may comprise a dyed organic film-forming material or a light-absorbing polymeric film-forming material. The bottom antireflection coating preferably has a thickness that is selected to improve optical transmission characteristics of one or more colors of the color filter array. In addition the bottom antireflection coating preferably is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm." (*Id.* at col. 2:32-40.) Of course, the scope of "bottom antireflection coating" is not so limited to the embodiments in the specification.

The intrinsic record supports Round Rock's proposed construction, which is consistent with how one of ordinary skill would understand the term "bottom antireflection coating" and does not unnecessarily limit the term, as does ASUS's proposed construction. First, the specification makes clear that the BARC indeed has an index of refraction. (*See, e.g.*, Ex. 2, at col. 4:51-54.) Moreover, a person of skill in the art would know that any substance would be assigned an index of refraction. Second, the specification also makes clear that the BARC has a thickness. (*E.g., id.* at col. 4:42-44 ("In general, BARC layer 16 may have a thickness that is selected to improve the optical transmission characteristics of one or more colors of color filter array 14. In particular, the BARC layer thickness may be selected so that the peak transmission at one or more target radiation wavelengths is increased relative to device structures that do not include BARC layer 16.").) The various embodiments in the patent disclose a variety of BARC layer thicknesses, however, the scope of the claim is not so limited to any particular range of thickness. (*E.g., id.* at col. 4:58-63, cl. 1, cl. 9.) Finally, although the intrinsic record does not expressly use the term "extinction coefficient," one of skill in the art would understand this to be another measurable optical property relating to light absorption and the index of refraction. The

intrinsic record makes clear that the BARC layer would in fact have this property. (*See, e.g.,id.*, at col. 4:23-28, 51-54.)

ASUS's construction attempts to limit the scope of the claims using the term "bottom antireflection coating" by proposing a construction taken from a non-limiting statement in the prosecution history. However, the '276 patent prosecution history does not so limit the scope of the "bottom antireflection coating" as ASUS sets forth in its proposed construction. ASUS cites the September 5, 2002 Amendment which does not amount to a special definition. *Vitronics*, 90 F.3d at 1582,; see also *Phillips*, 415 F.3d at 1316 ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." (emphasis added)). Indeed, the part of the September 5, 2002 Amendment (Ex. 8) from which ASUS directly took its proposed construction was an introduction section to attorney argument explaining that "bottom antireflection coating is a well-known term of art." (Ex. 8 at 2.) The patentee was not in any way attempting to "be his own lexicographer." To the contrary, this section demonstrates that the patentee intend to use the term "bottom antireflection coating" consistently with its "well-known" plain and ordinary meaning.

Because Round Rock's proposed construction does not unduly narrow the term and because the prosecution history makes clear that the patentee intended to use the term consistently with its "well-known" meaning, the Court should decline to adopt ASUS's proposed construction and should adopt Round Rock's.

## II. "Planarizing" ('353 Patent)

| Claim(s) | Term | Round Rock's Proposed Construction | ASUS's Proposed Construction |
|---|---|---|---|
| '353 patent, claims 1, 3, 5, 13, 14, 15, 16, 17, 20 | "planarizing" | Plain meaning<br><br>or, in the alternative:<br><br>"processing or preparing by eliminating convex | "uniformly flattening" |

| | | and/or concave regions" | |
|---|---|---|---|

The Court should not construe "planarizing" because the term has a meaning that is commonly understood in the art, and the intrinsic record does not alter that meaning in any way. In the alternative, if the Court determines that construction is required, the Court should construe "planarizing" to mean "processing or preparing by eliminating convex and/or concave regions." This is consistent with the '353 patent specification and prosecution history.

The '353 patent, entitled "Passivation Planarization," is directed in particular to "a color CMOS imager with a passivation layer providing a surface for a filter array." (Ex. 5, at col. 1:5-7.) The '353 patent specification explains that a conventional CMOS imager comprises many layers, including insulator layers and metallization layers. (*Id.* at col. 1: 11-29.) The patent specification makes clear that depositing various layers of a conventional CMOS imager pixel cell can cause a "bread-loafing effect." (*Id.*, at col. 1:11-58.) The patent specification later explains the "bread-loafing effect": the "'bread-loaf' regions have a concave upper surface" and "[t]he 'valley' regions have a convex upper surface." (*Id.* at col. 4:41-47.) To remedy this "bread-loafing effect," this layer must be planarized. (*E.g.*, *id.* at col. 5:3-6.) The patent's abstract explains that examples of planarization processes include "chemical mechanical polishing, mechanical abrasion, or etching." (*Id.* at Abstract.) The patent specification later specifies that additional examples of planarization processes include "spin-on-glass planarization, other mechanical planarization or etching, such as reactive ion etching, ion beam milling, plasma etching, or an anisotropic etching." (*Id.* at col. 4:65-5:6.)

The intrinsic evidence makes clear that the term "planarizing" does not require construction because one of ordinary skill in the art at the time the '353 patent was filed would

have understood the term "planarization." Moreover, the term "planar" itself is a commonly understood English word which would not confuse a jury. *E.g.*, *Bd. Of Trs. v. Roche Molecular Sys.*, 528 F. Supp. 2d 967, 973 (N.D. Cal. 2007) (declining to construe a term because it was "neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history"). Further, the intrinsic record shows that the patentee has neither set out to be his own lexicographer nor disclaimed the scope of the term in the specification or prosecution history. In other words, the patent's specification and prosecution history use the term consistently with its commonly understood meaning. Accordingly, because the intrinsic record does not indicate in any way that the plain and ordinary meaning of the term is altered, the court should decline to construe this term.

Alternatively, if the Court determines that this term does, indeed, require construction, the Court should construe the term consistent with its commonly understood meaning and the full scope of the claims: "processing or preparing by eliminating convex and/or concave regions." (*See, e.g.*, Ex. 6 at col. 4:41-47, col. 5:3-6.) Round Rock's alternate construction is faithful to the intrinsic record without introducing any unnecessary confusion.

Contrary to Round Rock's proposed alternate construction, ASUS's proposed construction introduces unnecessary confusion to a commonly understood term. By using the word "uniformly" in its definition, ASUS introduces the confusion as to what extent the term requires uniformity. *See, e.g.*, *ASM Am., Inc. v. Genus, Inc.*, 260 F. Supp. 2d 827, 852 (N.D. Cal. 2002) (declining to adopt a proposed construction which inserted "uncertainty into the definition of a precise term"). Moreover, the intrinsic record does not require adding such an ambiguous term into the construction of "planarization." Because there is no need to introduce ambiguity

and uncertainty into the definition for "planarization," the Court should decline to adopt ASUS's proposed construction.

### III. "Active standby mode" ('949 Patent)

| Claim(s) | Term | Round Rock's Proposed Construction | ASUS's Proposed Construction |
|---|---|---|---|
| '949 patent, claims 5-7, 20 | "active standby mode" | "the mode when CKE is high and there is at least one row active in any memory bank " | "mode where a delay compensation circuit is suspended in active power down mode" |

The Court should construe "active standby mode" to mean "the mode when CKE is high and there is at least one row active in any memory bank." This construction is consistent with the specification and the prosecution history of the '949 patent.

The '949 patent, entitled "Power Savings In Active Standby Mode," is directed to achieving power savings in dynamic random access memory ("DRAM") memory devices when those devices are in a "standby" or a "power-down" mode of operation. (Ex. 4 at col. 1:6-10.) The '949 patent specification explains that "[i]n a typical DRAM, the clock enable (CKE) is used to place the device in a power-down or standby mode." (*Id.* at col. 3:26-27.) When CKE is low, "power-down will occur." Conversely, when CKE is high, the DRAM exits "power-down mode" and enters a "standby" mode. (*Id.* at col. 5:14-17.) Thus, a DRAM "standby mode" is indicated by a high CKE signal. In addition, the specification further explains that an "active" state occurs when "there is a row active in any memory bank" when a DRAM transitions into either standby or power-down mode. (*Id.* at col. 3:30-34.) In short, the '949 specification plainly supports Round Rock's proposed construction that "active standby mode" is "the mode when CKE is high and there is at least one row active in any memory bank."

The prosecution history further supports Round Rock's proposed construction. During the prosecution of the '949 patent, the original assignee of the patent—Micron—disclosed a DDR technical manual to the Patent Office, which was considered by the patent examiner, placed in the file history, and listed on the face of the patent. Significantly, that technical manual, entitled "Technical Note: Calculating Memory System Power for DDR," defines "Active Standby" as the state when "CKE = High" and "One bank" of memory is active. (Ex. 6 at 10 (RRR-ASUS-NDCAL0002854).) Thus, the technical manual is additional intrinsic evidence that further supports Round Rock's proposed construction. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231 (Fed. Cir. 2011) ("prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence").

Defendants' proposed construction is not supported by the intrinsic evidence or the plain language of the claims. As an initial matter, Defendants apparently conflate "active standby mode" with "active <u>power-down</u> mode." But, as explained above, the specification and file history make clear that those two modes are separate and distinct. Indeed, the specification plainly discloses that "active power-down" mode occurs when CKE is low. By contrast, "active standby mode" occurs when CKE is high. Furthermore, neither the specification nor the plain language of claims 5 through 7 and 20 disclose that "active standby mode" somehow includes a suspended delay compensation circuit. Indeed, claims 5 through 7 and 20—which include the claim term "active standby mode"—make no mention of a delay compensation circuit or a delayed locked loop. By contrast, claim 13 is directed to "suspending operation of a delay locked loop during the active power-down mode of operation." *See also* claims 9, 14-16. In short, Asus improperly seeks to incorporate limitations from other claims directed to "active power-down mode" into the construction of "active standby mode" *See Woodrow Woods &*

*Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1283-85 (Fed. Cir. 2012) (rejecting constructions that "adopt limitations not defined in, or required by the specification.") .

Accordingly, the Court should adopt Round Rock's proposed construction, which is consistent with the plain language of the claims and supported by the intrinsic evidence.

### IV. "Over" ('353 Patent)

| Claim(s) | Term | Round Rock's Proposed Construction | ASUS's Proposed Construction |
|---|---|---|---|
| '353 patent, claims 1, 13, 20, 21 | "over" | Plain meaning<br><br>Or, in the alternative, "above" | "on top of and without intervening structures" |

The term "over" does not require construction because is a commonly used English word that has a plain and ordinary meaning that is consistent with the '353 patent claims, specification, and prosecution history. There is nothing in the patent claims, specification, or prosecution history that indicates the patentee intended to disavow or limit the scope of "over" in any way. *E.g.*, *Thorner*, 669 F.3d at 1366-67 ("To constitute disclaimer, there must be a clear and unmistakable disclaimer."). Further, the term "over" would neither be unfamiliar nor confusing to a jury. *Bd. Of Trs.*, 528 F. Supp. 2d at 973 (finding the terms "therapeutically effective" and "therapeutically ineffective" did not require construction because "they are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history"); *see also Phillips*, 415 F.3d at 1314 (holding that in cases where the claim terms are clear and would not be confusing to a jury, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words"). Contrary to ASUS's proposed construction, the patent specification uses the term "over" consistently with its plain and ordinary meaning. (*E.g.*, Ex. 5 at col. 2:62-col.3:4, col. 3:38-40, col. 4:15-20, 35-41.) Nothing in the prosecution history evinces any expressions of manifest exclusion or restriction. Moreover, the patent specification uses the words "directly over" as opposed to "over" in a few instances to

differentiate when the patentee intended to be more specific than simply "over." (*E.g.*, *id.* at 4:51-53, Fig. 3A.)

In the alternative, should the Court determine that construction is necessary, the Court should adopt Round Rock's proposed alternative construction, "above." Such a construction is consistent with the plain and ordinary meaning of the commonly understood word "over", as is evidenced by that definition being found in general purpose dictionaries. *See Phillips v. AWH Corp.*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . . In such circumstances, general purpose dictionaries may be helpful.") (citation omitted); Ex 7, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1378 (2001) ("'Over' – "1. Above in place or position.").

ASUS's proposed construction for the term "over" is a thinly-veiled attempt to improperly limit the scope of "over" to specific embodiments in the patent. *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Specifically, in support of its construction, ASUS cites Figures 2 through 10 and their accompanying descriptions. (D.I. 43, at 61-62.) The patent's specification makes clear that these figures simply depict specific embodiments of the invention, and that the claims are not so limited by these embodiments. (Ex. 5 at 2:52-61.)

In any event, it is improper to import limitations from a specific embodiment in a patent's figures to limit a claim's scope. *See, e.g.*, *Fujitsu Ltd. v. Belkin Int'l*, No. 10-cv-03972, 2012 U.S. Dist. LEXIS 142102, at *39-40 (N.D. Cal. Sept. 28, 2012) ("[I]t is equally well established that 'patent coverage is not necessarily limited to inventions that look like the ones in the figures. To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with danger.'") (quoting *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323,

1333 (Fed. Cir. 2007)). A patent's drawings "need not illustrate the full scope of the invention." *Arlington Indus.*, 632 F.3d at 1254,. Indeed, ASUS cites nothing in the '353 patent itself, its claims, or its prosecution that supports limiting the term "over" in any way. Nor is there any evidence that shows the patentee acted as its own lexicographer or disclaimed the full scope of the term "over." Thus, there is no reason for the Court to construe "over" in any way that would be inconsistent with its plain and ordinary meaning.

Accordingly, the Court should decline to adopt ASUS's proposed construction and find that no construction is necessary.

### V. "Differential voltage from the array of non-volatile memory cells" ('791 patent)

| Claim(s) | Term | Round Rock's Proposed Construction | ASUS's Proposed Construction |
|---|---|---|---|
| '791 patent, claims 1, 4, 13 | "differential voltage from the array of non-volatile memory cells" | "determines the difference between the voltage in the array of nonvolatile memory cells and a reference voltage" | "difference in voltage between two bit lines from the array of non-volatile memory cells" |

The Court should construe the phrase "differential voltage from the array of non-volatile memory cells" of claim 1 to mean "the difference between the voltage in the array of nonvolatile memory cells and a reference voltage." This construction is supported by the plain language of the claim and the specification.

The '791 patent specification discloses multiple embodiments for detecting differential voltages (or "voltage-sensing scheme(s)") in connection with non-volatile memory cells. (Ex. 1 at col. 2:46-48.) The specification describes one embodiment where the voltage in the array of nonvolatile memory cells is compared with a reference voltage, which is described as an improvement to the conventional technique of comparing currents. (Ex. 1 at col. 5:10-12

("[C]onventional flash memories use a current sensing technique that compares a current conducted by a memory to a reference current. This sensing technique is slower than a DRAM differential voltage-sensing scheme.").) The specification also describes a different embodiment that compares the voltage between two digit lines (or bit lines) coupled to a memory cell. (Ex. 1 at col. 5:18 ("In one embodiment, differential digit lines are precharged to differential voltage levels prior to accessing a memory cell. For example, an active digit line that is coupled to a read memory cell can be pre-charged to a voltage that is greater than a complementary digit line.").)

The pertinent language of claim 1 reads: "sense amplifier circuitry detects a differential voltage ***from the array of non-volatile memory cells***." (emphasis added). The plain language indicates that the differential voltage is with respect to the non-volatile memory cells. Therefore, the phrase "differential voltage from the array of non-volatile memory cells" is directed to and should be construed consistent with the first embodiment to mean: "the difference between the voltage in the array of nonvolatile memory cells and a reference voltage."

ASUS, on the other hand, contends that the phrase should be construed to mean "difference in voltage between two bit lines from the array of non-volatile memory cells." In doing so, Asus seeks to rewrite the plain language of claim 1 and improperly limit the voltage differential of claim 1 to the second embodiment. But claim 1 does not include "bit lines" or detecting a "difference in voltage between two bit lines." By contrast, claim 6 specifically requires that the "sense amplifier circuitry detect[] a differential voltage between bit lines." Thus, the unambiguous language of claims 1 and 6 shows that the two claims are directed to separate and distinct methods of detecting differential voltages. Because the terms of both claims should be construed to give effect to those different methods, *Phillips*, 415 F.3d at 1314

("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms."), the Court should reject ASUS's proposed construction that seeks to incorporate the differential voltage limitations of claim 6 into claim 1.

Accordingly, term "differential voltage from the array of non-volatile memory cells" is properly construed in the context of claim 1 to mean "the difference between the voltage in the array of nonvolatile memory cells and a reference voltage."

## VI. "Adjustable current consumption being set to the low power mode in response to a state of the mode control bit" ('053 Patent)[2]

| Claim(s) | Term | Round Rock's Proposed Construction | ASUS's Proposed Construction |
|---|---|---|---|
| '053 patent, claim 1 | "Adjustable current consumption being set to the low power mode in response to a state of the mode control bit" | Round Rock proposed the phrase "adjustable current consumption being set to the low power mode" for construction. The correct term for construction is "adjustable current consumption being set to the low power mode," which should be construed as follows:<br><br>Plain meaning<br><br>or, in the alternative: | "the amount of current consumed being dependent on the chosen mode as determined by the state of a mode control bit, where the mode chosen is one in which a reduced quantity of bits is programmed at once" |

[2] Round Rock does not believe this term should be briefed. (D.I. 43 at n. 2 ("During a January 11, 2013 meet and confer, the parties agreed that the term "active standby mode" is one of the most significant terms in dispute as required by Patent Local Rule 4-3. Given that the parties agreed to one term, Round Rock submits that each party is entitled to name an additional two terms pursuant to Local Patent Rule 4-3(c) and the Court's October 1, 2012 Order re Schedule for Claim Construction (D.I. 38). The two additional terms Round Rock proposes are "over" ('353 patent) and "differential voltage from the array of non-volatile memory cells" ('791 patent)"). However, in view of preserving its argument in the event that the Court determines this term requires briefing, Round Rock sets forth its briefing on this term here.

| | | "setting the device to a mode for low current consumption" | |
|---|---|---|---|

The phrase "adjustable current consumption being set to the low power mode" does not require the Court's construction. It appears as part of an element that describes the effect of changing the state of the claimed mode control bit. (Ex. 3 at claim 1.) The phrase describes that changing the state of the mode control bit will adjust the current consumption of the claimed memory device. It uses plain, straightforward English words that require no additional construction.

To the extent that the Court determines construction is required, the Court should adopt Round Rock's alternative construction. That construction explains that setting the mode control bit to a low power mode reduces the current consumption by, for example, reducing the memory device data programming rate:

> Still other embodiments use different methods for ***varying the current use*** by the memory device. For example, ***setting the mode control bit to a low power mode*** may increase the time between programming pulses such that data throughput is reduced.

(*Id.* at col. 5:4-9 (emphasis added); *see also id.* at cols. 1:66-2:3, 5:28-31, 5:47-50.)

ASUS improperly seeks to abandon the plain meaning in favor of rewriting the claims to include ambiguous and extraneous language. *See Northern Telecom Ltd. v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("The plain and ordinary meaning of claim language controls, unless that meaning renders the claim unclear or is overcome by a special definition that appears in the intrinsic record with reasonable clarity and precision.") (emphasis added); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[Claim construction] is not an obligatory exercise in redundancy."). For example, ASUS seeks to add an

additional limitation not found in claim 1: "where the mode chosen is one in which a reduced quantity of bits is programmed at once." ASUS's proposed construction, far from providing any clarity or capturing a special definition, merely adds ambiguity and substantive limitations to claim language that is already clear. This Court should therefore reject ASUS's proposed construction and adopt Round Rock's proposed construction because it is consistent with the plain language of the claims and the specification.

## CONCLUSION

For the foregoing reasons, Round Rock respectfully requests that, to the extent constructions are necessary, the Court adopt its proposed constructions.

DATED: February 26, 2013

By: */s/* Peter H. Chang

**BLACK CHANG & HAMILL LLP**
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: 415-813-6210
Facsimile: 415-813-6222

*Local Counsel for Plaintiff*
*Round Rock Research, LLC*

Paul A. Bondor (admitted *pro hac vice*)
pbondor@desmaraisllp.com
Justin P.D. Wilcox
jwilcox@desmaraisllp.com
Jonas R. McDavit (admitted *pro hac vice*)
jmcdavit@desmaraisllp.com
Lauren M. Nowierski (admitted *pro hac vice*)
lnowierski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

*Lead Counsel for Plaintiff*
*Round Rock Research, LLC*