BLACK CHANG & HAMILL LLP
Peter H. Chang (SBN 241467)
pchang@bchllp.com
Bradford J. Black (SBN 252031)
bblack@bchllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: 415-813-6210
Facsimile: 415-813-6222

DESMARAIS LLP
Paul A. Bondor (admitted *pro hac vice*)
pbondor@desmaraisllp.com
Justin P.D. Wilcox (admitted *pro hac vice*)
jwilcox@desmaraisllp.com
Jonas R. McDavit (admitted *pro hac vice*)
jmcdavit@desmaraisllp.com
Lauren M. Nowierski (admitted *pro hac vice*)
lnowierski@desmaraisllp.com
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

*Attorneys for Defendant and Counterclaim Plaintiff*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **ASUS COMPUTER INTERNATIONAL,** *Plaintiff,* v. **ROUND ROCK RESEARCH, LLC,** *Defendant.* | Civil Action No. 3:12-cv-02099-JST **JURY TRIAL DEMANDED** **ROUND ROCK RESEARCH, LLC'S REPLY CLAIM CONSTRUCTION BRIEF** |
| **ROUND ROCK RESEARCH, LLC,** *Counterclaim Plaintiff,* v. **ASUSTEK COMPUTER INC. AND ASUS COMPUTER INTERNATIONAL,** *Counterclaim Defendants.* | |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................1

    I.    "BOTTOM ANTIREFLECTION COATING" ('276 PATENT)............................1

    II.   "PLANARIZING" ('353 PATENT) ........................................................................2

        A.    The Court Need Not Construe "Planarizing" Because the '353 Patent Uses this Term Consistent with its Plain Meaning ......................................2

        B.    If the Court Determines That "Planarizing" Needs Construction, The Court Should Adopt Round Rock's Proposed Construction, Which Is Consistent With The Intrinsic Evidence. .......................................................3

        C.    Summary Judgment of Non-Infringement Would Not Be Appropriate Regardless of Which Construction the Court Adopts................................5

    III.  "ACTIVE STANDBY MODE" ('949 PATENT) ......................................................5

        A.    ASUS's Proposed Construction Violates the Principle of Claim Differentiation..............................................................................................6

        B.    ASUS Incorrectly Seeks to Limit its Proposed Construction to a Single Embodiment ...................................................................................7

        C.    Round Rock's Construction Is Supported By the Intrinsic Record .............8

        D.    Summary Judgment of Non-Infringement Would Not Be Appropriate Regardless of Which Construction the Court Adopts................................9

    IV.  "OVER" ('353 PATENT).........................................................................................9

        A.    ASUS's Proposed Construction Attempts to Impermissibly Import Limitations from Embodiments into the Claims and Inappropriately Considers Only Part of the Specification........................................................9

        B.    Contrary to ASUS's Assertion, Round Rock's Proposed Construction Comports with Plain Meaning and the Intrinsic Record............................10

        C.    Construction of "Over" And Its Impact on Summary Judgment...............11

    V.   "DIFFERENTIAL VOLTAGE FROM THE ARRAY OF NON-VOLATILE MEMORY CELLS" ('791 PATENT) .....................................................................11

        A.    ASUS's Construction Is Improper Because It Violates the Doctrine of Claim Differentiation..................................................................................11

        B.    Round Rock's Proposed Construction Does Not Read Out "From the Array of Non-Volatile Memory Cells" and Is Consistent with the Intrinsic Record............................................................................................12

        C.    ASUS's Allegations Regarding Summary Judgment Are Incorrect..........13

VI. "ADJUSTABLE CURRENT CONSUMPTION BEING SET TO THE LOW POWER MODE IN RESPONSE TO A STATE OF THE MODE CONTROL BIT" ('053 PATENT) ..........................................................................................13

    A. ASUS's Proposed Construction Adds Unnecessary and Confusing Claim Limitations Without Intrinsic Support ..............................................13

    B. If the Court Decides To Construe the Claim Term, Round Rock's Proposed Construction Should Be Adopted Because It Is Consistent With the Term's Ordinary Meaning and the Intrinsic Record ....................14

    C. ASUS's Allegations Regarding Summary Judgment Are Incorrect ..........14

CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*,
   224 F.3d 1308 (Fed. Cir. 2000) .................................................................................................. 12

*Fujitsu Ltd. v. Belkin Int'l*,
   No. 10-cv-03972, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012) .............................. 10

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) .................................................................................................... 7

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
   177 F.3d 968 (Fed. Cir. 1999) ...................................................................................................... 6

*Kraft Foods, Inc. v. Int'l Trading Co.*,
   203 F.3d 1362 (Fed. Cir. 2000) .................................................................................................... 6

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ........................................................................................................ 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................................................... 2, 7, 13

*Seachange Int'l, Inc. v. C–COR Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) .................................................................................................... 6

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
   831 F.2d 1017 (Fed. Cir. 1987) .................................................................................................... 6

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ................................................................................................ 2, 7

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) .................................................................................................... 2

Plaintiff Round Rock Research, LLC ("Round Rock") respectfully submits this Reply Claim Construction Brief in further support of its Opening Claim Construction Brief (D.I. 52) and its proposed constructions set forth in the parties' Joint Claim Construction and Prehearing Statement. (D.I. 43.)

## INTRODUCTION

Round Rock's proposed claim constructions are consistent with the claim language and specification, other intrinsic records, and the disputed terms' plain and ordinary meanings.  By contrast, ASUS seeks to manufacture non-infringement positions by departing from the plain meaning of the terms and seeking to limit the disputed terms to specific embodiments disclosed in the patent specification in contravention of the fundamental principles of claim construction. In addition, ASUS departs from the intrinsic record, improperly relying upon attorney argument and mischaracterizations regarding the patents-in-suit.  In short, the Court should reject ASUS's proposed constructions and adopt the constructions set forth by Round Rock.

## ARGUMENT

### I.   "Bottom Antireflection Coating" ('276 Patent)

Having reviewed and analyzed ASUS's claim construction arguments regarding the term "bottom antireflection coating," Round Rock withdraws its opposition to ASUS's proposed construction.  However, ASUS's contention that summary judgment is somehow appropriate based on Round Rock's infringement contentions is flatly incorrect.  (D.I. 55 at 10-11.)  Round Rock's Preliminary Infringement Contentions clearly put ASUS on notice as to what it contends is the "bottom antireflective coating," and this coating would satisfy the "bottom antireflective coating" limitation under ASUS's definition.  In addition, ASUS's argument regarding whether it would be entitled to summary judgment based on Round Rock's preliminary infringement contentions is premature:  expert discovery has not yet commenced, fact discovery is not yet

closed, and the Northern District of California Local Patent Rules allow a party to amend or supplement its infringement contentions for good cause.  N.D. Cal. Pat. L. R. 3-6.

## II. "Planarizing" ('353 Patent)

### A. The Court Need Not Construe "Planarizing" Because the '353 Patent Uses this Term Consistent with its Plain Meaning

As Round Rock set forth in its opening brief, "planarizing" is a term commonly understood in the art, and the '353 patent uses this term consistently with that commonly understood meaning, which would be readily apparent to a judge and a jury.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

The intrinsic record demonstrates that the Court need not construe the term "planarizing" because the patentee demonstrated no intent to deviate from its ordinary meaning.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) ("[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.").  The '353 patent specification

acknowledges that "planarizing" is a commonly used and understood term.  (*See, e.g.*, Ex. 5[1] at Abstract ("the uneven, non-uniform passivation layer is subject to a planarization process such as chemical mechanical polishing, mechanical abrasion, or etching"); col. 4:65 – col. 5:6 ("The desired flat upper surface 10 can be achieved by a planarization process . . . .  If planarization by etching is used, the passivation layer to be etched must first be coated with resist or spin-on-glass prior to etching *to produce a planar surface*."); col. 5:49-51 ("Since spin-on-glass layer 12 and oxide passivation layer 11 are *planarized simultaneously*, *the resulting surface 13 is planar*.").)[2]  Moreover, nothing in the patent itself or the prosecution history suggests in any way that the patentee intended to deviate from the ordinary and accustomed meaning of "planarizing."  Even the intrinsic evidence ASUS cites in its opposition brief confirms that the term "planarizing" is used consistently with its plain and ordinary meaning.  (D.I. 55 at 12-13.)  Indeed, ASUS fails to set forth any evidence showing that the patentee intended to depart from the plain and ordinary meaning of the term.  Accordingly, the Court need not construe the term "planarizing" and it should be accorded its plain and ordinary meaning.

> **B. If the Court Determines That "Planarizing" Needs Construction, The Court Should Adopt Round Rock's Proposed Construction, Which Is Consistent With The Intrinsic Evidence.**

If the Court determines that "planarizing" does require construction, the Court should adopt Round Rock's proposed alternate construction, which is consistent with both the term's plain and ordinary meaning and the intrinsic record.  Round Rock's proposed alternate construction, "processing or preparing by eliminating convex and/or concave regions" accords with the intrinsic record because, unlike ASUS's proposed definition, it captures all

---

[1] All exhibit numbers refer to the Exhibits to the Declaration of Peter H. Chang in Support of [52] Brief Opening Claim Construction Brief (D.I. 53).
[2] Emphasis has been added unless otherwise noted.

embodiments in the patent and because it does not impose any unnecessary limitations on the scope of the claims, such as the degree of uniformity required.

ASUS argues that Round Rock's proposed construction is improper because (a) the proposed construction makes "no distinction" between eliminating convex or concave regions, and (b) the '353 patent does not teach planarizing as a "process of filling out the concave regions." But ASUS is wrong on both counts. Indeed, the '353 patent *does* teach that planarization can be achieved by eliminating both concave and convex regions. For example, the specification makes clear that the scope of the claims includes "spin on glass planarization." (Ex. 5, col. 4:65 – col. 5:3 ("*The desired flat upper surface 10 can be achieved by a planarization process such as* chemical mechanical polishing (CMP), s*pin-on-glass planarization*, other mechanical planarization or etching, such as reactive ion etching, ion beam milling, plasma etching, or an anisotropic etching after deposition of the oxide passivation layer.").) The specification later describes a specific embodiment of the invention, which uses spin on glass planarization to both eliminate the concave *and* convex regions:

> In another embodiment of the invention shown in FIG. 8, a flowable material such as spin-on-glass material may be applied to the oxide passivation layer 11, then heated to form the spin-on-glass layer 12 over the oxide passivation layer 11. *The spin-on-glass layer 12 is provided* over the uneven surface 15 of oxide passivation layer 11 *such that the spin-on-glass material fills the "valley" regions 17 and covers the "bread-loaf" regions 16*.

(*Id.* at col. 5:58 - 65.) Although the specification did not use the word "planarize" in describing this embodiment, because the specification makes clear that "spin on glass planarization" is one type of planarization envisioned by the patentee, and because the written description of this embodiment describes "spin on glass planarization" in such a way that includes filling in the concave regions, it is clear that Round Rock's alternate proposed construction is both faithful to the plain meaning of the term and the intrinsic record.

Moreover, as Round Rock set forth in its opening brief, ASUS's proposed construction introduces unnecessary confusion and limitation to this commonly understood claim term. By interjecting the word "uniformly" into its proposed construction, ASUS attempts to add an unsupported limitation to "planarizing," which may be confusing to a jury. The intrinsic evidence reveals that the patentee did not demonstrate any intent to limit the scope of "planarizing" in such a way. Indeed, nothing in the specification, claims, or prosecution history indicates that the patentee intended that the planarization must occur "uniformly." Although ASUS points to a few examples in which the patent specification uses the word "uniform" (*e.g.*, D.I. 55 at 12-13), none of these examples constitute a clear disavowal of claim scope. In fact, in one of the examples provided by ASUS, the specification describes the invention as providing a "***more*** uniform upper surface," not a ***uniform*** upper surface. (D.I. 55 at 12 (citing Ex. 5 at col. 1:63 – 2:2).)

Because ASUS's construction both introduces confusion to a commonly understood term, and because it provides unnecessary limitations unsupported by the intrinsic record, if the Court determines that "planarization" requires construction, it should adopt Round Rock's proposed construction, which is faithful to the specification and the intrinsic record as a whole.

### C. Summary Judgment of Non-Infringement Would Not Be Appropriate Regardless of Which Construction the Court Adopts

ASUS argues that if the Court adopts its construction for "planarizing," summary judgment of non-infringement would be appropriate. Despite ASUS's argument to the contrary, Round Rock's infringement contentions make clear that the parts of the accused products that are planarized would be "planarized" under either Round Rock's or ASUS's construction. Moreover, as explained in Section I, ASUS's argument regarding whether it would be entitled to summary judgment based on Round Rock's preliminary infringement contentions is premature.

### III. "Active standby mode" ('949 Patent)

### A. ASUS's Proposed Construction Violates the Principle of Claim Differentiation

ASUS's proposed construction and supporting arguments run afoul of the fundamental claim construction principle of claim differentiation. The doctrine of claim differentiation is a presumption that two independent claims have different scope when different words or phrases are used in those claims. *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1365–69 (Fed. Cir. 2000); *see also Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Indeed, the doctrine of claim differentiation results from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C–COR Inc.*, 413 F.3d 1361, 1368–69 (Fed. Cir. 2005) (quoting *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999)).

ASUS argues that the construction of "active standby state" should include the limitation that "a delay compensation circuit is suspended." (D.I. 55 at 16-18.) But the asserted claims that include the term "active standby state"—claims independent claims 5 and 20 and dependent claims 6 and 7—make no mention of any delay compensation circuit. By contrast, independent claims 12 and 17 and dependent claims 13-16 and 18-19 specifically claim delay compensation circuits, such as a "delay elements" and "delay locked loops," and suspending those delay circuits in certain instances. For example, claim 13 reads in part: "suspending operation of a delayed locked loop during ***active power-down*** mode of operation." (emphasis added). Indeed, these claims are also directed to the suspension of delay circuits in "active power-down mode," not "active standby mode." Significantly, ASUS makes no attempt to square its proposed construction with the doctrine of claim differentiation in light of the plain language of claims 12-19. In any event, based upon the unambiguous language of asserted claims 5-7 and 20, the

patentee plainly sought to claim an active standby mode that is separate and distinct from the operation of a delay circuit.

### B. ASUS Incorrectly Seeks to Limit its Proposed Construction to a Single Embodiment

ASUS's arguments improperly focus on a single embodiment disclosed in the specification of the '949 patent—the "delay compensation circuit." (D.I. 55 at 16-18, 20.) Although the '949 patent specification discloses the implementation of a delay compensation circuit and suspending that circuit as one means of power-savings (Ex. 4 at col. 3:49-65), the specification also discloses different power-savings embodiment that do not require the use of a delay compensation circuit. Indeed, the specification discloses that if a device can exit "an active power-down" mode in one or more than one clock cycle, "significant power savings may be achieved. (*Id.* at col. 4:10-17.) The specification further discloses an additional embodiment of an "active standby power savings mode" that can be programmed to "exit from standby mode with more than one clock cycle." (*Id.* at col. 4:18-29 ("[a]ccording to one aspect of the present invention").)

A "patentee is entitled to the full scope of his claims, and [a Court] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Teleflex*, 299 F.3d at 1324 (referring to unjustifiably importing limitations from the specification as a "cardinal sin of claim construction") (internal quotation marks omitted). As explained above, the specification does not limit any mode to the use of a delay compensation circuit, but teaches multiple methods of achieving power savings. Therefore, the Court should reject ASUS's

attempt to limit "active standby mode" to the "delay compensation circuit" embodiment disclosed in the specification.

### C.  Round Rock's Construction Is Supported By the Intrinsic Record

The intrinsic record plainly supports Round Rock's proposed construction: "the mode when CKE is high and there is at least one row active in any memory bank." The '949 patent specification explains that an "active" state occurs when "there is a row active in any memory bank" when a DRAM transitions into either standby or power-down mode. (Ex. 4 at col. 3:30-34.) Furthermore, the patent specification explains that depending upon the "CKE" signal, a device will transition into a power-down (LOW) or standby (HIGH) mode. (*Id.* at col. 3:26-27, 5:14-17.) The transition into different modes based upon the clock signal is reinforced by prior art disclosed to the Patent Office during prosecution of the '949 patent. Indeed, the Micron Technical Note confirms that "Active Standby" occurs when "CKE = High" and "One bank" of memory is active. (Ex. 6 at 10 (RRR-ASUS-NDCAL0002854).)[3]

ASUS incorrectly argues that Round Rock's proposed construction is inconsistent with the specification because it "reads on embodiments outside of and not associated with power-down mode (i.e., it reads on a mode of normal memory operation)." (D.I. 55 at 19.) As explained above, the '949 patent specification discloses multiple means of power-savings, including "the exit from standby mode with more than one clock cycle." (Ex. 4 at col. 4:30-33.) And, asserted claims 5-7 and 20—which include the term "active standby mode"—are plainly directed to this embodiment because they claim "transitioning from an active standby mode to a normal operation mode … in a period of more than one clock cycle." (*Id.* at col. 5:62-67,

---

[3] ASUS argues that the Micron Technical Note describes only an "active standby current," not an "active standby mode." (D.I. 55 at 19.) This argument is meritless. The Micron Technical Note discloses "Parameter/Condition," which is consisted with a mode. Furthermore, its disclosures for "Pre-Charge Power-Down Standby Current" (where CKE is Low and all memory banks are idle) and "Active Power-Down Standby Current" (where CKE is Low and at least one memory bank is active) are entirely consistent with the disclosures in the '949 patent specification. (*Compare* Ex. 6 at 11, *with* Ex. 4 at col. 3:25-34.)

col.7:6-11.) Furthermore, the Micron Technical Manual plainly shows that one of skill in the art at the time the patent would understand that "active standby mode" is different than and achieves significant power savings over normal memory operation. Indeed, normal operation required "operating currents" of 90 to 110 mA while "active standby" required a current of only 35 to 45 mA. (Ex. 6 at 11.)

Finally, ASUS argues that Round Rock's construction is not supported by Round Rock's infringement contentions. (D.I. 55 at 19.) However, Round Rock' infringement contentions are not intrinsic evidence, and should not inform the Court's construction. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (citation omitted) ("To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history.").

Accordingly, the Court should construe "active standby mode" to mean "the mode when CKE is high and there is at least one row active in any memory bank."

### D. Summary Judgment of Non-Infringement Would Not Be Appropriate Regardless of Which Construction the Court Adopts

Even if the Court adopts ASUS's construction, Round Rock's infringement contentions make clear that summary judgment of non-infringement would not be appropriate. Moreover, if ASUS's proposed construction were to be adopted, Round Rock could move to amend its infringement contentions based on good cause pursuant to Local Patent Rule 3-6, if deemed necessary. *See* Section I, *supra*.

## IV. "Over" ('353 Patent)

### A. ASUS's Proposed Construction Attempts to Impermissibly Import Limitations from Embodiments into the Claims and Inappropriately Considers Only Part of the Specification

ASUS's proposed construction is a thinly-veiled attempt to establish a non-infringement position by asking the Court to construe "over" in a way inconsistent with both its plain meaning and the intrinsic record.  ASUS's argument in support of its proposed construction improperly focuses on particular embodiments where "over" is used in connection with the position of the passivation layer, rather than the patent claims and specification as a whole.  (D.I. 55 at 15 & n.15.)  Indeed, ASUS wholly ignores all other uses of the term "over" in the patent claims, which include the positions of the second layer (*see* Ex. 5, claim 1), the color filter array layer (*see* claims 1, 13, 20, and 21), the lens layer (*see* claims 1, 20, and 21), the lens forming layer (*see* claim 13), the oxide passivation layer (see claim 20), and the nitride passivation layer (*see* claims 20, 21).

As Round Rock made clear in its Opening Brief, it is improper to construe claim terms as limited to specific embodiments of a patent specification, including its figures.  (D.I. 52 at 16-17 (citing, *e.g.*, *Fujitsu Ltd. v. Belkin Int'l*, No. 10-cv-03972, 2012 U.S. Dist. LEXIS 142102, at *39-40 (N.D. Cal. Sept. 28, 2012)).)  Thus, even if it were appropriate to consider how the '353 patent uses the term "over" in connection with the passivation layer – which it is not – ASUS's proposed construction impermissibly limits the scope of the claims to certain of the patent's embodiments.  Therefore, the Court should reject ASUS's proposed construction.

**B. Contrary to ASUS's Assertion, Round Rock's Proposed Construction Comports with Plain Meaning and the Intrinsic Record**

ASUS's fails to provide any evidence that Round Rock's proposed construction does not accord with the intrinsic record.  (D.I. 55 at 15.)  ASUS argues that Round Rock's construction is not supported by the specification because the passivation layer supposedly must be directly on top of the final metallization layer without "intervening structures."  (D.I. 55 at 14-15.)  But the specification is silent as to the existence or non-existence of intervening structures in connection with the passivation layer or any other layer.

Significantly, Round Rock's proposed construction is supported by the intrinsic record, which makes clear the distinction between "directly over" (similar to ASUS's definition) and "over." As set forth in Round Rock's Opening Brief (D.I. 52 at 15-16), the patentee uses "directly over" on five separate instances in the specification, whereas the patentee uses the term "over" on countless occasions. (Ex. 5 at cols. 4:19-20; 4:43-44; 4:51-53; 6:20-23; 6:33-35.) If the patentee intended to limit the claims in the way ASUS describes, the patentee could have used the language "directly over" in the claims as well.

Accordingly, because Round Rock's proposed construction accords with the intrinsic record, and considers the intrinsic record as a whole, the Court should reject ASUS's proposed construction and conclude that no construction is necessary. Alternatively, for the reasons set forth above and in Round Rock's Opening Brief, should the Court find construction necessary, the Court should adopt Round Rock's alternate construction.

### C. Construction of "Over" And Its Impact on Summary Judgment

If the Court adopts Round Rock's construction for "over", Round Rock's infringement contentions make clear that Round Rock could move for summary judgment of infringement with regard to the '353 patent. Further, ASUS's allegations regarding Round Rock's infringement contentions are irrelevant. In any event, Round Rock's infringement allegations are not inconsistent because, among other things, the '276 patent and the '353 patent are unrelated.

## V. "Differential voltage from the array of non-volatile memory cells" ('791 patent)

### A. ASUS's Construction Is Improper Because It Violates the Doctrine of Claim Differentiation

ASUS's construction for the term "differential voltage from the array of non-volatile memory cells" violates the doctrine of claim differentiation because it does not take into account the difference between Claims 1 and 4, which contains that claim term, and claim 6, which contains the similar, but different term "differential voltage between the bit lines." As set forth

in Round Rock's Opening Brief, claims 1 (and 4) and 6 demonstrate that the claims are directed to two distinct methods of detecting differential voltages: claims 1 and 4 (and their dependent claims) are directed to a method of detection "***from the array of non-volatile memory cells***" and claim 6 is directed to a method of detection "***between the bit lines***." (D.I. 52 at 18-19.) ASUS's proposed construction for this claim term, "difference in voltage *between two bit lines* from the array of non-volatile memory cells," which only appears in claim 6, is improper because it attempts to conflate the different claim language of claims 1 and 4 and claim 6. *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."). Claims 1 and 4 do not include "bit lines" or detecting the difference in voltage between the two bit lines, unlike claim 6. (*See also* D.I. 52 at 17-18.) Accordingly, ASUS's construction is improper because it violates the doctrine of claim differentiation by failing to take into account the different scope of subject matter of claims 1 and 4, and claim 6.

### B. Round Rock's Proposed Construction Does Not Read Out "From the Array of Non-Volatile Memory Cells" and Is Consistent with the Intrinsic Record

Contrary to ASUS's allegations, Round Rock's proposed construction does not "read out" "from the array of non-volatile memory cells." (D.I. 55 at 7.) Indeed, Round Rock's arguments in its opening brief specifically focus on the claim language "from the array of non-volatile memory cells." (D.I. 52 at 18 (highlighting that same claim language and stating "[t]he plain language indicated that the differential voltage is with respect to the non-volatile memory cells.").) Significantly, ASUS fails to identify any portion of the specification that refutes Round Rock's construction or the fact that the patentee sought to disclose and claim different techniques of determining differential voltages in claims 1 and 4 and claim 6. Accordingly, because Round

1 Rock's construction accords with all claims in the patent, as well as the intrinsic record, the
2 Court should adopt Round Rock's construction.

### C. ASUS's Allegations Regarding Summary Judgment Are Incorrect

Round Rock disputes ASUS's allegation that summary judgment would be appropriate under its proposed construction. As explained above, summary judgment would be premature even if the Court adopts ASUS's proposed construction.

## VI. "Adjustable current consumption being set to the low power mode in response to a state of the mode control bit" ('053 Patent)[4]

### A. ASUS's Proposed Construction Adds Unnecessary and Confusing Claim Limitations Without Intrinsic Support

As set forth in Round Rock's opening brief, the term "adjustable current consumption being set to the low power mode" does not require construction because it uses plain, straightforward English words that any juror would understand. (D.I. 52 at 20.) ASUS's construction attempts to introduce unnecessary confusion to this straightforward claim term by adding the limitation "where the mode chosen is one in which a reduced quantity of bits is programmed at once." (D.I. 55 at 23.) ASUS provides no intrinsic support to support adding this limitation. (*Id.*) Indeed, ASUS's opposition brief merely addresses the claim term as a whole, simply providing various quotes from the specification which allegedly describe embodiments that describe the low power mode. (*Id.* at 23-24.) Although ASUS adds no explanation as to why it believes these swaths of specification language support its proposed construction, it is clear from the patent itself, that this particular limitation is derived from a single embodiment in the specification. (Ex. 3 at col. 3:19-33; Figs. 2 and 3.) To limit the claims to this specific embodiment is impermissible. *See e.g.*, *Phillips*, 415 F.3d at 1323

---

[4] As addressed in Round Rock's Opening Brief, Round Rock does not believe this term should be briefed. (D.I. 52 at 19, n. 2.) Further, Round Rock believes that the correct term for construction is "adjustable current consumption being set to the low power mode." (*Id.*)

("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Thus, ASUS's construction, in addition to being confusing, violates basic claim construction principles.

### B. If the Court Decides To Construe the Claim Term, Round Rock's Proposed Construction Should Be Adopted Because It Is Consistent With the Term's Ordinary Meaning and the Intrinsic Record

If the Court determines that this term requires construction, it should adopt Round Rock's proposed construction, which is faithful to both the term's plain meaning and the intrinsic record. As Round Rock's opening brief establishes, Round Rock's proposed alternate construction comports with the specification's explanation that setting the mode control bit to a low power mode will adjust the current consumption of the claimed memory device. (D.I. 52 at 20.) Moreover even ASUS's opposition brief recognizes that a mode for low current consumption is a low power mode. (D.I. 55 at 23 (citing Ex. 3 at col. 1:66-2:5).) Thus, it is clear that Round Rock's proposed construction is straightforward, does not introduce unnecessary confusion, and does not add any unnecessary limitations from embodiments in the specification. Accordingly, the Court should adopt Round Rock's proposed construction if it determines construction is necessary.

### C. ASUS's Allegations Regarding Summary Judgment Are Incorrect

Round Rock disputes ASUS's allegation that summary judgment would be appropriate under its proposed construction. As explained above, summary judgment would be premature even if the Court adopts ASUS's proposed construction.

### CONCLUSION

For the foregoing reasons, Round Rock respectfully requests that, to the extent constructions are necessary, the Court adopt its proposed constructions.

DATED: March 19, 2013

By: /s/ Peter H. Chang
BLACK CHANG & HAMILL LLP
Peter H. Chang (SBN 241467)
pchang@bchllp.com
Bradford J. Black (SBN 252031)
bblack@bchllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: 415-813-6210
Facsimile: 415-813-6222

*Local Counsel for Plaintiff*
*Round Rock Research, LLC*

Paul A. Bondor (admitted *pro hac vice*)
pbondor@desmaraisllp.com
Justin P.D. Wilcox
jwilcox@desmaraisllp.com
Jonas R. McDavit (admitted *pro hac vice*)
jmcdavit@desmaraisllp.com
Lauren M. Nowierski (admitted *pro hac vice*)
lnowierski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

*Lead Counsel for Plaintiff*
*Round Rock Research, LLC*