1  John P. Schnurer, Bar No. 185725
   JSchnurer@perkinscoie.com
2  Jack Ko, Bar No. 244630
   JKo@perkinscoie.com
3  PERKINS COIE LLP
   11988 El Camino Real, Suite 200
4  San Diego, CA 92130-3334
   Telephone: 858.720.5700
5  Facsimile:  858.720.5799

6  James C. Pistorino, Bar No. 226496
   JPistorino@perkinscoie.com
7  PERKINS COIE LLP
   3150 Porter Drive
8  Palo Alto, CA 94304-1212
   Telephone: 650.838.4300
9  Facsimile:  650.838.4350

10 Attorneys for Plaintiffs
   ASUSTEK COMPUTER INC. and ASUS
11 COMPUTER INTERNATIONAL

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

16

17 ASUSTEK COMPUTER INC. AND          Case No. 3:12-cv-02099-JST
   ASUS COMPUTER INTERNATIONAL,
18
                  Plaintiffs,
19                                     **ASUSTEK COMPUTER INC. AND ASUS
          v.                           COMPUTER INTERNATIONAL'S
20                                     MOTION FOR SUMMARY JUDGMENT
   ROUND ROCK RESEARCH, LLC,          OF NON-INFRINGEMENT**
21 AMERICAN MEGATRENDS INC.,
   SAMSUNG ELECTRONICS CO., LTD.,
22
                  Defendants.
23

24                    <u>**REDACTED**</u>

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ............................................................................................................ 2

    A. The Parties, Patents, and Products ................................................................. 2

    B. Procedural History ......................................................................................... 3

    C. Round Rock's Infringement Contentions ...................................................... 4

    D. Round Rock's Subpoena To Himax ............................................................... 7

    E. The Accused Instrumentalities ...................................................................... 8

        1. Products Never Shipped To or Sold in the United States ................... 9

        2. The '791, '276, '053, and '353 Patents ............................................. 9

        3. The '949 Patent .................................................................................. 9

            a. Accused Instrumentalities that Do Not Have DDR3 SDRAM ................................................................................ 10

            b. The K52DR Product ............................................................... 10

            c. Licensed But Nevertheless Accused Instrumentalities ............... 10

II. DISCUSSION ........................................................................................................... 10

    A. Summary Judgment Standard Under Fed. R. Civ. P. 56 ............................... 10

    B. Summary Judgment of Non-Infringement by Uncharted Products ..................... 11

        1. No Theory of Alleged Infringement By The Uncharted Products Was Disclosed ................................................................................... 11

        2. No Evidence of Alleged Infringement ............................................... 12

            a. The '791 Patent ..................................................................... 13

            b. The '053 Patent ..................................................................... 13

            c. The '353 Patent ..................................................................... 14

            d. The '276 Patent ..................................................................... 14

            e. The '949 Patent ..................................................................... 14

    C. Summary Judgment of Non-Infringement by Uncharted Versions of Charted Products ......................................................................................... 15

    D. Round Rock Should Be Barred from Offering Evidence of Alleged Infringement by Uncharted Products ............................................................ 16

III. CONCLUSION ......................................................................................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................................... 11

5

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) .............................................................................................. 10

6

7

*Bender v. Freescale Semiconductor, Inc.*,
No. C 09-1156 PHJ (MEJ), 2010 WL 1689465 (N.D. Cal. Apr. 26, 2010) ........................... 18

8

9

*Bender v. Infineon Techs. N. Am. Corp.*,
No. C09-02112 JW (HRL), 2010 WL 964197 (N.D. Cal. Mar. 16, 2010) ............................. 18

10

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) ............................................................................................... 11

11

12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................... 10

13

*Icon-IP Pty Ltd v. Specialized Bicycle Components, Inc.*,
12-cv-03844-JST (N.D. Cal. April 29, 2013) ........................................................................ 17

14

15

*Network Caching Tech, LLC v. Novell Inc.*,
No. C 01-2079, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002) ............................................ 16

16

17

*Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D.
Cal. 2006) .............................................................................................................................. 16

18

19

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) .............................................................................. 12, 16, 19

20

*Renesas Tech. Corp. v. Nanya Tech Corp.*,
No. C03-05709, 2004 WL 2600466 (N.D. Cal. Nov. 10, 2004) ............................................ 18

21

22

*Round Rock Research, LLC. v. Lenovo Holding Co., Inc., et al.*,
11-cv-01011 (RGA) ........................................................................................................... 8, 16

23

24

OTHER AUTHORITIES

25

11 Moore's Federal Practice § 56.40[1][b] ................................................................................ 11

26

Fed. R. Civ. P. 56(c) ................................................................................................................. 10

27

28

Plaintiffs ASUSTeK Computer Inc. ("ASUS Taiwan") and ASUS Computer International ("ASUS California") (collectively "ASUS") move for summary judgment of non-infringement of hundreds of products that Round Rock Research ("RR") alleges infringe the five remaining patents asserted in this case.[1]  RR has failed to serve Infringement Contentions alleging a theory of infringement of each of these products, many of which have never been imported or sold in the United States, and/or are covered by pre-existing licenses that RR or the prior owner Micron has executed with component suppliers.  Further, there is no evidence of infringement by these products.

RR served Infringement Contentions including a chart disclosing the theory that three ASUS products infringe when using components supplied by Kingston (eMMC or DDR3 SDRAM memory) or OmniVision (CMOS sensors) in each of six asserted patents.  (Pistorino Decl., Ex. 3.)  For these three ASUS product configurations, RR identified where RR contended each limitation of each asserted claim was found within each Accused Instrumentality.  *See* Patent L.R. 3-1(c).

In addition, RR separately identified more than 300 products that RR alleged infringe but did not provide a chart disclosing a theory of alleged infringement identifying where each limitation of each asserted claim was found for these products.  ASUS has repeatedly notified RR that its Infringement Contentions fail to disclose a theory of alleged infringement by the uncharted products, that its Infringement Contentions fail to comply with the Patent Local Rules for the uncharted products, that the uncharted products differ from the charted ones in ways material to RR's disclosed theories, and that RR has accused components that RR knows are licensed.  Nevertheless, RR has not diligently moved to amend its Infringement Contentions and likewise has refused to drop its accusations of infringement by the more than 300 uncharted products.

Moreover, even the three charted products come in numerous versions that are materially different with regard to the asserted claims.  For example, some of the versions contain different

---

[1] Previously, Round Rock withdrew its allegation of alleged infringement of U.S. Patent No. 7,021,520.

1    components from different manufacturers that RR knows to be licensed.  Yet for each of the three

2    charted products, RR charted only one of these versions.  Again, though notified of the

3    deficiencies by ASUS, RR has not diligently moved to amend its Infringement Contentions and

4    likewise has refused to drop its accusations of infringement of the uncharted versions.

5         Accordingly, ASUS moves for summary judgment of non-infringement because there is

6    no genuine issue of material fact that:

7         1) there is no evidence of infringement for more than 300 accused, but uncharted,

8    products; and

9         2) the uncharted, but accused, variations of the three products do not have the same

10   components alleged to correspond to claim limitations (and thus there is no infringement or

11   evidence of infringement).

12        Summary judgment of non-infringement is appropriate and will narrow this case

13   substantially and avoid the onerous burden of addressing hundreds of products .

14                          **I.      BACKGROUND**

15   **A.      The Parties, Patents, and Products**

16        ASUS Taiwan is a Taiwan-based computer manufacturer whose products are offered all

17   over the world.  ASUS Taiwan's products include, for example, notebook computers and tablets,

18   which include numerous components, such as, for example CMOS image sensors, eMMC

19   memory and/or DDR3 SDRAM memory.  ASUS Taiwan does not itself manufacture the accused

20   components (e.g., specific eMMC and SDRAM memory or CMOS image sensors) but integrates

21   components purchased from third-party component suppliers (e.g., Samsung, Hynix, Micron,

22   Kingston, and OmniVision) into notebooks, tablets, and other computer products.[2]  ASUS

23   California purchases ASUS Taiwan-manufactured computer products in Asia and sells those

24   products to distributors in the United States (e.g., Best Buy).

25        This case is one of a series of cases related to the patent portfolio originally owned by

26   _____

27        [2] While some third-party component suppliers manufacture their own components (e.g.,
     Samsung), others simply rebrand/repackage components purchased from original manufacturers.
     For example, eMMC flash memory supplied to ASUS by Kingston may have been manufactured

28   by Toshiba but is sold under the Kingston name.

1  non-party Micron, Inc. ("Micron").  Micron assigned a portfolio of some 4,000 patents to RR, a

2  non-practicing entity.  Generally speaking, the RR patents relate to specific aspects of hardware

3  components within computers or methods of manufacturing those components, such as computer

4  memory or the CMOS image sensor inside a computer camera.  RR has executed licenses

5  covering the patents-in-suit with several component manufacturers, for example Samsung.  (*See,*

6  *e.g.*, Pistorino Decl., Ex. 2.)  In addition, prior to assigning its patents to RR, Micron executed

7  licenses, which are believed to cover the patents-in-suit, with various component manufacturers.

8  (*See* Pistorino Decl. ¶ 4.)

9         Like many manufacturers of computer products, ASUS sources components from a

10  variety of suppliers.  Thus, different versions of the same computer product may use memory,

11  CMOS image sensors, or other components from many different suppliers depending on

12  availability and pricing.  For example, the ASUS Eee Slate EP121 tablet computer may use RAM

13  supplied by Samsung, Kingston, or others depending on a variety of factors.  (*See* Chen Decl, ¶

14  5.)

15  **B.    Procedural History**

16         On April 26, 2012, ASUS filed this Declaratory Judgment Action seeking a determination

17  of non-infringement and invalidity of six United States patents that RR contends are infringed by

18  components within ASUS Taiwan-manufactured devices.  The patents-in-suit and the accused

19  components generally relate to DDR3 SDRAM (a form of computer memory), eMMC flash

20  memory (another form of computer memory), or CMOS image sensors (which are used in

21  cameras in computers).  RR counterclaimed for alleged infringement of each of the patents-in-suit

22  on May 18, 2012.  A Case Management Conference was held on September 6, 2012.

23         On September 20, 2012, RR served Infringement Contentions.  (Pistorino Decl., Ex. 3.)

24         On September 28, 2012, RR served its First Set of Requests for Production to which

25  ASUS timely responded.  (Pistorino Decl. ¶ 6.)

26         On October 5, 2012, RR served its First Set of Interrogatories to which ASUS timely

27  responded identifying the relevant component suppliers.  (Pistorino Decl. ¶ 7.)

28         On November 8, 2012, ASUS served its Invalidity Contentions.  (Pistorino Decl. ¶  8.)

1    In January 2013, RR first sought discovery from only a few of the third party component

2    manufacturers that supply components to ASUS Taiwan (i.e., Aptina,[3] Himax, and OmniVision).

3    (Pistorino Decl. ¶ 9.)

4    On May 1, 2013, a *Markman* hearing was held.

5    On June 11, 2013, the parties stipulated to a dismissal of claims related to U.S. Patent No.

6    7,021,520 ("the '520 patent"). (D.I. 78.) Five patents-in-suit remain at issue in this case.

7    **C.    Round Rock's Infringement Contentions**

8    As noted above, though this case was filed in April 2012 and RR counterclaimed for

9    alleged infringement in May 2012, RR did not seek discovery of any kind prior to September 28,

10   2012.

11   On September 20, 2012, RR served Infringement Contentions. (Pistorino Decl., Ex. 3) .

12   RR provided charts alleging where each element of the asserted claim could be found for only

13   three Accused Instrumentalities (the TF101 for three patents, EP121 for two patents, and K52DR

14   for one patent). For these three products, RR identified the Kingston KE4BT4B6A eMMC

15   memory, the OmniVision OV284AB CMOS image sensor, and Kingston DDR3 SDRAM

16   memory as the allegedly infringing components.

17   However, RR also named more than 300 other Accused Instrumentalities but the

18   Infringement Contentions did not include a chart showing "where each limitation of each asserted

19   claim is found within each Accused Instrumentality," which is required by Patent Local Rule 3-

20   1(c). Indeed, even the more than 300 other products were described as merely "exemplary" of the

21   Accused Instrumentalities. (Pistorino Decl., Ex. 3.) Nor did RR make any effort to explain how

22   or why the other uncharted products were like the three charted products. Regarding the other

23   uncharted products, each of the charts included only the following unsupported statement:

24   > Where the element is believed to be implemented in the same or
25   > substantially the same way in each Accused Instrumentality, Round Rock
     > provides an *exemplary illustration* or description setting forth specifically
26   > where the limitation is found in the Accused Instrumentalities, without
     > repeating the same illustration or description for each version of each

27   ───────────────

28   [3] ASUS understands that RR subsequently withdrew its subpoena to Aptina. Presumably, this is because Aptina was spun out of Micron and its products are licensed.

1    Accused Instrumentality.

2         (Pistorino Decl., Ex. 3.) (emphasis added).  Thereafter, RR purported to reserve unto itself

3    a right to "supplement or amend" the contentions.  (*Id.*)

4         The uncharted products differ from the charted ones in ways that are material to the

5    asserted claims and entirely unmentioned by RR's Infringement Contentions.  For example, RR

6    alleges that products containing eMMC flash memory from Kingston infringe the '791 and '053

7    patents.  RR provided charts comparing the asserted claims of the '791 and '053 patents to only

8    the ASUS Eee Pad Transformer TF101 computer product when using eMMC flash memory

9    manufactured by Kingston.  (*Id.*)  Nevertheless, RR also named the B121, EP121, SL101,

10   TF700T, and TF300T as computer products accused of infringing the '791 and '053 patents but

11   did not provide charts detailing the alleged infringement.  (*Id.*)  Two of those uncharted products

12   (the B121 and EP121) do not have eMMC flash memory of any type.  (Chen Decl. ¶ 25; Ex. C.)

13   One of those uncharted products (the TF700T) uses eMMC flash memory provided solely by

14   ████████ who ASUS understands is licensed.  (Chen Decl. ¶ 26; Ex. C.)  The remaining uncharted

15   computer products (including the TF101) use eMMC flash memory provided by a variety of

16   suppliers including Samsung, which as discussed above is licensed.  (Chen Decl. ¶¶ 23 & 27; Ex.

17   C.)  Again, only the TF101 is charted when using eMMC flash memory provided by Kingston.

18        Further, even with regard to the charted products, only specific versions incorporating

19   specific components from specific suppliers (i.e., Kingston and OmniVision) were charted.  Other

20   versions of the same product (for example, using DDR3 DRAM memory or eMMC flash memory

21   from licensed entities such as ████████ or █████ rather than Kingston) were not charted, yet

22   stand accused.

23   //

24   //

25   //

26   //

27   //

28   //

1

2

3

4

5

6

7

8

9

10

11

12

**Round Rock's Infringement Contentions**

13    On October 10, 2012, which was before ASUS' Invalidity Contentions were due, ASUS

14    wrote RR identifying numerous deficiencies in RR's Infringement Contentions.  (Pistorino Decl.,

15    Ex. 4.)  In particular, ASUS noted the failure to comply with Patent Local Rule 3-1(c) and

16    provide a chart for each Accused Instrumentality.  (*Id*.)  On October 12, 2012, RR responded

17    defending its charting only "exemplary products" as consistent with the standards required by

18    Federal Rule of Civil Procedure 11.  (Pistorino Decl., Ex. 5.)  On October 22, 2012, ASUS again

19    wrote RR regarding the failure to provide charts for each accused product and again pointed RR

20    to Patent Local Rule 3-1(c)'s requirement for a chart of "each Accused Instrumentality."

21    (Pistorino Decl., Ex. 6.)  RR did not respond nor seek to amend its Infringement Contentions or

22    otherwise provide information comparing each element of each asserted claim to each Accused

23    Instrumentality.

24    The matter was again raised in correspondence from RR on January 24, 2013.  (Pistorino

25    Decl., Ex. 7.)  A meet and confer was held on January 30, 2013.  During that call, RR's counsel

26    indicated that RR had not investigated alleged infringement by the uncharted products because

27    doing so would have been burdensome.  (Pistorino Decl. ¶ 14.)  Instead, RR expected ASUS to

28

1  undertake the burden of filing a motion to compel RR to comply with the Patent Local Rules and

2  provide a disclosure of the things RR wants to accuse of infringement.  *Id*.  ASUS responded

3  further by letter on February 19, 2013, and RR did not further respond.  (Pistorino Decl., Ex. 8.)

4  **D.     Round Rock's Subpoena To Himax**

5         Third party Himax Imaging Corp. is a manufacturer of CMOS image sensors.  Though no

6  Himax product is identified or charted in RR's Infringement Contentions, RR served a subpoena

7  on Himax in January 2013 issued by the U.S. District Court for the Central District of California.

8  (*Asus Computer Int'l, et al. v. Round Rock Research, LLC.*, No. 13-cv-02176 (SJO), hereinafter

9  "*In re: Himax*".)  Thereafter, a series of meet and confers were held between Himax and RR.[4]

10 During those meet and confers, RR admitted that Himax products were not identified in RR's

11 Infringement Contentions and asserted that RR only learned that Himax products were

12 components of accused ASUS products when ASUS responded to RR's written discovery in

13 October 2012.  (*In re: Himax*, D.I. #2 at 1, 3, 10, and 12.)  Though the Himax products are not

14 identified or charted in RR's Infringement Contentions, RR stated that it wanted discovery from

15 Himax because RR was considering moving for leave to amend its Infringement Contentions to

16 identify Himax products.  (*Id*.)  Ultimately, in March 2013, Himax filed a motion to quash in the

17 Central District of California.

18        In opposition to Himax's motion to quash, RR did not contend that the Himax product

19 was identified in RR's Infringement Contentions.  Indeed, just the opposite.  RR tellingly argued:

20        Furthermore, as a practical matter it would be nearly impossible for any
           party to identify all third party components in each accused product.  Under
21         the current circumstances of this industry, manufacturers may have
           multiple suppliers for the same components in identical products.  Thus,
22         there is no practical way for Round Rock - or any patentee - to purchase all
           versions of all of the infringing products to discover all third party
23         component information prior to serving its Infringement Contentions.  The
           Local Patent Rules simply do not demand a patentee to purchase and
24         reverse engineer countless products in an attempt to determine whether all
           third party components have been found and ultimately named in its
25         Infringement Contentions.

26 (*See  In re: Himax*, D.I. #40 at 10.)

27 _____

[4] All of the facts related to RR's interaction with Himax are taken from the briefs
28 submitted by RR and Himax and the court's subsequent orders.

On June 28, 2013, the District Court (Judge Otero) granted Himax's motion to quash.[5]
(Pistorino Decl., Ex. 12.)  Judge Otero noted that the Himax product was not identified in RR's
Infringement Contentions and that an identification was required by the Patent Local Rules.  (*Id.*
at 5.)  Judge Otero further found that allowing discovery in this circumstance would violate the
Patent Local Rules because it would be discovery of something that had not been properly
accused.  (*Id.* at 5-6.)  With regard to RR's claims regarding reverse engineering, Judge Otero
held that the Patent Local Rules in fact contemplate reverse engineering or its equivalent.  (*Id.*)  In
any event, Judge Otero held that the use of alleged "representative examples," as seen in RR's
contentions, did not comply with the Patent Local Rules.  (*Id.*)

Throughout these proceedings, RR did not address: 1) why RR did not seek discovery of
any kind until after RR served its Infringement Contentions; 2) why RR accused products of
infringing without a basis of knowing whether they met the claim limitations; or 3) why RR
waited three months after learning of the Himax products to even seek discovery related to them
and then waited additional months before trying to enforce its subpoena.[6]   Moreover, even after
Judge Otero's June decision regarding the Himax components, RR did not seek leave to amend its
Infringement Contentions in in this case.

E.       **The Accused Instrumentalities**

Attached hereto is the Declaration of Simon Chen, the Director of the Product Marketing
Department at ASUS Taiwan.  As described there, ASUS has conducted a search of its records

---

[5] Himax's motion was originally addressed by Magistrate Judge Mumm.  Judge Mumm
found that the Himax product was not identified in RR's Infringement Contentions and that the
Patent Local Rules required RR to do so.  Nevertheless, Judge Mumm allowed limited discovery
from Himax so that RR might move for leave to amend its Infringement Contentions.  Judge
Otero subsequently found that allowing discovery in this context would violate the Patent Local
Rules unless RR first obtained leave to amend its Infringement Contentions to identify the Himax
product in the Infringement Contentions.

[6] Essentially the same scenario played out in RR's ongoing case in Delaware involving
Lenovo.  *See Round Rock Research, LLC. v. Lenovo Holding Co., Inc., et al.*, 11-cv-01011
(RGA).  There, RR was required to provide Infringement Contentions including charts detailing
the alleged infringement.  RR provided charts for only six products but then listed numerous other
"relevant" product lines and "Exemplary Products."  RR was promptly notified that this approach
failed to comply with the requirement for Infringement Contentions.  However, RR both failed
and refused to provide proper charts.  The matter was eventually the subject of discovery letters to
Judge Andrews, who held that RR was limited to only the products for which it had provided
proper Infringement Contention charts.  (Pistorino Decl., Exs. 9-11.)

related to each of the more than 300 Accused Instrumentalities.  While there are more than 300 Accused Instrumentalities, each product itself may have multiple versions with components from different suppliers and individual versions may include components from more than one supplier. (Chen Decl. ¶ 12; Exs. H-J.)  As a result, RR's allegations related to the '949 patent alone result in more than 2,000 combinations of product/version and component suppliers.  (Chen Decl. ¶ 30; Ex. K.)

### 1.   Products Never Shipped To or Sold in the United States

RR has alleged infringement by more than 100 products that ASUS has never shipped to or sold in the United States.[7]  Attached as Exhibit 1A to the Pistorino Declaration is a listing of each product RR has accused of infringing but that simply has had no contact with the United States.  (Pistorino Decl., Ex. 1A.)  Because these products are beyond the reach of the United States patent laws, the remaining discussion is focused solely on those products that have been shipped to or sold in the United States.

### 2.   The '791, '276, '053, and '353 Patents

Exhibits B, C, H, and I to the Chen Declaration detail ASUS' records with respect to each of the patents and Accused Instrumentalities for the '791, '276, '053, and '353 patents (i.e., all patents-in-suit except for the '949 patent).

### 3.   The '949 Patent

As noted above, RR's allegations with respect to the '949 patent alone encompass more than 300 products that result in more than 2,000 combinations of product/version and component suppliers.  (Chen Decl. ¶ 30; Ex. B.)  The raw data corresponding to the products RR has identified is contained in Exhibits H, I, J, and K to the Chen declaration.  (Chen Decl. ¶ 12; Exs. H, I, J & K.)  Because of the large number of products RR has accused, that data is voluminous. Exhibits B, C, E, F, and G to the Chen declaration summarize the raw data of Exhibit H, I, J, and K.  (Chen Decl. ¶¶ 17, 22 & 33-35; Exs. B, C & E-K.)

---

[7] In order to be comprehensive, ASUS has conducted a search of both the sales records and shipping records to ensure that anything touching the shores of the United States would be covered.  Thus, a product shipped to ASUS California but that was never actually sold would be captured in the search.

### a.     Accused Instrumentalities that Do Not Have DDR3 SDRAM

RR's allegations with respect to the '949 patent are centered around products that use DDR3 SDRAM. Remarkably, forty one (41) of the Accused Instrumentalities lack DDR3 SDRAM. Exhibit D to the Chen Declaration lists the products accused of infringing the '949 patent that lack DDR3 SDRAM. (Chen Decl. ¶ 31; Ex. D.)

### b.     The K52DR Product

Exhibit E to the Chen Declaration details ASUS' records with respect to the only product actually charted for the '949 patent (the K52DR product). (Chen Decl. ¶ 33; Ex. E.) Exhibit E lists the various manufacturers and part numbers of DDR3 SDRAM for each version of the K52DR product. (Chen Decl. ¶ 33; Ex. E.)

### c.     Licensed But Nevertheless Accused Instrumentalities

As described above, at least ███, ███, and ███ are licensed to practice the '949 patent with regard to DDR3 SDRAM. Nevertheless, RR's accusations include product versions including DDR3 SDRAM provided by ███, ███, and ███. (Chen Decl. ¶ 34; Ex. J.)

Indeed, 108 of the products that have actually made it to the shores of the United States use DDR3 SDRAM memory provided by ███ and ███. Exhibit 1B to the Pistorino Declaration is a listing of those products whose DDR3 SDRAM suppliers include ███ and ███. (Pistorino Decl., Ex. 1B.)

Likewise, Micron is a supplier of DDR3 SDRAM memory used in versions of the K53SJ and UX21E computers. (Chen Decl. ¶ 35; Ex. G.)

## II.    DISCUSSION

### A.     Summary Judgment Standard Under Fed. R. Civ. P. 56

"Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984); *see also* Fed. R. Civ. P. 56(c). When, as here, the moving party does not bear the burden of proof at trial, summary judgment is appropriate if "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party need not produce any evidence showing the absence of a genuine issue of material fact, nor must it support

its motion with evidence negating the non-moving party's claim. *Id.* If the non-moving party

shows an absence of evidence to support the non-moving party's case, the burden then shifts to

the non-moving party to produce "specific evidence, through affidavits or admissible discovery

material to show that a dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.

1991). The non-moving party cannot avoid summary judgment by allegations alone; instead, it

must provide admissible evidence to support a genuine dispute about a material fact "such that a

reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986); *see generally* 11 Moore's Federal Practice § 56.40[1][b].

**B.      Summary Judgment of Non-Infringement by Uncharted Products**

As noted above, RR has accused, but failed to chart, more than 300 products. For the

uncharted products, summary judgment of non-infringement should be granted because there is

no evidence of alleged infringement and RR is barred from offering evidence of alleged

infringement in support of theories not disclosed in its Infringement Contentions.

**1.      No Theory of Alleged Infringement By The Uncharted Products Was
Disclosed**

As noted above, RR provided charts for only three products accusing one specific

component provided by one specific manufacturer for each patent. No theories of alleged

infringement by the uncharted products or versions were provided. For example, for the '791,

and '053 patents, RR only charted the TF101 product based upon its use of eMMC flash memory

from Kingston. That fails to provide any theory of alleged infringement by the B121 or EP121

products which do not even have eMMC flash memory, and there is no evidence that the B121 or

EP121 products have either the Kingston memory or meet any of the limitations of the asserted

claims.[8] (Chen Decl. ¶ 25; Ex. C.) The same is true for each uncharted product.

As an additional example, RR alleges that ASUS' EP121 product infringes the '276 and

'353 patents when using the OmniVision OV284AB CMOS image sensor and RR has provided a

chart detailing where RR alleges each element of the asserted claims can be found in the

---

[8] It is difficult to understand how RR could have had a good faith basis for alleging
infringement by these products or performed any pre-suit investigation of these products before
accusing them of infringement when the products do not even have eMMC memory of any type.

ASUSTEK COMPUTER INC. /ASUS COMPUTER
INTERNATIONAL'S MOTION FOR SUMMARY
JUDGMENT-Case No. 3:12-cv-02099-JST

OmniVision part named by RR.  However, RR also identifies the Nexus 7 tablet as an "Accused Instrumentality" but has provided no chart detailing the alleged infringement.  The Nexus 7 uses a CMOS sensor provided by Aptina (the Aptina MI1040).[9]  (Chen Decl. ¶ 19; Ex. B.)  Thus, no theory of alleged infringement of the '276 and '353 patents by the Nexus 7 product using the Aptina MI1040 part has been disclosed by RR in the Infringement Contentions and there is no evidence that the Nexus 7 or Aptina components meet any of the claim limitations.[10]

Alleged infringement by the non-charted products and versions would have to be based on evidence in support of undisclosed theories of infringement.  Numerous courts (including courts in this district) have precluded patentees from resisting motions for summary judgment of non-infringement by offering evidence in support of undisclosed theories of infringement.  *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) (affirming summary judgment of non-infringement based on denial of leave to amend by N.D. Cal. Judge Wilken).

Accordingly, summary judgment of non-infringement should be granted as to each uncharted product because no theory of alleged infringement by the uncharted products was disclosed and, as detailed below, RR should be barred from offering new theories or evidence to resist ASUS' motion.

### 2.     No Evidence of Alleged Infringement

In addition to the lack of theories of alleged infringement, summary judgment should also be granted because there is no evidence (and therefore no genuine issue of material fact) of alleged infringement on each of the following grounds:

- That the non-US products listed in Exhibit A of the Chen Declaration are subject to the United States patent laws or that any acts of infringement have occurred;

- That the B121 and EP121 use eMMC flash memory of any type (and therefore

---

[9] As a spin out of Micron, ASUS understands that Aptina is also licensed.

[10] The Court may recall from the Technical Tutorial and *Markman* hearing that the '276 and '353 patents claim particular ways of manufacturing CMOS image sensors.  Thus, alleged infringement depends entirely on the manner in which a particular sensor is manufactured and different sensors (even from the same manufacturer) may use different processes during their construction.

could even allegedly infringe the '791 or '053 patents);

- That the 41 products listed in Exhibit D of the Chen Declaration have DDR3 SDRAM (and therefore could even allegedly infringe the '949 patent);

- That each and every Accused Instrumentality incorporating Samsung DDR3 SDRAM meets all the elements of each asserted claim;

- That each and every Accused Instrumentality incorporating Micron DDR3 SDRAM meets all the elements of each asserted claim;

- That each and every Accused Instrumentality incorporating Hynix DDR3 SDRAM meets all the elements of each asserted claim;

- That each and every Accused Instrumentality incorporating CMOS sensors provided by Aptina meets all the elements of each asserted claim;

- That each and every Accused Instrumentality incorporating CMOS sensors provided by Himax meets all the elements of each asserted claim;

Further, there is no actual evidence that each of the Accused (but uncharted) Instrumentalities meet at least the following claim limitations. For each Accused Instrumentality, summary judgment of non-infringement should be granted unless RR comes forward with actual evidence demonstrating that the Accused Instrumentality meets each of the following claim limitations.

### a. The '791 Patent

"array of non-volatile memory cells" (all claims)

"sense amplifier circuitry coupled to the array" (Claims 1 and 4)

"sense amplifier circuitry detects a differential voltage from the array of non-volatile memory cells" (Claims 1 and 4)

"a clock signal connection to receive a clock signal" (Claims 4 and 14)

"control circuitry coupled to the array" (Claim 14)

"a processor; and a double data rate flash memory coupled to the processor" (Claim 14)

### b. The '053 Patent

"a memory device having an adjustable current consumption" (Claim 1)

"a memory array for storing data input into the memory device during a low power

mode") (Claim 1)

"the adjustable current consumption being set to the low power mode in response to a state of the mode control bit" (Claim 1)

### c.   The '353 Patent

"providing a passivation layer located over a final metallization layer" (Claims 1 and 13)

"planarizing a surface of said passivation layer" (Claims 1 and 13)

"forming a second layer over said passivation layer" (Claims 1 and 13)

"providing a color filter array layer over said second layer" (Claims 1 and 13)

"planarizing a surface of said color filter array layer" (Claim 1)

"planarizing a top surface of said color filter array layer" (Claim 13)

### d.   The '276 Patent

"a bottom antireflection coating disposed in each light transmission path between the color filter array and the active image sensing device structure, wherein the bottom antireflection coating has a thickness of less than approximately 200 nm" (Claim 1)

### e.   The '949 Patent

"a circuit to enable selection of a power saving mode for a dynamic random access memory" (Claim 1)

"the power savings mode comprising exiting an active power down mode of operation of the dynamic random access memory in more than one clock cycle" (Claim 1)

"transition(ing) from an active standby mode to a normal operation mode takes place in a period of more than one clock cycle" (Claims 5 and 20)

"a circuit to enable selection of a power saving mode for a double data rate synchronous dynamic random access memory" (Claim 24)

"the power savings mode comprising exiting an active power down mode of operation of the double data rate synchronous dynamic random access memory in more than one clock cycle" (Claim 24)

For each of the grounds above, RR bears the burden of providing affirmative evidence of alleged infringement by a preponderance of the evidence and, given the lack of such evidence,

there is no genuine issue of material fact that RR has not met its burden of proving alleged

infringement.

Accordingly, summary judgment of non-infringement should be granted for each Accused

Instrumentality listed in Exhibit 1 to the Infringement Contentions other than:

1) the TF101 for the '791 and '053 patents;

2) the EP121 for the '276 and '353 patents; and

3) the K52DR for the '949 patent.

**C.     Summary Judgment of Non-Infringement by Uncharted Versions of Charted
          Products**

As detailed above, the three products actually charted come in numerous, uncharted

versions.  For example, for the '791 and '053 patents, uncharted versions of the charted TF101

product use a different eMMC memory from a different manufacturer.  (Chen Decl. ¶ 23; Exs. C,

I.)  Yet RR has provided no theory of infringement for the different eMMC memory.  For the

same reasons set forth above with regard to products that were completely uncharted, summary

judgment of non-infringement of the uncharted versions of the charted products should also be

granted.

No theory of alleged infringement by the uncharted versions of the charted products has

been disclosed and RR should not be allowed to resist ASUS' motion for summary judgment by

offering evidence in support of undisclosed theories of alleged infringement.  Moreover, RR

cannot show that it was diligent or has good cause to amend or supplement its Infringement

Contentions to offer new theories of alleged infringement by the uncharted versions of the charted

products.

Accordingly, summary judgment of non-infringement should be granted except as to:

1) the TF101 when using the Kingston KE4BT4B6A for the '791 and '053 patents;

2) the EP121 when using the OmniVision OV284AB for the '276 and '353 patents; and

3) the K52DR when using Kingston DDR3 SDRAM for the '949 patent.

These are the only products/components identified in the Infringement Contention charts

served by RR.  (Pistorino Decl., Ex. 3).

**D.    Round Rock Should Be Barred from Offering Evidence of Alleged Infringement by Uncharted Products**

In response to ASUS' motion, RR may seek to amend or supplement its Infringement Contentions.  RR should not be allowed to do so.  RR was not diligent in seeking discovery prior to serving the Infringement Contentions or in seeking to amend the contentions once it knew that they were in error and/or were incomplete.  Moreover, this is not a case of inadvertence affecting some minor number of accused products.  Instead, the Infringement Contentions served by RR reflect a deliberate choice to chart only three products while accusing hundreds more.[11]  Indeed, even after Judge Otero told RR that it had not properly accused any Himax components in this case, RR still did not seek leave to amend its Infringement Contentions.  Accordingly, RR cannot show "good cause" for leave to amend the Infringement Contentions.

Patent Local Rule 3-1 provides, in relevant part:

> Separately, for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:
>
> …
>
> (c)    A chart identifying specifically where *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

(emphasis added).  Thus, pursuant to Patent Local Rule 3-1(c), a party asserting infringement must provide a chart identifying the alleged infringement for "*each* Accused Instrumentality."  "[T]he rules were designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006) (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).  Yet another purpose of the infringement contention requirements of the Patent Local Rules is to avoid the need for defendants to send interrogatories seeking basic information of alleged infringement and the resulting motion practice from a lack of clear guidelines or

---

[11] As noted above, RR employed this same approach in the *Lenovo* case and Judge Andrews did not allow RR to proceed against the uncharted products. (*See* Pistorino Decl., Exs. 9-11.)

1    identification.  *Network Caching Tech, LLC v. Novell Inc.*, No. C 01-2079, 2002 WL 32126128,

2    at *4 (N.D. Cal. Aug. 13, 2002).

3         In the present case, there is no dispute that RR did not provide charts for "*each* Accused

4    Instrumentality."  RR itself describes the charts as merely "exemplary," yet provided no

5    explanation for how that product and version is exemplary of all other products and versions, and

6    attempts to foist the burden of finding out what is accused of infringement and how onto ASUS.

7    That is plainly in violation of the Patent Local Rules, as Judge Otero has already found.

8         Moreover, this is not a case where the products and versions are identical in ways material

9    to the claims.  As detailed above, in some cases, the items alleged to correspond to claim

10   elements are simply not present in the accused, but uncharted, instrumentalities even in a general

11   sense.  Further, the asserted patents are not alleged to cover all forms of eMMC memory, CMOS

12   sensors, or DDR3 SDRAM.  Instead, the claims are directed to very specific ways of

13   manufacturing those things or specific implementations and those facts will be different for each

14   accused process/component.  Accordingly, because the asserted claims purport to cover specific

15   aspects of or ways of manufacturing accused components, each one would have to be investigated

16   separately to even see if the relevant feature is present and RR has not identified what, if

17   anything, corresponds to each claim element. Likewise, the defenses associated with the

18   uncharted components may be and, in some cases clearly are, different than those for the charted

19   components.  For example, products using memory from Samsung or Micron would be subject to

20   a license defense.

21        Moreover, having known of both the accused, but uncharted, products for months (and

22   before the Infringement Contentions were due) as well as RR's failure to comply with the Patent

23   Local Rules, RR cannot show that it was diligent or has "good cause" to amend or supplement its

24   contentions.  *See, e.g.*, Patent L.R. 3-6; *Icon-IP Pty Ltd v. Specialized Bicycle Components, Inc.*,

25   12-cv-03844-JST, (N.D. Cal. April 29, 2013) (denying motion for leave to amend infringement

26   contentions).  Further, ASUS understands that RR's failure to comply with the Patent Local Rules

27   was a deliberate choice because RR felt that doing so was "burdensome."  Instead, RR seeks to

28   foist the burden of even investigating RR's claims of alleged infringement on ASUS and has

1   resulted in RR alleging infringement by products RR has actually licensed.[12]   One of the reasons

2   the Patent Local Rules were enacted was to avoid the need for the Defendant to engage in

3   discovery and motion practice to find out what was accused of infringing and that is exactly the

4   burden RR seeks to foist upon ASUS.

5          Having known of its failure to comply with the Patent Local Rules for months and not

6   acting diligently to amend/correct its contentions, RR should be barred from offering evidence of

7   the alleged infringement by the uncharted products and the uncharted versions of the charted

8   products.  In correspondence, seeking to justify its failure to comply with Patent Local Rule 3-

9   1(c), RR has pointed to *Renesas Tech. Corp. v. Nanya Tech Corp.*, No. C03-05709, 2004 WL

10  2600466 (N.D. Cal. Nov. 10, 2004) (Lloyd, M.J.).  However, that case is inapposite as it concerns

11  compliance with Fed. R. Civ. P. 11 and not Patent Local Rule 3-1(c).

12         Courts sometimes allow the charting of a representative product, yet require that the

13  patentee explain in detail why that particular product is representative.  *See, e.g.*, *Bender v.*

14  *Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ (MEJ), 2010 WL 1689465, at *3 (N.D. Cal.

15  Apr. 26, 2010) (finding Patent Local Rule 3-1 "requires Plaintiff to articulate how the accused

16  products share the same, or substantially the same, infringing circuitry with any other product or

17  with the 15 'representative' products"); *Bender v. Infineon Techs. N. Am. Corp.*, No. C09-02112

18  JW (HRL), 2010 WL 964197, at *2 (N.D. Cal. Mar. 16, 2010) ("Other than plaintiff's bare

19  assertion, there is nothing in the record presented indicating, for example, that the five products

20  for which plaintiff provided claims charts share common circuitry with the other accused

21  products.").  Requiring the patentee to unambiguously articulate why and how any products are

22  "representative" matches the goal of the patent local rules because "[t]he rules were designed to

23  require parties to crystallize their theories of the case early in the litigation and to adhere to those

24  theories once they have been disclosed."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467

25  _____

26  [12] The fact that RR has accused licensed components of allegedly infringing is particularly
    troubling because it indicates that RR did not investigate products before accusing them of
27  infringing.  Moreover, RR states that prior to RR's acquisition of the Micron patents, Micron
    licensed the patents-in-suit but that RR does not have copies of the licenses.  Thus, RR asserts
    that ASUS must conduct discovery of Micron to find out if the uncharted, but accused
28  components, are covered by the unproduced licenses.

ASUSTEK COMPUTER INC. /ASUS COMPUTER
                                          INTERNATIONAL'S MOTION FOR SUMMARY
                                          JUDGMENT-Case No. 3:12-cv-02099-JST

F.3d 1355, 1366 n.12 (Fed. Cir. 2006) (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)) .  Thus, RR's bare assertion that a product is "exemplary" without any supporting facts is insufficient, especially when as discussed above the facts show that the charted products are materially different.

### III.    CONCLUSION

RR chose to disclose Infringement Contentions for only three versions of three computer products when using components supplied by particular manufacturers.  RR chose not to disclose theories of infringement for more than 300 other computer products and instead foist the burden of document production and discovery on ASUS for hundreds of uncharted, but accused, products.  Despite notice from ASUS that this approach did not comply with the Patent Local Rules—and despite losing this exact issue in both the Central District of California and in Delaware—RR chose not to disclose other theories of alleged infringement for the accused but uncharted products.

RR should bear the consequences of its choices.  Summary judgment of non-infringement for each uncharted product as well as for the uncharted versions of the few charted products is appropriate.  Granting summary judgment will narrow this case substantially and reduce the costs to both the parties and the Court as wsiell as make the case manageable and understandable to potential jurors.

DATED:  August 30, 2013              **PERKINS COIE** LLP


By:   */s/ James C. Pistorino*
        James C. Pistorino
        JPistorino@perkinscoie.com

Attorneys for Plaintiffs
ASUSTEK COMPUTER INC. and ASUS
COMPUTER INTERNATIONAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule 5-5(b).  Any other counsel of record will be served via email.


*/s/ James C. Pistorino*
James C. Pistorino

ASUSTEK COMPUTER INC. /ASUS COMPUTER
INTERNATIONAL'S MOTION FOR SUMMARY
JUDGMENT-Case No. 3:12-cv-02099-JST