1   John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
2   Jack Ko, Bar No. 244630
    JKo@perkinscoie.com
3   PERKINS COIE LLP
    11988 El Camino Real, Suite 200
4   San Diego, CA  92130-3334
    Telephone:  858.720.5700
5   Facsimile:  858.720.5799

6   James C. Pistorino, Bar No. 226496
    JPistorino@perkinscoie.com
7   PERKINS COIE LLP
    3150 Porter Drive
8   Palo Alto, CA 94304-1212
    Telephone:  650.838.4300
9   Facsimile:  650.838.4350

10  Attorneys for Plaintiffs
    ASUSTEK COMPUTER INC. and ASUS
11  COMPUTER INTERNATIONAL

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                            OAKLAND DIVISION

16

17  ASUSTEK COMPUTER INC. AND          Case No. 3:12-cv-02099-JST
    ASUS COMPUTER INTERNATIONAL,
18                                     **ASUSTEK COMPUTER INC. AND ASUS
              Plaintiffs,              COMPUTER INTERNATIONAL'S REPLY
19                                     IN SUPPORT OF MOTION FOR
         v.                            SUMMARY JUDGMENT OF
20                                     NON-INFRINGEMENT**
    ROUND ROCK RESEARCH, LLC.
21                                     DATE:    October 10, 2013
              Defendants.              TIME:    2:00 P.M.
22                                     COURTROOM:    9, 19th Floor

23

24                               **REDACTED**

25

26

27

28

# TABLE OF CONTENTS

Page

I. DISCUSSION ........................................................................................................... 1

  A. ASUS's Objections To RR's "Evidence" ................................................... 1

  B. There Is No Evidence of Alleged Infringement And Summary Judgment Should Be Granted ........................................................................ 1

  C. RR's Opposition ........................................................................................... 2

    1. RR's Claims About Discovery Are Not Correct ............................. 2

    2. RR's Effort To Disclaim The Accused Instrumentalities ............... 5

    3. RR's Request for Delay Should Be Denied .................................... 6

    4. RR Was Not Diligent In Seeking Discovery ................................... 6

      a. RR Did Not Set Forth Specific Facts Essential To Resist ASUS's Motion for Summary Judgment ............................. 8

      b. Discovery In Support Of Undisclosed Theories Of Infringement Would Be Futile ........................................... 10

    5. RR's Infringement Contentions And Theories of Infringement ............... 11

      a. The '949 Patent .................................................................. 12

      b. The '791 and '053 Patents ................................................. 13

      c. The '276 and '353 Patents ................................................. 13

    6. RR's Preference for a Motion to Strike .......................................... 14

    7. RR's Discussion of Licensed Entities ............................................ 14

II. CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anticancer, Inc. v. Cambridge Research & Instrumentation, Inc. et al.*,
   Case. No. 07cv97 .................................................................................................... 10

*Bank of Am., NT & SA v. PENGWIN*,
   175 F.3d 1109 (9th Cir. 1999) ..................................................................................... 6

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
   731 F.2d 831 (Fed. Cir. 1984) ..................................................................................... 2

*Brocade Comm. Sys., Inc. v. A10 Networks, Inc.*,
   843 F.Supp.2d 1018 (N.D. Cal. 2012) (Koh, J.) .......................................................... 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 2

*Collins, Inc. v. N. Telecom, Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000) ................................................................................... 2

*France Telecom, S.A.*,
   2013 U.S. Dist. LEXIS 63823 ............................................................................. 12, 13

*Fujitsu Ltd v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ................................................................................. 13

*Qualls v. Blue Cross of Cal., Inc.*,
   22 F.3d 839 (9th Cir. 1994) ........................................................................................ 6

*Sage Electrochromics, Inc. v. View Inc.*,
   No. C-12-06441-JST, 2013 U.S. Dist. LEXIS 127598 (N.D. Cal. Sept. 6, 2013) .... 6, 12

*Tatum v. City & Cnty. of San Francisco*,
   441 F.3d 1090 (9th Cir. 2006) .................................................................................... 8

*Tessera, Inc. v. Motorola Inc.*,
   No. C 12-692-CW, 2013 U.S. Dist. LEXIS 114459 (N.D. Cal. Aug. 13, 2013) ....... 12

OTHER AUTHORITIES

F.R.E. 602 ............................................................................................................................. 1
F.R.E. 802 ............................................................................................................................. 1
F.R.E. 901 ............................................................................................................................. 1
FED.R.CIV.P. 11 .................................................................................................................... 7
FED.R.CIV.P. 26(f) ................................................................................................................ 7
FED.R.CIV.P. 56(a) .............................................................................................................. 14
FED.R.CIV.P. 56(c)(2) ........................................................................................................... 1
FED.R.CIV.P. 56(c)(4) ..................................................................................................... 1, 10
FED.R.CIV.P. 56(d) ....................................................................................... 6, 8, 10, 11
FED.R.CIV.P. 56(f) ................................................................................................................ 6

Plaintiffs ASUSTeK Computer Inc. ("ASUS Taiwan") and ASUS Computer International ("ASUS California") (collectively "ASUS") motion for summary judgment should be granted in its entirety.

RR has presented no evidence of any kind to demonstrate a genuine issue of material fact from which a reasonable trier of fact could find by a preponderance of the evidence the alleged features were present in support of any of its claims of infringement. In response to the motion calling for the evidence of alleged infringement, RR offered none. Instead, RR offers a series of excuses for why RR has not come forward with evidence to support its claims. None of RR's excuses has any merit and, taken at face value, raise serious concerns about the good faith basis for virtually all of RR's allegations in this case.

ASUS motion for summary judgment should be granted in its entirety.

## I. DISCUSSION

### A. ASUS's Objections To RR's "Evidence"

Pursuant to Civil L.R. 7-3(c), ASUS objects to RR's Infringement Contentions as "evidence" of alleged infringement. *E.g.*, Opp. at 24 ("[RR's] infringement contentions set forth evidence."). RR's Infringement Contentions fail to comply with FED.R.CIV.P. 56(c)(4) and are objected to under FED.R.CIV.P. 56(c)(2) because they are hearsay (F.R.E. 802); and lack foundation and are not based on personal knowledge (F.R.E. 602), and are unauthenticated (F.R.E. 901). Infringement Contentions are not themselves "evidence" of alleged infringement and, at a minimum, are unsworn. However, the Infringement Contentions are admissible for the limited purpose of establishing what theories of alleged infringement RR disclosed or did not disclose.

### B. There Is No Evidence of Alleged Infringement And Summary Judgment Should Be Granted

RR's opposition challenges none of the material facts of ASUS's motion and, more importantly, RR offers no evidence of alleged infringement in support of any of RR's claims. As the party alleging infringement and facing a "no evidence" motion for summary judgment, RR bore the burden of demonstrating a genuine issue of material fact by coming forward with

evidence from which a reasonable trier of fact could find alleged infringement by a preponderance of evidence. *Collins, Inc. v. N. Telecom, Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). *See also Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). Having totally failed to offer any such evidence, ASUS's motion for summary judgment of non-infringement should be granted.

Even if the Court were willing to put aside RR's failure to disclose theories of alleged infringement by the uncharted Accused Instrumentalities, RR failed to offer any evidence in support of its claims of infringement. Thus, *e.g.*, RR simply offered nothing from which a reasonable trier of fact could find that *any* (much less *all*) of the claim elements from *any* of the asserted claims is present in *any* of the uncharted Accused Instrumentalities.

In addition to a "no evidence" motion for summary judgment, ASUS also presented evidence negating essential elements of RR's claims. Thus, ASUS presented evidence (in the form of the Chen Declaration) showing that:

1) each of the uncharted Accused Instrumentalities lacks the relevant components on which RR's infringement theories are based;

2) the B121 and EP121 lack eMMC memory of any kind that is a necessary starting point for alleged infringement of the '791 and '053 patents;

3) forty-one (41) of the Accused Instrumentalities lack DDR3 memory (much less the specific type) that is a necessary starting point for alleged infringement of the '949 patent; and

4) one hundred and three (103) of the Accused Instrumentalities have never been imported into the United States and are therefore beyond the reach of the United States patent laws.

In each instance, RR failed to offer evidence to demonstrate a genuine issue of material fact. Accordingly, summary judgment of non-infringement should be granted.

C.  **RR's Opposition**

1.  **RR's Claims About Discovery Are Not Correct**

Before turning to RR's excuses for why no evidence of alleged infringement was offered to resist ASUS's motion for summary judgment of non-infringement, nearly all of RR's

statements regarding RR's discovery efforts (or lack thereof) and ASUS's responses are simply not true.

RR claims:

> Significantly, prior to the disclosures in the Chen and Pistorino declarations, ASUS did not produce documents or provide interrogatory responses containing any of the underlying information regarding the allegedly Uncharted Products (with the exception of identifying some of the Image sensors.) Round Rock has not received any discovery from ASUS on the allegedly Uncharted Products despite its repeated requests.

Opp. at 19.

None of those statements is true. In November 2012, ASUS responded to RR's First Set of Interrogatories and, *e.g.*, ASUS's response to Interrogatory No. 3 identified various manufacturers for eMMC memory for each Accused Instrumentality (including the uncharted ones) and also indicated that neither the B121 nor the EP121 utilize eMMC memory. *See* Nowierski Declaration ("Nowierski Decl.") Ex. 14 (ASUS's Responses to First Set of Interrogatories (Nos. 1-11)) (submitted under seal) at 10. In April 2013, ASUS supplemented its interrogatory responses to include the particular part numbers supplied by each manufacturer and reiterated that neither the B121 nor the EP121 utilize eMMC memory. *See* Nowierski Decl. Ex. 19 (ASUS's First Supplemental Responses to Interrogatories (Nos. 3-5)) (submitted under seal) at 4. In addition, also in April 2013, ASUS produced more than 1,800 pages of data sheets for each of the components, whether charted or uncharted, including datasheets for the memory components the B121 and EP121 actually use (a kind called SPI).[1] *See* Pistorino Decl., Ex. A, Bates Nos. 6271-6298; 6299-6352. In addition, ASUS has also produced agreements with component suppliers (whether charted or not) including ███, ███, ███ and ███.

---

[1] As noted in all of ASUS papers, ASUS does not design or manufacture the components that are accused of infringing and, therefore, does not have documents reflecting, for example, the various layers of CMOS sensors. Those are documents that are in the possession of the component manufacturers. The component manufacturers publish information in the form of "data sheets" which instruct engineers how to use the components but do not otherwise reveal the specifics called for by the asserted claims. Nevertheless, ASUS has produced the data sheets provided by the component manufacturers for all of the relevant components whether charted or not.

The same series occurred with regard to CMOS sensors except that ASUS provided part numbers with its initial responses. For example, as part of its initial response in November 2012, ASUS indicated that the Nexus 7 used a CMOS sensor from ▓▓▓. *See* Nowierski Decl., Ex. 14 at 13-14. In April 2013, ASUS supplemented its response to include greater detail and again indicated that the Nexus 7 product uses a CMOS sensor from ▓▓▓. *See* Nowierski Decl., Ex. 19 at 9-10. As indicated above, in addition, on April 11, 2013, ASUS produced data sheets for each of the components whether charted or uncharted.[2] *See* Ex. B.

RR also claims that "... ASUS has not produced any sales documents ... for the accused products it does not dispute are at issue in this case[.]" Opp. at 8. Paragraph 13 of the Wilcox declaration makes a similar statement. Those statements are not correct. In fact, on March 26, 2013, ASUS produced almost 60 pages of financials covering every Accused Instrumentality - whether charted or not - for the period up to six years before suit was filed. *See* Ex. C, Bates Nos. 5241-5299, Ex. D (excerpt reflecting TF101, EP121, SL101, Nexus 7, TF700T and TF300T sales).

RR claims that ASUS produced "just over 5,300 pages" in response to all of RR's discovery requests. Opp. at 6. While ASUS does not believe that simple page counts are a great indicator of the quality of discovery responses,[3] to date, ASUS has produced over 7,000 pages of materials.

RR's claims about its own discovery efforts and ASUS's responses are not correct.[4]

---

[2] With regard to DDR3 memory, given the large number of accused products, ASUS initially intended to direct RR to documents. When it was determined that almost any approach would be a massive undertaking given the breadth of RR's allegations, in April 2013, ASUS instead provided RR with a list of the manufacturers. In addition, on April 11, 2013, ASUS produced data sheets for the components whether charted or uncharted. Exs. C & D.

[3] For example, RR failed to produce the licenses to ▓▓▓ and ▓▓▓ or any documents reflecting ▓▓▓ products embodying the patents-in-suit, e.g. Indeed, RR only produced the ▓▓▓ license recently when ASUS indicated that it was prepared to file a motion to compel.

[4] RR's claims about its third-party discovery efforts are also contradicted by the attached declarations from counsel for ▓▓▓ and ▓▓▓. RR claims, e.g., "In addition, at least Round Rock's negotiations with various third parties served with subpoena earlier in 2013 remain ongoing, including ▓▓▓, ▓▓▓, and ▓▓▓." Opp. at 9. In fact, RR had no contact with ▓▓▓ between January 15, 2013 (when ▓▓▓ responded it had no documents) and August 29, 2013. *See Declaration of Duane H. Mathiowetz.* Ex. E. RR states that it is "seeking further discovery" on the ▓▓▓ product used in the Nexus 7 device. Opp. at 23, n. 42. Ex. G. In fact,

### 2. RR's Effort To Disclaim The Accused Instrumentalities

Tellingly, RR's first argument in opposition to ASUS's motion is that the Accused Instrumentalities that are not charted are not really accused of infringement in this case. Opp. at 15-17. That is remarkable position given that fact that Exhibit 1 to RR's Infringement Contentions lists each such product as an Accused Instrumentality (*see* Ex. 2 to Nowierski Decl. ISO of Opp. to MSJ), that RR has demanded (and ASUS provided) discovery on the uncharted Accused Instrumentalities, and that this case has been active for more than one year. Indeed, games about what is and is not accused of infringement is precisely the "shifting sands" that the Patent Local Rules were enacted to combat.

ASUS has never argued that the Accused Instrumentalities (whether charted or not) were not part of this case. They most certainly are and ASUS seeks a declaration of non-infringement of each of them. Instead, ASUS has pointed out that RR has failed to disclose a theory of alleged infringement by the uncharted Accused Instrumentalities[5] and having failed to do so, RR is precluded from offering evidence in support of undisclosed theories of infringement at this time. In addition, ASUS has shown that there is no evidence of alleged infringement in any event, and RR has failed to demonstrate a genuine issue of material fact that there is.

RR's effort to disclaim the uncharted Accused Instrumentalities is nothing more than an effort to avoid the consequences of RR's deliberate decision not to disclose theories of infringement for the uncharted products[6] or to support its claims of infringement with evidence while simultaneously foisting discovery expenses on ASUS.

---

RR withdrew its subpoena to ▮▮▮ on January 15, 2013 (shortly after serving it) and has offered nothing that it has had continued contact. Ex. F. Of course, RR has had no contact with ▮▮▮ since the Court quashed RR's subpoena. Ex. G.

[5] Alternatively, the only theory disclosed is a theory of infringement based on the components that RR actually charted and contended meet each claim limitation.

[6] Either because there never was any basis to do so, the components are licensed (*e.g.*, charting a ▮▮▮ component could be a basis for a claim of breach of the license agreement by ▮▮▮, or because RR did not want to undertake the effort to find out if there was a basis for its claims.

### 3. RR's Request for Delay Should Be Denied

After denying that the Accused Instrumentalities are actually accused, RR moves next to the charge that ASUS's motion is "early" or "premature" (though served after a year of discovery) and requests more time for RR to conduct discovery. Opp. at 17-20. Additionally, RR asserts that it "was precluded from … taking discovery" (Opp. at 1), and that ASUS "intentionally withheld" discovery (Opp. at 2), "evade[d] providing discovery" (Opp. at 2), and/or "stonewalled" discovery (Opp. at 18).

RR's request should for delay should be denied because: 1) RR was not diligent in seeking discovery; 2) RR did not set forth specific facts that its hopes to discover that would preclude granting ASUS's motion; and 3) further discovery in support of undisclosed theories of infringement would be futile.

### 4. RR Was Not Diligent In Seeking Discovery

It is elemental that a party seeking delay under FED.R.CIV.P. 56(d)[7] must show that it "diligently pursued its *previous* discovery opportunities." (emphasis added). *See Brocade Comm. Sys., Inc. v. A10 Networks, Inc.*, 843 F.Supp.2d 1018, 1027 (N.D. Cal. 2012) (Koh, J.) (*citing Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999); *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). In the present case, RR has not made a showing that it was diligent in pursuing its discovery opportunities prior to filing its Opposition and RR certainly was not.

First, the uncharted Accused Instrumentalities are not custom built, secret, or exorbitantly priced.[8] Thus, to the extent that anyone wants one (and they are available in the United States),

---

[7] Prior to 2010, FED.R.CIV.P. 56(d) was formerly FED.R.CIV.P. 56(f) and the change in designation was without substantive change to the Rule itself. Thus, the precedent of FED.R.CIV.P. 56(f) applies to FED.R.CIV.P. 56(d).

[8] By contrast, that was the situation in *Sage Electrochromics, Inc. v. View Inc.*, No. C-12-06441-JST, 2013 U.S. Dist. LEXIS 127598, at *6 (N.D. Cal. Sept. 6, 2013). There, the accused products were custom-made and not publicly available. Nevertheless, the patentee (Sage) tried and failed to obtain samples in the pre-suit period and also sought discovery prior to the time it Infringement Contentions were due. Given the non-public nature of the accused products and the patentee's efforts to discovery information about them before serving Infringement Contentions, this Court held that the contentions were sufficient. By contrast, ASUS products are publicly available and RR made absolutely no discovery efforts before serving its Infringement Contentions.

1  then it is a simple matter to purchase or inspect one.[9] Even in the pre-suit period, RR has not
2  shown why, *e.g.*, RR could not know that the B121 product lacks eMMC memory altogether or
3  that all of the other uncharted Accused Instrumentalities lack the relevant components,
4  components manufactured by ███ or ███, or otherwise allegedly meet the claim
5  limitations.

6  Second, pursuant to FED.R.CIV.P. 26(f), formal discovery in this case opened no later than
7  August 16, 2012 (the last day to conduct the FED.R.CIV.P. 26(f) conference) and the parties
8  submitted a joint case management statement on August 30, 2012.[10] *See* D.I. 33. RR has not
9  shown how it was diligent when, as RR admits, RR did not seek discovery of any kind in this
10 case until after RR served its Infringement Contentions on September 20, 2012. Opp. at 6.[11]
11 Nothing (other than a lack of diligence) prevented RR from serving discovery between August 16
12 and September 20, 2012, that would have determined, *e.g.*, that 41 products lack DDR3 memory
13 before RR named them as Accused Instrumentalities on the grounds that they did.

14 Third, after ASUS responded to RR's discovery requests in November 2012 and identified
15 component suppliers/components, nothing (other than a lack of diligence) prevented RR from
16 taking discovery from the suppliers or otherwise determining the features of the uncharted
17 Accused Instrumentalities/components between then and January 2013 (when RR sent subpoenas
18 to *some* of the suppliers)[12] or thereafter.

---

[9] For example, the accused Google Nexus 7 product is not a secret and has been on sale in the United States since June 2012. Anybody who wants one can have one for $199 and it would be trivial to open it to determine that the CMOS sensor used therein is the ███ rather than the accused ███ sensor.

[10] Indeed, discovery could have opened even earlier had RR sought an earlier FED.R.CIV.P. 26(f) conference)

[11] Indeed, it is a wonder how RR could have met its FED.R.CIV.P. 11 obligations generally or, *e.g.*, had a basis for (much less made a showing of) its claims that the ███ DDR3 memory in the K52DR product was representative of the memory in the accused EeePC1015PE product that lacks DDR3 memory altogether. Further, the availability of formal discovery during this period also belies RR's claims that it would otherwise be forced to buy everything or reverse engineer everything. Opp. at 2, 8 n. 25, 14

[12] It is particularly hard to see how RR was diligent when it subsequently withdrew its subpoena to ███ within a week of serving it. Ex. F. Likewise, it is hard to see how RR was diligent with respect to ███ when ███ responded to RR's subpoena on January 15, 2013 that it had no documents and RR did not again contact ███ until the day before ASUS filed its motion for summary judgment of non-infringement. Ex. E.

Fourth, after ASUS supplemented its discovery responses with even more information in April 2013, nothing (other than a lack of diligence) prevented RR from taking discovery from, *e.g.*, DDR3 suppliers or examining devices, or anything else between then and the day before RR filed its opposition on September 13, 2013.

Fifth, the day before RR filed its opposition, RR sent out a flurry of subpoenas, requests for production and deposition notices. The subpoenas were to third parties ▆▆▆, ▆▆, ▆▆▆, ▆▆, ▆▆, ▆▆ and ▆▆▆▆▆▆▆▆. The day before RR filed its opposition RR also served notices for deposition of four ASUS's personnel that ASUS identified in its Initial Disclosures served in September 2012. In addition, RR served a 30(b)(6) notice seeking a witness from ASUS to testify as to fifty (50) topics. Until the day before RR filed its opposition brief, RR had not sought a single deposition from ASUS. Indeed, nothing (other than a lack of diligence) prevented RR from serving or taking all of the discovery sent on September 12, 2013 before then.[13]

Sixth, to the extent that RR was dissatisfied with ASUS's discovery responses or production, felt "stonewalled", or anything else, RR could have conducted meet and confers and, if still dissatisfied, could have ultimately sought relief from this Court. Between late January 2013 and the date RR filed its opposition, no such meet and confers were held and, of course, RR did not seek relief from this Court.

RR did not make a showing that it was diligent in pursuing its discovery opportunities before seeking delay.

      a. **RR Did Not Set Forth Specific Facts Essential To Resist ASUS's Motion for Summary Judgment**

In addition to diligence, a party seeking delay under FED.R.CIV.P. 56(d) must "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *See, e.g., Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090,

---

[13] RR's request for delay based on discovery sent September 12, 2013 for data sheets is particularly difficult to follow. *See* Wilcox Decl. at ¶¶ 31 (RFP 58) and 32 (subpoena to ▆▆▆). Given that ASUS already produced those materials, there is no basis for delay and RR could have reviewed them before filing its Opposition.

1100 (9th Cir. 2006). RR's effort to make a showing is founded on the Wilcox Declaration and referenced on pages 17-20 of RR's Opposition.

The relevant facts fall into two categories:

1) those facts of which ASUS made an affirmative showing (*e.g.*, that 103 Accused Instrumentalities have never been shipped to or sold in the United States, that neither the B121 nor EP121 have eMMC memory, that 41 products accused on infringing the '949 patent lack DDR3 memory); and

2) specific limitations of each asserted claim as they relate to the uncharted Accused Instrumentalities.

With regard to the facts on which ASUS has made an affirmative showing, the Wilcox Declaration merely offers that RR hopes to "test" (or even more hopefully "rebut") them. *See, e.g.*, Wilcox Decl. at ¶¶ 15 and 16. Unstated, however, is how such discovery would preclude granting ASUS's motion for summary judgment. For example, the Wilcox Declaration states that RR hopes to "test" the Chen declaration and "identify" whether the B121 and EP121 products "include flash memory, and if so, whether the flash memory is of the eMMC type." Wilcox Decl. at ¶¶ 18-20. Even if RR could conclusively show that the B121, *e.g.*, has eMMC memory that would not preclude summary judgment of non-infringement of Claim 1 of the '053 patent, *e.g.*, by the B121 because RR has offered no admissible evidence that the relevant component is a "memory device having an adjustable current consumption" as required by Claim 1. The same is true for all of the other facts that ASUS has made an affirmative showing of. Even if RR could prove that they were false, RR has not explained how summary judgment of non-infringement would be precluded in light of RR's failure to offer the basic evidence from which infringement might be found by comparing the claim elements to evidence.

With respect to the numerous individual elements of each asserted claim that ASUS showed there was no evidence of (Mot. at 13-14), the Wilcox Declaration simply states that RR hopes to find something related to them generally or just lists each one. For example, for the '949 patent, ASUS identified five claim elements of which there was no evidence. The Wilcox Declaration simply lists them (Wilcox Decl. at ¶ 57) before stating that RR "expects" to find "facts to show the different modes that memory operates in, the mechanics of the transition between those modes, the circuitry used to select between modes, and other information relevant

1  to ASUS infringement of Round Rock's patents." Wilcox Decl. at ¶¶ 59, 60, *e.g.*. That does not
2  set forth "specific" facts sought or show how those facts would preclude summary judgment.
3  Moreover, for those products where ASUS did make an affirmative showing, RR did not explain
4  how, for example, something matching all the claim elements would preclude summary judgment
5  when the product has had no contact with the United States.

6      At base, RR simply offers is that it hopes to start discovery and uncover something related
7  to its claims. That fails to comply with the required showing to obtain delay under FED.R.CIV.P.
8  56(d) and RR did not make a showing of "specific facts" of which it needed discovery and
9  explain how they would preclude summary judgment.

            **b.    Discovery In Support Of Undisclosed Theories Of Infringement Would Be Futile**

12      Indeed, even if further discovery could somehow allow RR to match something to *every*
13  element of *any* claim for *any* uncharted Accused Instrumentality *and* show that ASUS's
14  affirmative showings were false, that discovery would be futile. This is so because such evidence
15  would be inadmissible to resist ASUS's motion for summary judgment of non-infringement by
16  the uncharted Accused Instrumentalities because RR is precluded from offering it in support of
17  theories of alleged infringement not disclosed in RR's infringement contentions. *See*
18  FED.R.CIV.P. 56(c)(4).

19      Numerous decisions from this and other districts with similar Patent Local Rules have
20  granted summary judgment of non-infringement when the patentee attempted to resist a motion
21  for summary judgment by offering evidence in support of an undisclosed theory of infringement.
22      Indeed, this is not the first Court to face very similar facts and both deny a FED.R.CIV.P.
23  56(d) request and grant a motion for summary judgment where the Infringement Contentions
24  failed to disclose a theory of alleged infringement. In *Anticancer, Inc. v. Cambridge Research &*
25  *Instrumentation, Inc. et al.*, Case. No. 07cv97, S.D. Cal., (Sammartino, J) (April 14, 2008).
26  Anticancer alleged infringement of five United States patents. However, Anticancer subsequently
27  served Infringement Contentions that failed to set forth a theory of alleged infringement by
28  defendant Merck. Merck subsequently moved for summary judgment of non-infringement of

1  each asserted patent on the grounds both that there was no evidence of alleged infringement and
2  that Anticancer was barred from offering any because no theories were disclosed in the defective
3  Infringement Contentions. The Court subsequently both denied Anticancer's FED.R.CIV.P. 56(d)
4  (then 56(f)) request (because more evidence would not "cure" the Infringement Contentions) and
5  granted Merck's motion for summary judgment of non-infringement of each of the five patents.
6  *Id.* at 2, 5-8, 12-13. *See* Ex. H.

7  Likewise, even if RR could take discovery that showed that the ▮▮▮▮▮▮▮▮▮▮
8  sensor has, *e.g.*, a "color filter array layer" that has been "planarized" ('353 patent, Claims 1 and
9  13), RR has never disclosed a theory that the ▮▮▮ sensor has a CFA layer, that it was
10 "planarized", etc. Thus, the discovery would be futile and would not "cure" the defects of RR's
11 Infringement Contentions.

12 Round Rock's FED.R.CIV.P. 56(d) request should be denied.

13      **5.    RR's Infringement Contentions And Theories of Infringement**

14 Much of RR's briefing is dedicated to defending RR's failure to comply with the Patent
15 Local Rules and decision not to chart each Accused Instrumentality as required by Patent L.R.
16 3-1(c). RR's defense is founded around the mutually exclusive notions that:

17 
18 - it was/is "virtually impossible" (Opp. at 1) or "impossible" (Opp. at 10) for RR to determine which components are used (if any) while RR simultaneously knows, e.g., that "all" seven products accused of infringing the '791 and '053 patents have eMMC memory (even the B121 and EP121);
19 

20 - that RR's Infringement Contentions were "representative" of the components RR professes not to know (indeed, that RR "specifically show[ed]" how they were representative) but that RR cannot meet its burden to resist summary judgment without discovery;
21 
22 

23 - that RR accused standards of infringing but that RR cannot demonstrate alleged infringement by the public standards because RR does not have discovery from others.
24 

25 These arguments simply do not make sense. Instead, they reflect the fact that RR made no
26 effort to determine what was or was not in the Accused Instrumentalities at any time prior to
27 serving its Infringement Contentions and now merely seeks to forestall summary judgment
28 through illogical arguments that cannot be squared with RR duties.

At the end of the day, RR does not assert that charts for the uncharted Accused Instrumentalities would be identical to the few charts RR actually did serve.[14] Indeed, on the face of it they certainly would not be. However, more importantly, RR has not shown or explained how they would be. By contrast, the plaintiff in *Tessera, Inc. v. Motorola, Inc., et al.*, (cited by RR) did so. There, the Court noted: "The Special Master then went on to explain how *Tessera* demonstrated that commonality existed among the accused products in the fundamental characteristics at issue here." RR has never done that and RR's arguments that it did (e.g., with respect to the '276 patent) are not serious. Nevertheless, at this point it is irrelevant, because RR did not oppose ASUS' motion with actual evidence.

Equally unavailing is RR's effort to explain its failure to chart the Accused Instrumentalities by claiming that its provided as much information "of which [it] was aware" and reliance on *France Telecom*. Opp. at 13-14. The *France Telecom* decision is very similar to this Court's decision in *Sage Electrochromics*. In both cases, the defendants products were not publicly available and the defendant resisted pre-Infringement Contention discovery from the plaintiffs. In the face of sheer unavailability, both Court's found that the plaintiff had satisfied its burden. By contrast, ASUS products are publicly available and RR did not seek discovery in any event prior to serving its Infringement Contentions. Thus, the only thing that prevented RR from charting the ▓▓▓ sensor (if RR contended it infringed) was RR own lack of interest and/or deliberate decision to not disclose a theory of infringement by the uncharted Accused Instrumentalities.

### a. The '949 Patent

While RR's opposition contains cites to various cases concerning industry standards and infringement, the Court need not delve further into the issue or the sufficiency of RR's Infringement Contentions in this regard because RR offered no actual evidence of infringement sufficient to demonstrate a genuine issue of material fact. Thus, even if RR contended that anything practicing the JESD 79-3E standard infringed the '949 patent (which it did not and the

---

[14] Even those charts include glaring errors that ASUS expects will be the subject of additional motions.

claims do not actually cover the standard), RR needed to submit evidence from which a reasonable trier of fact could find by a preponderance of the evidence *both*: 1) that the standard *necessarily* infringes the asserted claims of the '949 patent; and 2) that the Accused Instrumentalities practice the standard. *See, e.g., France Telecom* ("... not all industry standards are created equal" and noting both a specificity and optionality issues even when addressing standards); *Fujitsu Ltd v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010). RR could have offered admissible evidence comparing the claim elements to the standard and establishing that the products practice the standard. Given that the standards are public documents and ASUS's products are also publicly available, nothing prevented RR from at least attempting to make that showing.

In light of the fact that RR submitted nothing of the kind, RR completely failed to carry its burden and summary judgment of non-infringement should be granted.

### b.   The '791 and '053 Patents

RR's failures with respect to the '949 patent are the same as its failures with respect to the '949 patent. RR did not submit any evidence from which a reasonable trier of fact could find by a preponderance of the evidence *both*: 1) that the standard *necessarily* infringes the asserted claims of the '791 and '053 patents; and 2) that the Accused Instrumentalities practice the standard.

In light of the fact that RR submitted nothing of the kind, there is no point in even discussing industry standards, infringement contentions, etc. RR completely failed to carry its burden and summary judgment of non-infringement should be granted.

### c.   The '276 and '353 Patents

RR's failures with respect to the '276 and '353 patents are particularly noteworthy. There is no standard that RR could even point in the general direction of as even remotely relevant to these patents and alleged infringement. Instead, RR resorts to the following:

> Round Rock's charts make clear why the Eee Slate EP121 is a representative product - it, like all other products accused of infringing the '276 and '353 patents, contains common elements present in a CMOS image sensor capable of taking digital images with a reasonable quality (around two megapixels). Further, based on the quality of the images that

those image sensors have the capability to take and in view of the claim construction order this court issued, the accused products have a reasonable likelihood of infringing the '276 and '353 patents.

Opp. at 11. *See also* Opp. at 23. That statement is far afield from Patent L.R. 3-1(c)'s requirements for a chart for each Accused Instrumentality, the claim elements, or the evidence necessary to resist a motion for summary judgment.

### 6. RR's Preference for a Motion to Strike

RR also asserts that it would have preferred it if ASUS has invested its resources in bringing a motion to strike rather than ASUS putting RR to its burden through a motion for summary judgment and/or that a motion for summary judgment is improper. Opp. at 1, 17 n. 35. Of course, a motion putting the claimant to their burden of proof is never improper when there is no basis for the claim. Indeed, the Rules command Court's to grant such motions. *See* FED.R.CIV.P. 56(a) ("… *shall* grant summary judgment …") (emphasis added). While ASUS may have brought a motion to strike (or other motions challenging the basis for RR's claims), a motion to strike would have not have resulted in a determination of whether RR's claims actually had merit. ASUS motion for summary judgment has achieved that result and is the proper vehicle for challenging baseless claims.

### 7. RR's Discussion of Licensed Entities

Page 19-20 of RR's Opposition includes a discussion of licensed entities (*e.g.*, Samsung) and exhaustion and asserts that ASUS did not meet its burden of proving exhaustion and that summary judgment of non-infringement based on exhaustion should be denied.

RR misapprehends the nature of ASUS's licensed entities discussion. ASUS has not (yet) sought summary judgment of non-infringement based on exhaustion. Instead, ASUS pointed out that RR's allegations included claims against licensed entities to demonstrate: 1) that RR did not investigate its own allegations enough to have a good faith basis for alleged infringement (and could not make a showing that a component from one manufacturer is "representative" of alleged infringement by a different component from a different manufacturer); and 2) that there were real reasons that RR may have chosen not to chart the uncharted Accused Instrumentalities.

Nevertheless, ASUS did put RR to the burden of coming forward with evidence of alleged infringement of components manufactured by ███, ███, and ███, *e.g.* Mot. at 13. Had RR done so, then the exhaustion issue with regard to those manufacturers would have been joined. However, because RR totally failed to do so, the Court need not reach the issue of exhaustion and summary judgment should be granted.[15]

## II. CONCLUSION

Taken at face value, nearly the entirety of RR's opposition is founded on fundamental misconceptions of the duty to have a good faith basis for making allegations of infringement, the role of Infringement Contentions in the Patent Local Rules, and what constitutes "evidence" necessary to resist a motion for summary judgment.

Discovery in this case is nearly over and ASUS needs to know which products there is a real basis for alleging infringement by. RR's allegations have been tested and found wanting and summary judgment should be granted. Removing RR's baseless allegations will also make this case more manageable for trial and the jury and enable the parties to focus their expert reports which are due soon.

ASUS motion should be granted in its entirety.

DATED: September 20, 2013            PERKINS COIE LLP

                                     By: _/s/ James C. Pistorino_
                                         James C. Pistorino
                                         JPistorino@perkinscoie.com

                                     Attorneys for Plaintiffs
                                     ASUSTEK COMPUTER INC. and ASUS
                                     COMPUTER INTERNATIONAL

---

[15] Exhaustion will likely remain an issue in this case nevertheless because RR's rights with respect to one of the three components actually charted are exhausted. ASUS will be addressing that issue in a separate paper.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5-5(b). Any other counsel of record will be served via email.

/s/ James C. Pistorino
James C. Pistorino