October 29, 2013

**VIA ELECTRONIC FILING**

The Honorable Jon S. Tigar
U.S. District Court Judge, N.D. Cal.
San Francisco Courthouse, Courtroom 9 – 19th Fl.
450 Golden Gate Avenue, San Francisco, CA 94102

Re:     *ASUS Computer Int'l v. Round Rock Research*, *LLC*, Case No. 3:12-CV-02099-JST

Dear Judge Tigar:

   Pursuant to the Court's September 17, 2013 Standing Order, Defendant Round Rock Research, LLC ("Round Rock") and plaintiff and counterclaim defendant ASUS Computer International and counterclaim defendant ASUSTeK Computer Inc. (collectively "ASUS") submit this joint letter brief.

**I.     ROUND ROCK'S POSITIONS**

   Round Rock seeks an order compelling ASUS to immediately supplement its document production and certain interrogatory responses.  Specifically, Round Rock seeks:  (1) certain product schematics; (2) supplemental interrogatory responses and document production relating to product sales; (3) product requirement documents; (4) all license agreements related to the accused products; and (5) a response to Round Rock's non-infringement contention interrogatory.[1] Though the parties attempted to resolve Round Rock's issues relating to that discovery during a discussion on October 2, 2013, they were unable to reach a resolution.[2]  Due to the impending close of fact discovery (November 22, 2013), Round Rock respectfully requests expedited resolution of the issues outlined in this letter brief.

   **A. Background**

   Although ASUS Computer International ("ACI") affirmatively filed this lawsuit on April 26, 2012 seeking a declaratory judgment of non-infringement,[3] invalidity, and unenforceability of six of the patents in Round Rock's patent portfolio, ACI and its parent, counterclaim-defendant ASUSTeK Computer Inc. (collectively, "ASUS"), have provided only limited discovery to date. (D.I. 1.)  Round Rock identified the accused products on September 20, 2012, in its Preliminary Infringement Contentions.  Round Rock served its first set of requests for production to ASUS (nos. 1-57) on September 28, 2012, its second set of requests (nos. 58-77) on August 26, 2013, and its third set of requests (nos. 78-80) on October 1, 2013.  Round Rock served its first set of interrogatories on ASUS (nos. 1-11) on October 5, 2012, its second set of interrogatories (nos. 12-15) on August 28, 2013, and its third set (nos. 16-21) on October 1,

---

[1] ASUS's production is deficient in many more respects, but this list comprises Round Rock's prioritized list of discovery needs.
[2] The parties have also discussed many of these issues in previous discussions dating back to January 30, 2013.
[3] Notably, ASUS did not attempt to identify any products for which it seeks a declaratory judgment of non-infringement.

2013.  Round Rock now seeks to compel meaningful responses to its straightforward document requests and interrogatories.  Although ASUS chose to file this lawsuit, ASUS has simply refused to provide discovery commensurate with the issues in the case, despite Round Rock's repeated efforts to persuade ASUS to provide that discovery without Court intervention.[4]

Round Rock first raised many of these issues in a January 24, 2013 letter (attached as Exhibit A).  That letter specifically addressed: (1) ASUS's refusal (as stated in its discovery responses) to provide discovery relating to all accused products based on the assertion that Round Rock's infringement contentions were deficient;[5] (2) ASUS's need to supplement its responses to Interrogatories Nos. 1, 4, 8, and 10; (3) ASUS's inappropriately restrictive views regarding document production; (4) ASUS's refusal to provide documents responsive to document request nos. 2-6, 13, 17-19, 21, 23, 25 and 53; and (5) ASUS's stated desire to meet and confer with respect to Interrogatory No. 7 (relating to sales figures) and Document Request Nos. 29, 31, and 41.  The parties met and conferred on those issues on January 30, 2013.  On February 19, ASUS responded by letter (attached as Exhibit B), promising, in relevant part, to supplement its responses to interrogatories nos. 1, 4, 8, and 10 and document request no. 1.  Despite that promise, other than partially supplementing its response to Interrogatory Nos. 4 and 10, ASUS has not supplemented any of those responses.  Round Rock re-raised those issues on September 18, addressing various remaining deficiencies in ASUS's production (attached as Exhibit C), and in another discussion with ASUS's counsel on October 2.

Fact discovery is currently scheduled to close in less than one month, yet plaintiff ASUS continues to withhold most of Round Rock's requested discovery.  Although ASUS's counsel recently represented (again) that ASUS might provide at least some of the requested discovery, and although ASUS has provided some additional documents since the first draft of this motion was circulated to them, ASUS has not definitively identified all that it plans to produce nor a date certain for completion of any such production.  In light of ASUS's unfulfilled promises, and because the end of fact discovery is rapidly approaching, the Court should compel ASUS to provide all requested discovery within the next two weeks.  (*See also* D.I. 112, at 3 ("ASUS remains under the obligation to supplement its discovery.")).

**B. Argument**

   **1. Product Schematics / Technical Drawings / Flowcharts**

Though ASUS's counsel recently promised to "consider" producing product schematics for all accused products, ASUS did not commit to doing so.  To date and since that request, ASUS has only produced product schematics or technical drawings for a selected group of products accused of infringing the '949 patent.[6]  (Document Request No. 24). Yet Round Rock

---

[4] ASUS has made some document productions and has served supplemental interrogatory responses to certain interrogatories since Round Rock initially sent the draft of this letter to ASUS on Thursday, October 10.  However, such productions are not equal in scope to the discovery Round Rock seeks to compel here. Nor is there any way for Round Rock to determine whether ASUS's productions are complete.

[5] In its recent October 8, 2013 Order , the Court already rejected that contention, and observed that Round Rock was entitled to pursue discovery with respect to all of the accused products.  (D.I. 112, at 3-5).

[6] Notably, prior to October 15, 2013, ASUS produced not a single product schematic.  On that date, ASUS produced a limited number of product schematics.  It is clear from the deposition of ASUS's corporate representative, Mr.


is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" so long as the discovery "appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *E.g.*, *Digital Reg of Tex., LLC v. Adobe Sys.*, No. 12-01971, 2013 U.S. Dist. LEXIS 142839, at *9 (N.D. Cal. Sept. 30, 2013) (quoting Fed. R. Civ. P. 26(b)(1)). The requested documents relate to infringement issues in the case (e.g., the "coupling" required in all asserted claims of the '791 patent; the "sense amplifier circuitry" required by certain asserted claims of the '791 patent; and whether ASUS's products meet the limitations of the asserted claims of the '053, '791, and '949 patents, as construed by the court in its *Markman* order), and thus are relevant to ASUS's non-infringement claims and Round Rock's infringement counterclaims. The documents are also required by the Patent Local Rule 3-4(a). *See* N.D. Cal. Pat. L. R. 3-4(a). Because the documents are relevant to both parties' claims and because the Patent Local Rules require their production, ASUS should be compelled to produce such documents immediately. In order to narrow the dispute between the parties, Round Rock seeks to compel the product schematics and technical drawings for the products accused of infringing the '791, '053, and '949 patents, including any schematics or technical drawings for the components in those products.

To the extent that ASUS contends it does not have such drawings of such accused products or components of accused products in its possession, ASUS should be compelled to produce all communications with third parties (relevant to, e.g., Document Request Nos. 19, 21, 39) showing whether ASUS is entitled to such information by a supply agreement or any other such agreement.

  2. **Sales Data**

ASUS has not provided adequate discovery relating to the sales and revenues of the accused products. As of October 11, 2013, ASUS has produced (1) one spreadsheet showing yearly "quantity" and "amount" for certain ASUS products, without any identification of what those numbers represent, or for what geography; and (2) four spreadsheets showing the amount of money ACI paid its parent ASUSTeK for various components, without providing any information linking those components to accused products or identifying how much ASUSTeK paid. Notably, ASUS has not produced (1) documents showing cost or profits of the accused products on a monthly, quarterly, or annual basis[7] (Document Request Nos. 38, 39, 49); (2) documents showing sales of accused products in the United States on a monthly or quarterly basis (Document Request No. 38); (3) documents showing projected sales of any of the accused products; (4) documents showing sales of the accused products after September 30, 2012 (Document Request No. 38, 39, 49), (5) documents showing the cost that ASUS purchased the components from third parties (Document Request No. 39); or (6) responses to interrogatories nos. 7 or 8, requesting past sales and future sales projections (including gross profits, net profits, gross revenue, net revenue, and units sold). Yet those responses and documents are relevant to

---

Jian, that ASUS has not produced all schematics—Mr. Jian testified that ASUS has only produced some schematics relevant to only certain products accused of infringing only the **'949** patent. However, on the parties' October 2, 2013 meet and confer, Round Rock's counsel made clear that it was concerned at least about the coupling limitations that appear in the '791 patent.

[7] Though ASUS's counsel has asserted at deposition that certain costs information has been produced in a specific spreadsheet, ASUS corporate witnesses to date have been unable to confirm counsel's assertion.

Round Rock's damages claims. *See, e.g.*, *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-CV-2226 SI KAW, 2013 WL 707914 (N.D. Cal. Feb. 26, 2013) (allowing discovery of sales data from defendant's products, including non-infringing accessories, under *Georgia-Pacific* factors 6, 8, and 11); *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 04-4801 JW, 2006 WL 1465313 (N.D. Cal. May 24, 2006) (compelling disclosure of prospective sales because they were relevant to damages); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Accordingly, ASUS should be compelled to (1) respond to interrogatories nos. 7 and 8, and (2) produce documents sufficient to show cost, profits, revenue, and units sold, on at least a quarterly basis, for all accused products and their components through the present date, and (3) produce documents relating to sales projections for all accused products.

### 3. Product Requirement / Product Development Documents

During the parties October 2, 2013 meet and confer, ASUS's counsel refused to search for and produce documents related to the design and development of, or business plans for, the accused products (*e.g.*, documents responsive to document request nos. 22-24). From the testimony ASUS provided, it is clear that such documents, including "sales kits," research relating to market demand reports, and other product development documents, exist in ASUS's possession. (*See, e.g.*, Wang Dep. Tr. at 52:13-55:3, 145:24-146:23, 181:21-184:8; Jian Dep. Tr. at 62:10-16 (Exhibit G)). However, ASUS has not yet produced such documents. Yet such documents are relevant to, e.g., the demand for the inventive features claimed in the patents-in-suit, damages, as well as secondary considerations of nonobviousness. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) ("**Such secondary considerations as** commercial success, **long felt but unsolved needs**, failure of others, etc., **might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented**." (emphasis added)).[8] ASUS should be compelled to search for and produce such relevant documents for all accused products.

### 4. License Agreements Related To The Accused Products

Although ASUS agreed in February to supplement its response to Interrogatory No. 10, which seeks identification of all license agreements and indemnification agreements concerning any accused product, ASUS only supplemented its response to identify the few indemnification agreements it produced. Moreover, ASUS has not produced all such patent license agreements (*see, e.g.*, Document Request Nos. 30, 41).[9] ASUS has produced a handful of software license agreements for the accused products, but have not endeavored to produce any patent license agreements other than software licenses concerning the accused products. Patent license

---

[8] Since Round Rock sent ASUS the draft of this motion on October 10, ASUS has provided a selected few limited design documents. However, ASUS has not yet produced those documents as they relate to all accused products.

[9] For example, based on publicly available documents ASUS has entered into patent license agreements with at least Commonwealth Scientific and Industrial Research Organization (http://www.zdnet.com/microsoft-fujitsu-asus-settle-with-csiro-1339295967/), International Business Machines Corp. (http://www.pcworld.idg.com.au/article/321139/asustek_ibm_reach_agreement_patent_dispute/), LaserDynamics Inc. (http://www.law360.com/articles/249397/laserdynamics-gets-9-3m-in-2nd-round-of-patent-suit), Saxon Innovations LLC (http://www.law360.com/articles/171047/asus-deal-cinches-saxon-computer-patent-war), The TPL Group (http://www.alliacense.com/asustek-purchases-moore-microprocessor-patent-portfolio-license/), and Wi-Lan Inc. (http://www.wi-lan.com/news/news-releases/news-release-details/2008/Wi-LAN-and-ASUSTeK-Sign-Multi-Year-Wi-Fi-License-Agreement/default.aspx), but has not produced even one of those agreements.

agreements related to the accused products are relevant to damage-related issues, and ASUS should be compelled to supplement its interrogatory response and document production immediately. *See, e.g.*, *Positive Techs., Inc. v. Sony Elecs.*, No. 11-CV-2226 SI KAW, 2013 U.S. Dist. LEXIS 41753, at *11 (N.D. Cal. Mar. 25, 2013) (granting motion to compel accused infringer to produce patent license agreements relating to the accused products finding that they are discoverable as relevant to determining a reasonable royalty).

### 5. Non-Infringement Contentions

ASUS has refused to respond to Interrogatory No. 6, which seeks information related to ASUS's non-infringement claims, asserting that Round Rock's request for such information is "premature." Yet Courts in this District have recognized that interrogatories seeking a party's non-infringement contentions are "properly . . . calculated to identify and narrow issues and lead to the discovery of relevant evidence," and "can also be a useful tool to narrow the issues in dispute," particularly near the end of fact discovery. *Protective Optics, Inc. v. Panoptx, Inc.*, 2007 U.S. Dist. LEXIS 102364, at *6 (N.D. Cal. Mar. 30, 2007) (granting motion to compel response to non-infringement interrogatory); *see also Stamps.com, Inc. v. Endicia Sys.*, 2008 U.S. Dist. LEXIS 112633 (C.D. Cal. May 21, 2008) (ordering party to provide non-infringement claim charts in response to an interrogatory before expert discovery and with less than one month left in fact discovery). Accordingly, ASUS should be compelled to provide a response to Interrogatory No. 6.

## II.   ASUS'S POSITIONS

### A.   Background

Round Rock's proposed motion to compel is unjustified. Round Rock ("RR") failed to review ASUS's discovery responses prior to seeking a motion to compel. After receiving the initial draft of RR's letter brief, which sought to "compel" many documents already produced, ASUS suggested that RR review ASUS's productions. RR insisted that it would not withdraw any portion of its motion and threatened to file the motion *ex parte* unless ASUS provided its portion of the brief. Only after ASUS provided RR with its response pointing out the many inaccuracies in RR's brief did RR suddenly revise its brief to "avoid overburdening the court."

RR's allegedly "narrowed" requests are no better, however. First, RR failed to satisfy its obligation to meet and confer in good faith: In its revised letter brief RR raises issues it never discussed with ASUS. As an example, during the meet and confer RR explained that "product requirement documents" identify components used in a particular accused product. When ASUS pointed out in its response that such documents had already been produced, RR revised its letter to claim instead that it was seeking documents such as "sales kits" and research relating to market demand reports. RR's failure to properly meet and confer is especially problematic because of its vague discovery requests and because its proposed motion attempts to compel documents based on requests that cannot be fairly read to cover them. Finally, even with respect to the "narrowed" requests in RR's revised letter brief, ASUS has already provided many of the documents RR seeks.

RR attempts to blame its undue haste in filing a motion to compel on the imminent close of fact discovery. RR's predicament is the result of its own lack of diligence. The parties first discussed ASUS's objections to RR's vague and overly broad discovery request in late January.

5

ASUS reiterated its objections to many of the requests via letter on February 19, 2013. (Ex. B). RR did not express any disagreement with ASUS's positions, however, until six months later— barely a month before the originally scheduled close of fact discovery. In fact, RR's lack of diligence has been systematic in this case. RR served its preliminary infringement contentions purportedly accusing more than 300 ASUS products of infringement. However, RR only explained how three ASUS products allegedly infringe when using specific components manufactured by particular suppliers and even admitted that it had not conducted a pre-suit investigation of all of the accused products because that would have been "burdensome." (Ex. B.) Despite (or perhaps because of) its inadequate pre-suit investigation, RR now at the last minute seeks to burden ASUS with unjustifiably broad discovery. For instance, even after ASUS pointed out that many accused products did not contain allegedly infringing components such as DDR3 memory and that RR cannot have good faith basis for accusing these products, RR insisted that it is entitled to the full scope of discovery regarding these products. (Ex. F4, pp. 9-13.) RR should not be allowed to needlessly drive up ASUS's costs by seeking broad discovery regarding products it does not even have a basis for accusing or for which the requested discovery does not exist because the accused functionality does not exist in those products.

    B. Argument

### 1. Product Schematics / Technical Drawings / Flowcharts

RR claims that ASUS should have produced "products schematics or technical drawings" in response to RFP No. 24 or under Patent Local Rule 3-4(a). In fact, RFP No. 24 seeks "documents relating to catalogs, product specifications, flowcharts, models, drawings, promotional literature, or advertising for any Accused Product." As ASUS explained in its initial response, this request is vague and overly broad. Despite this, and based on its understanding of the request, which appeared directed towards marketing documents provided to customers or potential customers rather than any "product schematics or technical drawings," ASUS produced product specifications, advertisement and promotional literature, user manuals, and brochures in response to the request. Now, almost a year after receiving ASUS's objections and responses, RR claims for the first time that Request No. 24 was directed towards "product schematics and technical drawings," including, apparently, schematics or technical drawings for the components in those products. Given the imminent close of fact discovery and RR's indiscriminate accusation of products, it will be extremely burdensome for ASUS to produce all of the schematics that RR now demands but never properly sought through formal discovery.

In addition, RR fails to show the relevance of the burdensome discovery it is seeking. RR alleges that the schematics are relevant to the "coupling" limitations of the '791 patent and that ASUS was required to produce it under Patent L.R 3-4(a). However, L.R. 3-4(a) only requires production of documentation "sufficient to show the operation of [the] aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart" (emphasis added). In its Patent L. R. 3.1 (c) chart, RR identified only compliance with technical standards (e.g., JEDEC eMMC 4.41 standard) in alleging infringement, rather than any particular aspect or element of ASUS's accused products. RR did not identify any functionality

relevant to schematics. Thus, RR's claim that Patent L.R. 3-4(a) required ASUS to produce schematics of all accused products fails.[10]

Finally, despite RR's failure to seek product schematics through proper discovery mechanisms, ASUS's counsel produced examples of such schematics in an effort to resolve the dispute without burdening the court. Contrary to RR's suggestion, these examples included sample schematics of products accused of infringing the '791 patent. (*See, e.g.,* ASUS-RRR3 0068521.) While continuing to insist that RR is entitled to schematics for all products accused of infringing the '791, '053, and '949 patents, RR still has not explained how the schematics already produced are relevant to its infringement contentions. Given RR's failure to properly seek discovery of the schematics it now contends to be crucial, its failure to explain the relevance of such documents to its infringement contentions, and its lack of good faith basis to even accuse many of the products on which it seeks discovery, RR should not be entitled to engage in a fishing expedition to needlessly increases ASUS's litigation costs.[11]

### 2. Sales Data

Though ASUS provided sales data more than half a year ago, RR raised the alleged deficiencies of such data only recently. Yet ASUS has already provided adequate financial discovery, including annual sales of each accused product by unit and dollar amount, as well as the costs of these products. Similarly, ASUS has produced the costs of the accused components used in the accused products.[12] Profits, of course, may be derived by subtracting the costs from revenue. To the extent RR's complaint is that it does not understand the documents produced, RR has had or will have the opportunity to depose ASUS witnesses regarding the documents. To the extent RR's complaint is that financial information was provided in an annual format rather than in a quarterly and monthly basis, RR has failed to explain why annual unit sales, revenue, costs, and profits are inadequate. In any event, ASUS is endeavoring to determine whether its sales and cost data can easily be produced in a quarterly format and will produce the data in such a format to the extent it is not overly burdensome. Finally, ASUS has already provided documents relating to market analysis that contain certain projected sales. *See, e.g.*, ASUS-RRR3 0067528-0067640. Other than such market analysis, ASUS has not located any sales projections after a reasonable research. ASUS will continue to supplement its production to the extent additional documents or information are located or become available.

### 3. Product Requirement / Product Development Documents

RR claims that Request Nos. 22-24 are intended to cover "product requirements documents" or documents related to "the design and development of, or business plans for, the accused products." This is not the case. The term "product requirements documents" does not

---

[10] Indeed, although in its revised letter brief RR argues that the product schematics are also relevant to whether ASUS's products meet the limitations of the '053 and '949 patents," even to this day RR has not identified any limitation of the asserted patents for which product schematics are relevant other than the "coupling" and "sense amplifier circuitry" limitations of the '791 patent.

[11] In addition to producing examples of product schematics, ASUS has also offered to explore stipulations that may obviate whatever need RR sees in the burdensome discovery it is seeking. RR has not responded to these proposals.

[12] ASUS has produced sales and cost information up to 2012 and is in the processing of updating its sales and cost information for the year 2013. The cost information produced included both the cost paid by ACI for the accused products, as well as the cost paid by ASUS (Taiwan) for the accused components used in the products.

7

appear anywhere in these requests.  Request No. 23 inappropriately seeks documents protected by attorney-client privilege and/or the work product doctrine, by seeking documents relating to efforts to "design-around" the Patents-in-Suit.  Neither can Request Nos. 22 and 24—both of which are vague and overly broad—be fairly read to encompass "product requirements documents" or product development documents generally.[13]  In fact, it is not clear to ASUS what "product requirement documents" even means.  During the parties' meet and confer on Oct. 2, RR informed ASUS's counsel that "product requirement documents" are documents that identify the components used in a particular accused product.  To the extent this is what is meant by "product requirement documents," ASUS has already produced that in the form of bills of materials.  Similarly, contrary to RR's suggestion, ASUS has produced sales kits and marketing analysis RR appears to be referring to in its letter brief.  (*See, e.g.,* ASUS-RR3-0067528-0067640 and  ASUS-RR3-0068544- 0068831.)

### 4.   License Agreements Related To The Accused Products

In its Interrogatory No. 10, RR seeks identification of "all license agreements and indemnification agreements for intellectual property between ASUS and any third party concerning any Accused Product or any other products identified in ASUS's responses to Interrogatory Nos. 3-5."  As explained in ASUS's initial objections and responses, RR's interrogatory is too broad, as it fails to limit its scope to agreements that may be comparable to a license of the patents-in-suit (e.g., agreements relating to similar technologies).  Despite this, ASUS has produced potentially responsive agreements located after a reasonable search, and has supplemented its response to Interrogatory No. 10. (Ex. F4).  Contrary to RR's characterization, such agreements included more than indemnification agreements.  For instance, they include software license agreements relating to flash memory.  To the extent RR clarifies what other categories of licenses it is seeking with this interrogatory, and why such licenses may be relevant, ASUS will consider further supplementing its response.[14]

### 5.   Interrogatory Regarding ASUS's Non-Infringement Contentions

ASUS has not refused to respond to Interrogatory No. 6, relating to ASUS's non-infringement defense, and in fact provided a substantive response to RR's deficient preliminary infringement contentions almost a year ago.[15]  (Ex. F1.)  ASUS also plans to continue to supplement its response to Interrogatory No. 6 as appropriate, including prior to the close of fact discovery.  However, responses to contention interrogatories should be provided in reciprocal

---

[13] Request No. 24 seeks "documents relating to catalogs, product specifications, flowcharts, models, drawings, promotional literature, or advertising."  (Ex. E).  Request No. 22 seeks documents relating to "<u>decisions or plans</u> to design, develop, approve or produce" the accused products, not product development documents generally.  (*Id.*)

[14] As with Interrogatory No. 10, RR's Request Nos. 30 and 41 are vague and overly broad.  Request No. 30 seeks patent license agreements relating to technology "disclosed in the Patents-in-Suit" without specifying what such technology encompasses.  Request No. 41 seeks documents sufficient to identify ASUS payments or receipt relating to patents that relate to any Accused Product.  Again, not all licenses relating to the accused product are relevant (e.g., comparable) to a license to the patent(s)-in-suit.

[15] RR has never supplemented its preliminary infringement contentions.  To the extent RR seeks separate responses for each of the 300+ accused products, the interrogatory is overly broad and unduly burdensome, particularly because to date RR has only provided claim charts for <u>three</u> ASUS products  in its infringement contentions.  *Cf.* Ex. I (Judge Andrews' order in *Round Rock v. Lenovo.*, Case No. 1:11-cv-01011-RGA (D. Del.) denying discovery regarding products not charted in RR's infringement contentions).

fashion.  To date, RR has neither proposed a date by which such mutual exchange should occur nor provided adequate responses to ASUS's contention interrogatories regarding, among other things, damages.  (Ex. H, Responses to Interrogatory Nos. 7 and 13).  Finally, ASUS's non-infringement defense will be supported by expert testimony, and expert discovery is not yet complete.  Subject to its objections, ASUS will also further supplement its interrogatory response regarding non-infringement contentions after such discovery is complete.

Very truly yours,

| /s/ Tawen Chang | /s/ Lauren M. Nowierski |
|---|---|
| Tawen Chang | Lauren M. Nowierski |
| *Counsel for ASUS Computer International and ASUSTeK Computer Inc.* | *Counsel for Round Rock Research, LLC.* |