1   John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
2   Cheng (Jack) Ko, Bar No. 244630
    JKo@perkinscoie.com
3   Michael J. Engle, Bar No. 259476
    MEngle@perkinscoie.com
4   Yun (Louise) Lu, Bar No. 253114
    LLu@perkinscoie.com
5   PERKINS COIE LLP
    11988 El Camino Real, Suite 350
6   San Diego, CA 92130-2594
    Telephone: 858.720.5700
7   Facsimile: 858.720.5799

8   James C. Pistorino, Bar No. 226496
    JPistorino@perkinscoie.com
9   PERKINS COIE LLP
    3150 Porter Drive
10  Palo Alto, CA 94304-1212
    Telephone: 650.838.4300
11  Facsimile: 650.838.4350

12  Attorneys for Plaintiff ASUS Computer
    International and Counterclaim Defendant
13  ASUSTeK Computer Inc.

14               UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                   SAN FRANCISCO

17

18  ASUS COMPUTER INTERNATIONAL,    Case No. 3:12-CV-02099-JST

19             Plaintiff,      ASUS COMPUTER INTERNATIONAL AND
                            ASUSTEK COMPUTER, INC.'S NOTICE OF
20        v.           MOTION AND MOTION TO STRIKE

21  ROUND ROCK RESEARCH, LLC,

22            Defendant.

23  ROUND ROCK RESEARCH, LLC,      Date:     March 6, 2014
                            Time:     2:00 p.m.
24          *Counterclaim Plaintiff*,    Courtroom: 9
                            Judge:    Hon. Jon S. Tigar
25        v.

26  ASUSTEK COMPUTER INC. AND
    ASUS COMPUTER INTERNATIONAL,
27
          *Counterclaim Defendants*.
28

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on March 6, 2014, or as soon thereafter as this matter

4 may be heard, before The Honorable Jon S. Tigar of the United States District Court for the

5 Northern District of California, located at Courtroom 9, San Francisco Courthouse, 450 Golden

6 Gate Avenue, 19th Floor, San Francisco, CA 94102, Plaintiff ASUS Computer International

7 ("ACI")  and Counterclaim Defendant ASUSTeK Computer Inc. ("ASUSTeK") (collectively

8 "ASUS") will and hereby do request the Court to strike certain portions of the opening reports of

9 the expert witnesses of defendant Round Rock Research LLC ("Round Rock"), including the

10 expert report of David Taylor ("Taylor Report," Ex. 1) and the expert report of Martin

11 Afromowitz ("Afromowitz Report," Ex. 2).

12

The motion is based on this notice, the accompanying memorandum of points and

13 authorities, the Declaration of Tawen Chang ("Chang Decl.") and associated exhibits, the

14 accompanying proposed order, the pleadings and records on file in the action, any oral argument

15 before the Court, and any other matters the Court may request or consider.

16

The motion was made following a conference of counsel conducted pursuant to the local

17 rules, which took place on January 27, 2014.

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF RELEVANT FACTS ..................................................................... 1

III.   ARGUMENT .............................................................................................................. 3

       A.    Legal Standards for Striking Expert Testimony...................................................... 3

       B.    The Court Should Strike Taylor and Afromowitz Opinions Relating to the
             Doctrine of Equivalents ("DOE") ............................................................................ 4

       C.    The Court Should Strike Taylor and Afromowitz Opinions Relating to
             Indirect Infringement .............................................................................................. 7

       D.    The Court Should Strike All New Infringement Theories from the Taylor
             and Afromowitz Reports ......................................................................................... 9

             1.    '053 Patent: "Tran_Speed [103:96]" and "Bus_Width Bit" ...................... 9

             2.    The CMOS Image Sensor Patents ............................................................. 11

                   a.    New Infringement Theories Based on Reverse Engineering
                         Analysis Not Disclosed in Infringement Contentions................... 11

                   b.    '276 Patent:  BARC Infringement Opinions Based on an
                         Incorrect Claim Construction....................................................... 15

                   c.    '353 Patent: Infringement Under § 271(g)................................... 16

             3.    Theories First Introduced in Round Rock's Proposed Supplemental
                   Contentions .............................................................................................. 17

       E.    The Court Should Strike Dr. Taylor's Opinions That Rely on Documents
             Responsive to Third-Party Subpoenas Not Produced During Fact
             Discovery ............................................................................................................... 17

IV.    CONCLUSION ........................................................................................................ 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Chicago Mercantile Exch., Inc. v. Tech. Research Grp.*,
5     782 F. Supp. 2d 667 (N.D. Ill. Apr. 29, 2011)........................................................ 4, 16

6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ......................................................................................... 4, 15

7

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
8     No. C-11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ............................ passim

9

*France Telecom, S.A. v. Marvell Semiconductor, Inc.*,
    No. 12-cv-04967 WHA (NC), 2013 WL 1878912 (N.D. Cal. May 3, 2013) ..................... 3, 8
10

*GN Resound A/S v. Callpod, Inc.*,
11     Case No. C11-04673 SBA, 2013 WL 1190651 (N.D. Cal. March 21, 2013).......................... 3

12

*Hochstein v. Microsoft Corp.*,
13     No. 04-73071, 2009 WL 2022815 (E.D. Mich. July 7, 2009) ............................................. 4, 16

14

*MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
    No. C01–4925 SBA, 2004 WL 5363616 (N.D. Cal. Mar. 2, 2004) ........................................ 6
15

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*,
16     467 F. 3d 1355 (Fed. Cir. 2006) ....................................................................... 3, 4

17

*OptimumPath, LLC v. Belkin Int'l., Inc.*,
18     No. C 09-01398-CW (N.D. Cal. Apr. 12, 2011) ....................................................... 6

19

*Power Integrations, Inc. v. Fairchild Semicon. Int'l, Inc.*, No. 09-5235-MMC, 2013 WL
    4604206 (N.D. Cal. Aug. 28, 2013)
20

*Rambus Inc. v. Hynix Semiconductor Inc.*,
21     No. C-05-00334 RMW, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008).............................. 5, 6

22

*Sandisk Corp. v. Round Rock Research LLC*,
    No. 3-11-cv-05243-RS (N.D. Cal.) ....................................................................... 7
23

24

STATUTES

25

35 U.S.C. §271 ................................................................................................. 3, 16

26

35 U.S.C. § 271(a) ............................................................................................. 7, 16

27

35 U.S.C. § 271(b) ............................................................................................. 7, 16

28

35 U.S.C. § 271(c) ................................................................................................ 7, 16

35 U.S.C. § 271(g) ........................................................................................... 2, 16, 18

3:12-CV-02099-JST
ASUS MOT TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Round Rock has served expert reports on infringement from Dr. Taylor and Dr. Afromowitz for the five Round Rock patents remaining in this litigation:  the '949, '053, '791, '276, and the '353 patents.[1]  ASUS seeks to strike portions of each of these reports and the opinions contained therein for at least the following reasons: (1) the reports include opinions not properly disclosed in Round Rock's Infringement Contentions, including opinions that were not even disclosed in Round Rock's proposed amended infringement contentions that are the subject of a pending motion (D.I. 155); (2) Dr. Afromowitz applied a legally incorrect claim construction in his analysis of the '276 patent; and (3) Dr. Taylor relied on documents from third party Kingston that Round Rock improperly withheld from ASUS during fact discovery.[2]

Round Rock has shown no good cause for supplementing its Infringement Contentions (D.I. 175), much less for introducing new documents and theories of infringement in its expert reports after the close of fact discovery.  Allowing Round Rock to present new theories at this stage of the case prejudices ASUS's ability to prepare its defense.  Furthermore, because Dr. Afromowitz's opinion regarding BARC is premised on a construction different from that which all parties agreed controls in this case, his infringement opinions regarding that element are unreliable and legally irrelevant.  His opinions relating to BARC should be stricken on that additional basis as well.

### II.    STATEMENT OF RELEVANT FACTS

On September 20, 2012, Round Rock served its Infringement Contentions.  In these contentions Round Rock only made boilerplate assertions of indirect infringement and infringement under the doctrine of equivalents ("DOE").  Similarly, in the contentions for the

---

[1] The '949, '053, and the '791 patents are collectively referred to hereunder as the "Memory Patents."  The '276 and the '353 patents are collectively referred to as the "CMOS Image Sensor Patents."  Dr. Taylor's Report is attached as Exhibit 1 to the Declaration of Tawen Chang in Support of ASUS's Motion to Strike ("Chang Declaration").  Dr. Afromowitz's Report is attached as Exhibit 2 to the Chang Declaration.  Unless otherwise noted, all reference to exhibits herein refer to exhibits to the Chang Declaration.

[2] ASUS reserves the right to move to further exclude additional portions of the Taylor and Afromowitz Reports on these and other grounds as expert discovery continues.

'276 and the '353 patents, Round Rock only relied on reverse engineering analysis of a single image sensor (OV273AB) from a single manufacturer (OmniVision), alleging that such analysis was "representative."

More than fifteen months later, after fact discovery closed, Round Rock moved to amend its Infringement Contentions, presenting several new theories of infringement for the first time. (D.I. 155.)  The proposed amended contentions alleged acts of indirect infringement not disclosed in Round Rock's original contentions, pointed to entirely different elements in the accused products than previously disclosed as satisfying particular limitations in the asserted claims, accused ASUS of infringing one of the patents-in-suit under an entirely different statutory section (35 U.S.C. § 271(g)), and offered new theories of infringement by products containing image sensors from multiple manufacturers that were not disclosed in the original contentions.

On January 8, 2014, two weeks after Round Rock sought leave to supplement its contentions, Round Rock served expert reports on infringement from Dr. Taylor (for the '949, '791, and '053 patents, which relate to memory) and Dr. Afromowitz (for the '276 and '353 patents, which relate to CMOS image sensors).  These reports relied on theories and facts first introduced in Round Rock's proposed supplemental contentions and introduced *additional* new theories of infringement.  The Taylor Report, for instance, contains new theories regarding how accused products meet the "adjustable current consumption" limitation of the '053 patent and what the "function" of a particular limitation is for purposes of DOE analysis.  It also relied on documents that third party Kingston gave to Round Rock pursuant to a subpoena but that Round Rock never produced to ASUS during fact discovery.[3]  Similarly, in addition to never before disclosed DOE theories with respect to certain limitations for the asserted claims of the '353 patent, the Afromowitz Report contained a new theory regarding how the accused products meet

---

[3] Round Rock served the subpoena on Kingston on September 12, 2013 and provided for a response date of Oct. 4, 2013.  (Ex. 3.)  In addition to its general discovery obligation to seasonably supplement its production to ASUS, Round Rock *specifically* confirmed that it would produce any documents received pursuant to third party subpoenas to ASUS.  (Ex. 4.)  Nevertheless, Round Rock did not produce the Kingston documents to ASUS until after fact discovery, after the service of the Taylor Report, and after ASUS expressly asked for the Kingston documents cited in the Taylor Report.  (Ex. 5.)

the BARC limitation of the '276 patent using a claim construction different from that previously agreed upon by the parties.

## III.  ARGUMENT

### A.  Legal Standards for Striking Expert Testimony

Patent local rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F. 3d 1355, 1364 (Fed. Cir. 2006) (quotations omitted).  Patent Local Rule 3-1 require that infringement contentions contain the following information:

> (a)  Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. §271 asserted;
>
> …
>
> (c)  A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality. . . .
>
> (d)  For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

With respect to claim charts required under the Local Rules, courts in this District have explained that "a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." *GN Resound A/S v. Callpod, Inc.*, Case No. C 11-04673 SBA, 2013 WL 1190651, at *2 (N.D. Cal. Mar. 21, 2013).  Although claim charts comparing accused products to a standard may in some circumstances be considered "equivalent" to reverse engineering, use of an industry standard in infringement charts does not automatically satisfy the requirements of the local rules -- for instance where a standard does not provide the level of specificity to establish that practicing the standard would always result in infringement, or where the relevant section of the standard is optional.  *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 WL 1878912, at *2-4 (N.D. Cal. May 3, 2013)

1   (explaining when use of a standard may not satisfy the Local Rules). Both the Ninth Circuit and

2   the Federal Circuit have held that "the exclusion of evidence is often an appropriate sanction" for

3   failure to comply with disclosure required by local patent rules or case management order. *O2*

4   *Micro*, 467 F.3d at 1369.

5           With respect to expert testimony, Federal Rule of Evidence 702 imposes a "basic

6   gatekeeping obligation" on district courts to ensure that the testimony are not only relevant, but

7   reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert's opinion

8   must be sufficiently tied to the relevant facts and circumstances of the particular case at issue. *Id.*

9   at 591. Incorrect statements of law, such as opinions on claim construction that conflict with a

10  court's construction, must be excluded as irrelevant and unreliable. *Hochstein v. Microsoft Corp.*,

11  No. 04-73071, 2009 WL 2022815, at *1 (E.D. Mich. July 7, 2009) (excluding expert testimony

12  that conflicted with the court's claim construction); *Chicago Mercantile Exch., Inc. v. Tech.*

13  *Research Grp.*, 782 F. Supp. 2d 667, 673 (N.D. Ill. Apr. 29, 2011) ("Exclusion [of expert

14  testimony] is proper ... because evidence based upon a mistaken construction of a patent is

15  irrelevant.") (citations omitted).

16      **B.    The Court Should Strike Taylor and Afromowitz Opinions Relating to the**
            **Doctrine of Equivalents ("DOE")**
17
            In its September 20, 2012 Infringement Contentions for the '949, '053, '353, and the '276

18  patents, Round Rock provided only the following boilerplate statement regarding infringement

19  under the doctrine of equivalents:

20

21          Round Rock contends that each element of each asserted claim is literally present in the
            Accused Instrumentalities, unless otherwise indicated. But to the extent that any claim
22          element is found not to be literally embodied in the Accused Instrumentalities, Round
            Rock contends that the Accused Instrumentalities embody such claim elements under the
23          doctrine of equivalents, as there are no substantial differences and each asserted claim
            element performs substantially the same function, in substantially the same way, to
24          achieve substantially the same result as the Accused Instrumentalities.

25  (Exs. 6-9 at 2, Ex. 9 at 11, 15, 17).[4] Such boilerplate statements are plainly insufficient to satisfy

26  the Patent Local Rules, as it does not identify the "function, way, result" of any particular

27  _____

28          [4] For certain limitations for the '276 patent, Round Rock's Infringement Contentions also included
    the following additional boilerplate statement: "To the extent literal infringement is not found, the '276

1  limitation.  *See, e.g., Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C-11-5973 PSG, 2013

2  WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013) (granting motion to exclude plaintiff's DOE theory

3  not adequately disclosed in its infringement contentions because "[t]he Patent Local Rules require

4  a limitation-by-limitation analysis, not a boilerplate reservation") (citing *Rambus Inc. v. Hynix*

5  *Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008)

6  (quotation marks omitted)); *Power Integrations, Inc. v. Fairchild Semicon. Int'l, Inc.*, No. 09-

7  5235-MMC, 2013 WL 4604206, at *3 (N.D. Cal. Aug. 28, 2013) (denying leave to amend to

8  replace "placeholders" for doctrine of equivalents with new actual theories).

9      With respect to the other remaining patent-in-suit, the '791 patent, Round Rock did not

10  disclose a DOE theory either.  As shown in the below exemplary disclosure, although Round

11  Rock provided some limited identification of the "function, way, result" requirements for the

12  DOE analysis in its '791 patent Infringement Contentions, it failed to identify with any specificity

13  *what element* of the accused product is alleged to be the "equivalent":

14      To the extent literal infringement is not found, the '791 Accused Products satisfy this
         claim limitation under the doctrine of equivalents. The '791 Accused Products perform
15      substantially the same function (provide flash memory) in substantially the same way
         (receive input data on the data connection on rising and falling edges of a clock signal) to
16      achieve substantially the same result (storage device) as the claimed flash memory.

17  (Ex. 10 at 10.)

18      Despite the fact that Round Rock failed to adequately disclose a DOE theory in its

19  Infringement Contentions, Drs. Taylor and Afromowitz both opine that the accused products

20  infringe the patents-in-suit under the Doctrine of Equivalents.[5]  In addition to boilerplate

21  statements similar to those contained in its Infringement Contentions, both Taylor and

22  Afromowitz Reports contain new theories of infringement under DOE.

23      For instance, in the Afromowitz Report, Round Rock identifies for the first time how a

24  specific component in an accused ASUS product (███████████) allegedly satisfied the

25

26  ─────────────────────────────
    Accused Products satisfy this claim limitation under the doctrine of equivalents. The '276 Accused
27  Products perform substantially the same function in substantially the same way to achieve substantially the
    same result as the claimed system."
        [5] *See* Taylor Report ¶ 166 ('949 patent), ¶¶ 273, 304 ('053 patent); Afromowitz Report ¶ 5 ('276
28  patent), ¶¶ 36, 532, 546 ('353 patent), ¶¶ 235, 242, 248, 257 ('791 patent).

"function, way, result" requirements for purposes of DOE analysis of the claim elements relating to "planarizing." (Afromowitz Report ¶¶ 532, 546.) Similarly, in the Taylor Report, Round Rock identifies for the first time a specific claim element of the '053 patent ("data register that stores a mode control bit, the adjustable current consumption being set to the low power mode in response to a state of the mode control bit") allegedly infringed under DOE and how the "function, way, result" requirements are allegedly met for purposes of DOE analysis of that element. (Taylor Report ¶ 304.) Indeed, even for the '791 patent, the only patent-in-suit for which Round Rock provided any DOE analysis in its Infringement Contentions, the Taylor Report added new theories: although in its Infringement Contentions Round Rock claimed that the function of the limitation "a double data rate flash memory coupled to the processor" is met under DOE because the accused products performs substantially the same function of "operat[ing] as a processing system," Dr. Taylor now claims that the "function" of this limitation is in fact "providing data access operations on the rising and falling edges of the clock cycle." (Taylor Report ¶ 248.)

The portions of the Taylor and Afromowitz Reports relating to infringement of the patents-in-suit under the doctrine of equivalents should be stricken in their entirety because Round Rock did not disclose its DOE theories in its Infringement Contentions. *See, e.g., Dynetix*, 2013 WL 4537838, at *1; *Rambus*, 2008 WL 5411564, at *3 (holding that plaintiff's failure to comply with Patent Local Rule[s] "provides ample, alternative justification for dismissing Rambus's claims of infringement under the doctrine of equivalents"); *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, No. C 01–4925 SBA, 2004 WL 5363616, at *4–6 (N.D. Cal. Mar. 2, 2004) (precluding reliance on the doctrine of equivalents and barring related expert testimony because plaintiff failed to disclose such claims as required by [the] Patent Local Rule"); *see also OptimumPath, LLC v. Belkin Int'l., Inc.*, No. C 09-01398-CW, 2011 WL 1399257, *7-8 (N.D. Cal. Apr. 12, 2011) (barring reliance of doctrine of equivalents in opposing summary judgment of non-infringement because "judges of this court have rejected plaintiffs' attempts to assert claims under the doctrine of equivalents with blanket statements").

### C.     The Court Should Strike Taylor and Afromowitz Opinions Relating to Indirect Infringement

Round Rock only provided *pro forma* assertions of inducement and contributory infringement in its Infringement Contentions.  (Exs. 6-10 at 1-2.)  The Infringement Contentions for the '949 patent, for example, provided only the following boilerplate statement regarding inducement:

> ASUS has induced infringement by third parties, including ASUS's customers, and continues to induce such infringement, under 35 U.S.C. § 271(b), of at least claims 1-3, 5-7, 20, and 24 of the '949 patent.  These third parties infringe these claims under 35 U.S.C. § 271(a) and (g) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the '949 Accused Products. For example, ASUS actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '949 patent by selling or otherwise supplying the '949 Accused Products; with the knowledge and intent that these third parties will use, sell, and/or offer for sale in the United States, and/or import into the United States, the '949 Accused Products to infringe the '949 patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of the '949 Accused Products and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the '949 Accused Products.

(Ex. 7 at 1.)[6]  If anything, Round Rock's allegations regarding contributory infringement are even sparser, consisting of nothing more than a threadbare recitation of the elements of contributory infringement:

> ASUS has contributed to the infringement by third parties, including ASUS's customers, and continues to contribute to infringement by third parties, under 35 U.S.C. § 271(c), of at least claims 1-3, 5-7, 20, and 24 of the '949 patent. These third parties infringe these claims under 35 U.S.C. § 271(a) and (g) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the '949 Accused Products. For example, ASUS sells and/or offers for sale in the United States, and/or imports into the United States, the '949 Accused Products, knowing that those products constitute a material part of the inventions of the '949 patent, knowing that those products are especially made or adapted to infringe the '949 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

(*Id.* at 2.)  For example, no explanation is provided for each element of contributory infringement, leaving ASUS to guess how the accused products are a "material part" of the '949 patent, how the accused products are "especially made or adapted" to infringe the '949 patent, or how ASUS had

---

[6] The same basic assertions were provided in the contentions for the other Patents-in-Suit.  In fact, Round Rock used essentially identical language in its contentions against another defendant in an unrelated litigation involving different patents in the Round Rock portfolio.  *See, e.g.*, *Sandisk Corp. v. Round Rock Research LLC*, No. 3-11-cv-05243-RS (N.D. Cal.), D.I. 272 at 12.  This is the definition of "boiler-plate."

1   knowledge of any of the allegations.  Such boilerplate statements do not satisfy Round Rock's

2   obligations of disclosure with the Patent Local Rules.  *France Telecom*, 2013 WL 1878912, at *5

3   ("Boilerplate language of indirect infringement will not satisfy Patent Local Rule 3-1(d).")

4          Despite failing to adequately disclose any adequate theory of indirect infringement in its

5   Infringement Contentions, both the Taylor and the Afromowitz Reports contain new opinions

6   relating to indirect infringement, including opinions relating to new indirect infringement theories

7   that were not articulated even in Round Rock's proposed supplemental Infringement Contentions

8   served a mere two weeks before the reports.[7]  (*See, e.g.,* Taylor Report ¶¶ 224-231, 267-269, 310-

9   312; Afromowitz Report ¶¶ 647-650.)

10         Round Rock's infringement theory regarding the so-called "'949 Patent Accused Server

11  Products" is one blatant example of a new theory.  Each of the asserted claims of the '949 patent

12  claims a memory device, and Round Rock's Infringement Contentions were clear that only ASUS

13  products *containing DDR3 memory* were accused of infringing the '949 patent.  (Ex. 7 at 1.)  In

14  Dr. Taylor's expert report, however, Round Rock claims that ASUS indirectly infringes the '949

15  patent by selling the '949 Patent Accused Server Products, which are products that do *not* contain

16  DDR3 SDRAM memory modules.  In particular, Dr. Taylor introduces the new theory that after

17  ASUS sells such server products, third parties might combine such products with DDR3 memory.

18  (Taylor Report ¶¶ 227-228.)

19         As another example, claim 24 of the '949 patent requires a processor, and nothing in

20  Round Rock's Infringement Contentions suggest that it contemplated a theory of indirect

21  infringement that would cover sale of products that admittedly do not meet all of the elements of

22  an asserted claim.  (*See, e.g.*, Ex. 7 at 27 ("ASUS servers and computers include a processor,"

23

24         [7] Although Round Rock's proposed supplemental contentions were served after the close of fact
25  discovery, they contain little more information regarding Round Rock's indirect infringement theories than
    its original contentions.  For instance, although Round Rock did allege for the first time in its proposed
26  supplemental contentions that ASUS indirectly infringes the '949 patent by making, using, selling,
    offering for sale, and/or importing in the United States products that, as sold by ASUS, do not contain
    DDR3 SRAM memory, Round Rock did not articulate its indirect infringement theories with respect to
27  ASUS products without processors even in its proposed supplemental infringement contentions.  In any
    event, as discussed elsewhere, Round Rock does not have any good cause to amend its Infringement
28  Contentions to add either of these theories. (D.I. 175.)

with no theory that ASUS servers and computers might be *combined* with a processor).)  Yet,

Round Rock discloses in Dr. Taylor's report for the first time that it also accuses ASUS of

indirectly infringing claim 24 through the sale of products that do *not* include processors,

allegedly because "a POSITA understands that these computers cannot function for their intended

purpose without the inclusion of a processor."  (Taylor Report ¶¶ 229-231.)  Similarly, in the

Afromowitz Report, Round Rock suggests for the first time that it is the end-user's use of the

products (rather than the actions of ASUS customers) that may be relevant to indirect

infringement of the CMOS Image Sensor Patents.  (Afromowitz Report ¶¶ 647-650.)  Round

Rock's boilerplate assertions of indirect infringement in its contentions fail to provide the notice

to which ASUS is entitled.

Round Rock made no attempt to amend its Infringement Contentions to describe its

theories of indirect infringement until after the close of fact discovery, even though Round Rock

has been or should have been aware of the facts that it is now relying on for its new theories.  For

example, ASUS specifically brought the issue of accused products that do not have a DDR3

memory to Round Rock's attention during summary judgment motion.  (*See* D.I. 85 at 10.)  By

waiting until after fact discovery to provide these new indirect infringement theories with no good

cause (*see also* D.I. 175), Round Rock failed to comply with Patent Local Rule 3-1(d) to the

prejudice of ASUS, and the Court should strike the portions of the Taylor and Afromowitz Report

relating to indirect infringement.

> ### D. The Court Should Strike All New Infringement Theories from the Taylor and Afromowitz Reports

In addition to new theories relating to DOE and indirect infringement, both Dr. Taylor's

and Dr. Afromowitz's reports containing additional new infringement theories that were either

never previously disclosed or that were introduced only in Round Rock's proposed supplemental

contentions served after the close of fact discovery.  As already discussed in ASUS's response to

Round Rock's Motion for Leave to Supplement (D.I. 175), Round Rock has no "good cause" to

add these theories at this late date.  Thus, because expert reports may not introduce new theories

not set forth in contentions, these new theories should be stricken from the Taylor and

3:12-CV-02099-JST
ASUS MOT TO STRIKE

Afromowitz Reports as well.  *See, e.g., Dynetix*, 2013 WL 4537838 at *2 (granting defendant's motion to strike plaintiff's infringement theories relating to infringing features within the accused products that were not disclosed in plaintiff's contentions).

### 1.    '053 Patent: "Tran_Speed [103:96]" and "Bus_Width Bit"

The asserted claims of the '053 patent is directed to a memory device having adjustable current consumption, where "the adjustable current consumption is set to the low power mode in response to a state of a mode control bit."  The only theory Round Rock articulated in its Infringement Contentions regarding how accused products met these limitations of the asserted claims was that eMMC memory devices compliant with the JEDEC Standard No. 84-A441 have a "HS_TIMING bit" stored in the Extended CSD register.  (Ex. 6.)  According to Round Rock's Infringement Contentions, the HS_TIMING bit is the claimed "mode control bit" responsible for setting the current consumption; it toggles between high speed interface timing and the default lower speed interface timing, which Round Rock identified as the claimed low power mode.  (*Id.* at 7.)

Dr. Taylor now opines that the mode control bit could *also* be the "BUS_WIDTH" in the Extended CSD register.  (*See, e.g.*, Taylor Report ¶ 294 ("[L]ow data throughput mode in response to a state of the mode control bit (e.g., HS_TIMING *and/or BUS_WIDTH* in the Extended CSD register) (emphasis added); ¶ 298 ("[T]he eMMC Flash memory modules may be set to a lower power, low data throughput mode in response to only the "BUS_WIDTH.").)[8] Similarly, he opines that yet another data element in the Extended CSD register, the "TRAN_SPEED slice [103:96], may also affect current consumption and thus constitute the allegedly infringing element.  (Taylor Report ¶ 281.)

In short, although in its contentions Round Rock only identified a single data element in the Extended CSD register (the "HS_TIMING bit) as relevant to infringement, Dr. Taylor is now advancing theories of infringement based on two entirely different and previously undisclosed

---

[8] Round Rock raised its "bus_width" theory for the first time in its proposed supplemental contentions served after the close of fact discovery.  (D.I. 156-5 at 12.)  The "Tran_Speed [103:96]" theory was raised for the first time in the Taylor Report and never appears in Round Rock's proposed supplemental contentions, served only two weeks earlier.

data elements in the Extended CSD register.  The situation is similar to that in *Dynetix*, where plaintiff's Infringement Contentions identified several features of an accused product as infringing instrumentalities, but never identified the features "parallel compile" and "hidden autopartitioning" as such until it served its infringement expert report.  *Dynetix*, 2013 WL 4537838 at *2.  In that case, Magistrate Judge Grewal granted defendant's motion to strike as to both theories, explaining that the prejudice suffered by defendant (because the new theories left defendant's expert with only two weeks to respond to the new theory) "mandate" that the new theories be excluded.  *Id*.  The Court should similarly strike any infringement opinions in the Taylor Report based on the "BUS_WIDTH bit" or the "TRAN_SPEED slice" theories.

## 2.     The CMOS Image Sensor Patents

### a.     New Infringement Theories Based on Reverse Engineering Analysis Not Disclosed in Infringement Contentions

In its Infringement Contentions for the '276 and the '353 patents, Round Rock provided a single reverse engineering analysis of a single image sensor from one manufacturer (i.e., OmniVision's OV273AB image sensor).  (Exs. 8-9.)  Throughout the entire case, including during summary judgment briefing, Round Rock insisted that its contentions were sufficient because it was proceeding under the theory that the single image sensor charted for the '353 and '276 patents against the EP121 product was "representative" of all accused products, despite the components in different products being made by different manufacturers and not following any technical standard.  (D.I. 95 at 21, 11.)

In the Afromowitz Report, as in Round Rock's proposed supplemental contentions served after the close of fact discovery, Round Rock has entirely abandoned its "representative" infringement theory.  Instead, the Afromowitz Report offers new theories of how the Accused Products infringe via different components, including those made by different manufacturers. The Afromowitz report relies on distinct, sensor-specific reverse engineering analyses of each of the following eight image sensors as the basis for new theories:  ████████████████

████████████████████████████████████████████

████.  (Afromowitz Report ¶ 52.)  For the '353 patent, Round Rock relies not on its previous

1   "representative" theory of infringement but new theories based on five unique reverse

2   engineering analyses, one for each of the following image sensors: ███████████████

3   ████████████████████████████████████████████████████████████████

4   Moreover, Round Rock has abandoned infringement allegations against at least three OmniVision

5   sensors (███████████████████████████████); no infringement assertions appear in the

6   Afromowitz Report or Round Rock's supplemental contentions as to these three sensors.

7   Similarly, the Afromowitz Report relies on six separate reverse engineering analyses as the basis

8   for new theories as to alleged infringement of the '276 patent by the following image sensors: ██

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████ ███████.[9]

11         Round Rock insisted on a "representative" theory of infringement while presenting its

12  Infringement Contentions and more recently in opposing summary judgment.  ASUS is entitled to

13  rely upon that theory to guide it through discovery.  Allowing Round Rock to now reverse course

14  and rely on new infringement theories for each accused product based on different image

15  sensors—with new theories for each sensor—would be highly prejudicial to ASUS.  As one

16  example of such prejudice, one of the asserted claims of the '276 patent requires that the claimed

17  bottom antireflection coating "has a thickness of about 60 nm."  Round Rock's Infringement

18  Contentions alleged this element was met by a layer roughly 60 nm thick in the OV273AB.  *See*

19  Ex. 9 at 16-17.  In the Afromowitz Report, Round Rock now claims that a non-uniform BARC

20  layer that is anywhere from ████████████████████████████████████████████

21  ████████████████████████████ (Afromowitz Report ¶¶ 142 ████████████ ███

22  ████████████████████████.)  Had Round Rock disclosed its theory that a

23  BARC layer having a thickness of "about 60nm" could mean a non-uniform layer anywhere

24  ─────────────────────

25  [9] Even now, after fact discovery has closed, Round Rock is still employing the "shifting sands" approach with respect to its infringement theories.  In Round Rock's proposed supplemental infringement contentions, served a mere two weeks before the Afromowitz Report, Round Rock claimed that the ████

26  ████████████████████ image sensors both infringe the '276 patent, relying on reverse engineering analysis that were not part of its Infringement Contentions and on the new theory that a BARC

27  that is 280 nm thick somehow meets the limitation of "wherein the bottom antireflection coating has a thickness less than approximately 200 nm."  (D.I. 156-2 at Ex. 1-B; D.I. 175 at 17.)  The Afromowitz Report, however, provides no '276 patent infringement analysis with respect to those sensors.

28

between 42-70 nm earlier in the case (i.e., as required under the Patent Local Rules), ASUS could have asked the Court to construe this term. Similarly, ASUS could have asked the named inventor at deposition whether he considered 42-70 nm to be about 60 nm. Instead, Round Rock waited to disclose this new theory—based on reverse engineering reports that were never provided in its Infringement Contentions—until after the close of fact discovery, when ASUS no longer has an opportunity to pursue discovery.

As another example, with respect to the '353 patent, Round Rock provided this single image in its Infringement Contentions to show that the limitation of "planarizing a surface of said passivation layer" was met:



(Ex. 8 at 8.) As indicated by the horizontal line Round Rock added to the image in its Infringement Contentions, Round Rock's contention regarding planarizing the passivation layer required the elimination of concave and convex regions from the layer. Dr. Afromowitz's report, however, now opines on a new theory based on reverse engineering analysis of a ▮▮▮▮▮▮ sensor. Dr. Afromowitz opines that the surface indicated with a red arrow below satisfies the limitation of "planarizing a surface of said passivation layer" in ▮▮▮▮▮▮ by acting as a planarizing coating (Afromowitz Report ¶ 531):[10]

---

[10] The Court has construed "planarizing" to mean "processing or preparing by eliminating convex and/or concave regions." (D.I. 82, at 13-15; Afromowitz Report ¶ 32.)

As an initial matter, a comparison of the two images reveals that the charted OV273AB sensor is not representative of the ████████ sensor with respect to the "planarizing" limitation of the '353 patent: for example, the surfaces or the layers labeled "passivation" appear flat or planar in the OV273AB image but not in the ████████ image.  Furthermore, in his report Dr. Afromowitz appears to be advancing the novel theory that the convex and concave regions of the passivation layer have been eliminated by the organic layer above it.  Regardless of the merits of Dr. Afromowitz's theory, it is different than what Round Rock contended in its Infringement Contentions.[11]

By insisting that its theories based on the correspondence of the OV273AB to claim limitations were representative of all the accused products rather than disclosing theories that apply to other image sensors, Round Rock deprived ASUS of the opportunity to conduct discovery on the new infringement theories Dr. Afromowitz is now advancing based on the new

_____
[11] Indeed, it appears that Dr. Afromowitz himself recognized the novelty of this infringement theory.  As discussed above, with respect to this image sensor but not the others, Dr. Afromowitz provided a DOE opinion  on the limitation "planarizing."  (Afromomowitz Report, ¶¶ 532, 546.)

3:12-CV-02099-JST
ASUS MOT TO STRIKE

reverse engineering analyses of these other image sensors.  Opinions in the Afromowitz Report

based on these new reverse engineering analyses should be stricken as well.

### b.   '276 Patent:  BARC Infringement Opinions Based on an Incorrect Claim Construction

In addition to the above, Dr. Afromowitz's opinions relating to the BARC limitation of

the '276 patent should be excluded because he applied the wrong claim construction.  The parties

previously agreed that BARC should be construed as "a coating that is disposed between a

patterning resist layer and underlying reflective structures to enhance control of critical

dimensions in the patterning resist layer by suppressing reflective notching, standing wave effects,

and the swing ratio caused by thin film interference."  (D.I. 55 at 8-10 (providing ASUS's

construction for BARC as set forth above); D.I. 58 at 1 ("Having reviewed and analyzed ASUS's

claim construction arguments regarding the term 'bottom antireflection coating,' Round Rock

withdraws its opposition to ASUS's proposed construction.").)[12]  Dr. Afromowitz did not apply

this agreed-upon construction in his report.  Instead, he either applied the construction of BARC

that Round Rock initially proposed but subsequently abandoned—i.e., "a coating that has an

index of refraction, an extinction coefficient, and a thickness"—or his own unspecified

construction.  (Afromowitz Report ¶¶ 33, 37-38.)  Either is improper and ignores the parties'

agreed-upon construction.

Dr. Afromowitz's infringement opinion applying the wrong claim construction is a

previously undisclosed infringement theory that, if allowed, would be highly prejudicial to

ASUS, who should be entitled to formulate its case based on the constructions that the parties

agreed upon.  Furthermore, whereas an expert's opinion must be sufficiently tied to the relevant

facts and circumstances of the particular case at issue, *see Daubert*, 509 U.S. at 591, Dr.

Afromowitz's infringement opinion applying the wrong claim construction is not.  Opinions

---

[12] Round Rock also represented to the Court that the parties had agreed upon ASUS's
construction.  In response to a question from the Court at the tutorial in this case, Counsel for Round Rock
Lauren Nowierski stated that the parties had reached an agreement on the construction of the term.  (*See*
D.I. 70, 25:15-26:3, 34:14-16).  In footnote one of its Claim Construction Order, the Court noted: "The
parties originally submitted six terms for construction, but subsequently agreed as to the meaning of one of
them.  The Court here construes the five remaining terms."  (D.I. 82, fn. 1.)  "Bottom antireflection
coating" was the sixth term.  (*See* D.I. 58.)

3:12-CV-02099-JST
ASUS MOT TO STRIKE

1    based on incorrect constructions are irrelevant and unreliable. *Hochstein*, 2009 WL 2022815, * 1;

2    *Chicago Mercantile Exch., Inc.*, 782 F. Supp. 2d at 673 ("Exclusion [of expert testimony] is

3    proper ... because evidence based upon a mistaken construction of a patent is irrelevant.")

4    (citations omitted).  For all of the above reasons, Dr. Afromowitz's opinion relating to the BARC

5    limitation of the '276 patent should be excluded.

6              **c.    '353 Patent: Infringement Under § 271(g)**

7         The Northern District Patent Local Rules require that the patentee identify for each claim

8    the applicable statutory subsections of 35 U.S.C. §271 that are asserted.  In its Infringement

9    Contentions, Round Rock alleges that ASUS infringes under 35 U.S.C. § 271(a), (b), and (c) and

10   that third parties such as ASUS's customers infringe the claims under 35 U.S.C. § 271(a) and

11   § 271(g).  Round Rock never alleged that ASUS itself infringed under § 271(g), despite obviously

12   knowing about that provision.  The asserted claims of the '353 patent are method claims relating

13   to the manufacture of a sensor.  ASUS does not manufacture any of the accused image sensor

14   components used in its products.  Thus, contrary to Round Rock's assertion, ASUS does not

15   infringe under 35 U.S.C. § 271(a).

16        Only after fact discovery closed did Round Rock seek to amend its Infringement

17   Contentions for the '353 patent to allege infringement by ASUS under 35 U.S.C. § 271(g).  That

18   motion is now pending in front of the Court.  (D.I. 155.)  As discussed in ASUS's response to that

19   motion, Round Rock has no good cause to supplement its contentions to assert infringement

20   under a different statutory section.  (D.I. 175.)  Allowing such an amendment would further

21   prejudice ASUS:  Had ASUS known § 271(g) was asserted against it, it could have pursued

22   relevant discovery, such as whether any of § 271(g)'s exceptions apply (e.g., the article being

23   "materially changed by subsequent processes" or becoming "a trivial and nonessential

24   component").  For these same reasons, and because expert reports may not introduce new theories

25   not set forth in contentions, the Court should strike Dr. Afromowitz's opinions regarding alleged

26   ASUS infringement of the '353 patent under § 271(g).  (Afromowitz Report ¶¶ 645-646.)

27

28

### 3.     Theories First Introduced in Round Rock's Proposed Supplemental Contentions

On December 23, 2013, after the close of fact discovery, Round Rock for the first time moved for leave to supplement its infringement contentions.  (D.I. 155.)  ASUS opposed the motion because Round Rock has shown no good cause for the amendment, and permitting the amendment would prejudice ASUS.  (D.I. 175.)  That motion is currently pending before the Court.  As Round Rock's motion for leave to supplement should be denied for the reasons stated in ASUS's opposition, any infringement opinions in the Taylor and Afromowitz Reports relating to theories first introduced in Round Rock's proposed supplemental contentions should also be stricken.

### E.     The Court Should Strike Dr. Taylor's Opinions That Rely on Documents Responsive to Third-Party Subpoenas Not Produced During Fact Discovery

Dr. Taylor's report relies heavily on documents produced by third-party Kingston in response to Round Rock's subpoena.  (*See, e.g.,* Taylor Report ¶¶ 172-173, 178, 212-213, 220, 241, 244, 247, 252, 261-263, 276, 280, 285-286, 300.)  Although Round Rock served its subpoena on Kingston on or about January 9, 2013 (Ex. 3), and had confirmed that it would produce all documents received from third party subpoenas to ASUS (Ex. 4),[13] Round Rock never produced these documents until *after* Dr. Taylor's report and well after the close of fact discovery. (Ex. 5.)  As a result of Round Rock's failure to produce the Kingston documents to ASUS, ASUS and its expert have not had an adequate opportunity to review and analyze the documents, or to address the opinions in the Taylor Report relying on these documents.  Round Rock has not stated when it received these documents from Kingston.  To the extent Round Rock received these documents prior to the close of fact discovery, Round Rock should not be permitted to rely on documents that it improperly withheld from ASUS during fact discovery.  To the extent Round Rock did not receive these documents until after the close of discovery in December 2013, Round Rock was not diligent in seeking such discovery, as evidenced by Round Rock's identifying Kingston components as accused in its Infringement Contentions of September 2012 but not

---

[13] *See also* Ex. 11 at 15 (Request for Production No. 65, requesting production of "[a]ll documents and things referring or relating to any product offered by ASUS that Round Rock contends infringes, has infringed, or has been used in a manner that infringes any Patent-in-Suit or Related Patent.")

obtaining the documents in question until after December 2013, and such documents should not be admissible after the close of fact discovery due to Round Rock's lack of diligence.  Either way, Dr. Taylor's opinions relying on these documents should be stricken.

**IV.     CONCLUSION**

For the above reasons, ASUS respectfully requests the Court to strike the portions of the Taylor and Afromowitz Reports relating to:

(1) opinions on doctrine of equivalents;

(2) opinions on indirect infringement, including opinions in the Taylor Report on infringement of the '053 patent based on products not sold with DDR3 memory or, for claim 24, processor;

(3) '053 patent infringement opinions in the Taylor Report relating to the "BUS_WIDTH bit" and  "Tran_Speed [103:96]";

(4)  opinions in the Afromowitz Report based on reverse engineering analyses not included in Round Rock's Infringement Contentions;

(5) opinions in the Afromowitz Report relating to the BARC limitation of the '276 patent;

(6) opinions in the Afromowitz Report relating to ASUS's alleged infringement of the '353 patent under 35 U.S.C. § 271(g);

(7) opinions in the Taylor Report relying on documents produced by Kingston pursuant to subpoena; and

(8)  opinions relating to infringement theories first introduced in Round Rock's proposed supplemental contentions.

To the extent the Court declines to strike any of the above opinions, ASUS requests in the alternative that the Court issues an order permitting ASUS to serve supplemental expert reports responding to these opinions.

1

DATED:  January 27, 2014                          **PERKINS COIE** LLP

2

3                                                 By: */s/ Tawen Chang*
                                                  _____

4                                                     John P. Schnurer, Bar No. 185725
                                                      JSchnurer@perkinscoie.com
5                                                     Jack Ko, Bar No. 244630
                                                      JKo@perkinscoie.com
6                                                     Michael J. Engle, Bar No. 259476
                                                      MEngle@perkinscoie.com
7                                                     Tawen Chang, Bar No. 215512
                                                      Tchang@perkinscoie.com
8                                                     Yun (Louise) Lu, Bar No. 253114
                                                      LLu@perkinscoie.com
9                                                     PERKINS COIE LLP
                                                      11988 El Camino Real, Suite 350
10                                                    San Diego, CA  92130-2594
                                                      Telephone:  858.720.5700
11                                                    Facsimile:   858.720.5799

12                                                    James C. Pistorino, Bar No. 226496
                                                      JPistorino@perkinscoie.com
13                                                    PERKINS COIE LLP
                                                      3150 Porter Drive
14                                                    Palo Alto, CA 94304-1212
                                                      Telephone:  650.838.4300
15                                                    Facsimile:   650.838.4350

16                                                Attorneys for Plaintiff ASUS COMPUTER
                                                  INTERNATIONAL and Counterclaim
17                                                Defendant ASUSTEK COMPUTER INC.

18

19

20

21

22

23

24

25

26

27

28

3:12-CV-02099-JST
                                                  ASUS MOT TO STRIKE