1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

ASUS COMPUTER INT'L,

          Plaintiff,

     v.

ROUND ROCK RESEARCH, LLC,

          Defendant.

Case No. 12-cv-02099 JST (NC)

**ORDER ON MOTIONS TO STRIKE**

Re: Dkt. Nos. 196, 247, 330

    The parties in this patent infringement case each move to strike portions of expert reports, premised generally on the late disclosure of evidence and theories.  For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART each party's motion to strike.

## BACKGROUND

    This Court has previously addressed at length the factual and procedural background of this case.  Dkt. No. 212.  The Court briefly summarizes the history pertinent to these motions.

    Round Rock Research ("RR") served its original infringement contentions on September 20, 2012.  Dkt. No. 180 at ¶ 14.  On August 8, 2013, ASUS Computer International ("ASUS") moved for summary judgment, Dkt. No. 85, which the Court denied

without prejudice on October 8, 2013, Dkt. No. 112.  On December 23, 2013, RR moved for leave to amend its infringement contentions.  Dkt. No. 155.  The Court denied RR's motion.  Dkt. No. 212.

Fact discovery closed on December 20, 2013.  Dkt. No. 154.  Opening expert reports were due on January 8, 2014, and rebuttal expert reports were due on January 24, 2014.  *Id.* On January 27, 2014, ASUS moved to strike certain expert testimony from Dr. David Taylor's and Dr. Martin Afromowitz's reports.  Dkt. Nos. 196, 199, 221.  On February 7, 2014, expert discovery closed.  Dkt. No. 154.  On February 14, 2014, RR moved to strike portions of testimony from ASUS's experts, Dr. R. Jacob Baker and Dr. Keith R. Ugone. Dkt. Nos. 246, 247.  Judge Jon S. Tigar referred the motions to strike to this Court under Local Rule 72-1.  Dkt. Nos. 203, 204, 251.  On March 5, 2014, the Court held a hearing regarding both parties' motions to strike.  Dkt. No. 294.  On March 20, 2014, ASUS moved to strike certain infringement and damages opinions rendered by Taylor and David Yurkerwich.  Dkt. No. 330.  The Court heard oral argument on this motion on April 3, 2014.  Dkt. No. 361.

On February 28, 2014, RR moved for summary judgment, Dkt. No. 271, and ASUS and ASUSTeK moved for summary judgment the following day, Dkt. No. 275.  Both summary judgment motions are currently pending before Judge Tigar.

## LEGAL STANDARD

Patent Local Rule 3 requires patent disclosures early in a case and streamlines discovery by replacing the "series of interrogatories that [parties] would likely have propounded" without it.  *Network Caching Tech. LLC v. Novell Inc.*, No. 01-cv-02079 VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002).  It is "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006).  Given this requirement, a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the

parties' infringement contentions or invalidity contentions.  *See, e.g.*, *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. 11-cv-05973 PSG, 2013 WL 4537838, at *2 (N.D. Cal. Aug. 22, 2013) (striking plaintiff's infringement theories relating to infringing features within the accused products that were not disclosed in plaintiff's contentions); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1119 (N.D. Cal. 2011); *Life Techs.*, 2012 WL 4097740, at *2 (striking portions of expert report relying on prior art references not disclosed in invalidity contentions); *Brilliant Instruments, Inc. v. GuideTech, Inc.*, No. 09-cv-05517 CW, 2011 WL 900369, at *2 (N.D. Cal. Mar. 15, 2011) (same); *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-cv-00852 WHA, 2012 WL 4097740, at *3-4 (N.D. Cal. Sept. 17, 2012) (same).

Patent Local Rule 3-1 requires that a party claiming patent infringement serve a "Disclosure of Asserted Claims and Infringement Contentions" not later than 14 days after the initial case management conference.  This disclosure must include "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. §271 asserted[.]"  Patent Local R. 3-1(a).  In addition, the disclosure must identify "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware."  Patent Local R. 3-1(b).  "This identification shall be as specific as possible."  *Id.*  "Each product, device, and apparatus shall be identified by name or model number, if known."  *Id.*  Patent Local Rule 3-1(c) requires a party claiming patent infringement to serve "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality . . . ."  If a party alleges its patent has been indirectly infringed, it must identify for each claim any direct infringement and describe the acts of the alleged indirect infringer that contribute to or induce the direct infringement.  Patent Local R. 3-1(d).  In addition, the party must disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."  Patent Local R. 3-1(e).

Patent Local Rule 3-3 requires parties accused of infringement to serve invalidity contentions. The invalidity contentions must identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious[.]" Patent Local R. 3-3(a). Invalidity contentions must contain information on "[w]hether each item of prior art anticipates each asserted claim or renders it obvious." Patent Local R. 3-3(b). "If obviousness is alleged," the invalidity contentions must contain "an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness . . . ." *Id*. The invalidity contentions must further contain "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found . . . ." Patent Local R. 3-3(c).

## DISCUSSION

**A. ASUS'S Motions to Strike**

    **i. Doctrine of Equivalents ("DOE")**

ASUS moves to strike portions of Taylor's and Afromowitz's expert reports that opine on the DOE based on three arguments: 1) that RR's infringement contentions state only boilerplate contentions that are insufficient to disclose its DOE theory; 2) that the DOE contentions are insufficient because they do not identify specific elements of allegedly infringing products that meet each claim under a DOE theory; 3) that the expert reports opine on new DOE theories all together. Dkt. No. 196 at 9. RR argues that its contentions were sufficient to put ASUS on notice that RR was pursuing a DOE theory, and that Judge Tigar already ruled that RR's infringement contentions sufficiently disclosed a DOE theory. The Court agrees with ASUS.

First, the Court finds that Judge Tigar's order denying summary judgment did not rule, as RR contends, that RR's infringement contentions sufficiently disclosed a DOE theory. Rather, that order denied summary judgment based on Federal Rule of Civil Procedure 56(d), finding the motion premature and explicitly declining to rule on the substance of the motion. Dkt. No. 112 at 3. Judge Tigar did allow RR to proceed in discovery based on a representative theory. *Id.* But contending that a group of uncharted

products infringes in the same manner as a charted product is not equivalent to contending that a product or group of products infringe based on the DOE.  A representative theory requires RR to demonstrate that an uncharted product infringes every accused claim of the patent in the same way as a charted product, whereas showing that a product infringes based on the DOE requires RR to demonstrate that a particular element of a product (charted or uncharted) "performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007); *see also Network Prot. Scis., LLC v. Fortinet, Inc.*, No. 12-cv-01106 WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013) (allowing representative charting and expert testimony supporting representative theory when expert stated "all versions of the code literally infringe all of the elements of the asserted claims.").

Here, RR may have sufficiently put ASUS on notice that it would seek to prove that the uncharted products infringe in the same way as the charted products, but that does not excuse RR for blanket contentions that do not sufficiently identify the DOE as the manner that the products infringe.  It is not sufficient in our District to simply "disclose 'whether' [the patentee] will assert a theory of infringement under the doctrine of equivalents." *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013).  Rather, in infringement contentions, "a party looking to rely on equivalents still has to *describe how* [the function/way/result] requirements are met." *Dynetix*, 2013 WL 4537838, at *1 (emphasis added).

RR did not sufficiently describe how, for each claim element, a component of a charted product performed the same function, in the same way, to achieve the same result. Instead, RR included placeholder language stating that "to the extent that any claim element is found not to be literally embodied in the Accused Instrumentalities, Round Rock contends that the Accused Instrumentalities embody such claim elements under the doctrine of equivalents." *See, e.g.*, Dkt. No. 196-7 at 3.  This is insufficient to assert a DOE theory,

and RR's experts cannot now articulate that theory at this late stage.[1] *See OptimumPath,*

*LLC v. Belkin Int'l, Inc.*, No. 09-cv-01398 CW, 2011 WL 1399257, at *8 (N.D. Cal. Apr.

12, 2011) *aff'd*, 466 F. App'x 904 (Fed. Cir. 2012) (finding that "blanket statements" which

failed to link similarities to particular claims or limitations in the relevant patent barred

claim under doctrine of equivalents); *CSR Tech. Inc. v. Freescale Semiconductor*, No. 12-

cv-02619 RS (JSC), 2013 WL 503077, at *8 (N.D. Cal. Feb. 8, 2013) (rejecting as

insufficient under Rule 3-1(e) plaintiff's "boilerplate recitation" that "functionality is at

most unsubstantially different from the claimed functionality"); *Implicit Networks Inc. v.*

*Hewlett-Packard Co.*, No. 10-cv-03746 SI, 2011 WL 3954809, at *3 (N.D. Cal. Sept. 7,

2011) (finding contentions must provide "specific analysis, on an element-by-element basis,

as to its theory of why there is infringement under the doctrine of equivalents."); *France*

*Telecom*, 2013 WL 1878912, at *5-6.

For this reason, the Court grants ASUS's motion to strike portions of the expert

reports of Taylor and Afromowitz opining on a DOE theory of infringement.

### ii.    Indirect Infringement

ASUS next argues that like the contentions regarding DOE, RR's contentions

asserting indirect infringement are boilerplate and RR now attempts to add new theories

through expert reports.  Dkt. No. 196 at 12.  The Court agrees and therefore grants the

motion to strike expert reports opining on indirect infringement.

A patentee cannot include a placeholder in its contentions that generally asserts

indirect infringement, and then later clarify the exact infringement theory through an expert

report.  *See Dynetix*, 2013 WL 4537838, at *1 (barring introduction of new theories through

expert reports).  Such a process would contravene our Local Rules, which require the

---

[1] To the extent that the infringement contentions are slightly more specific in asserting a DOE
theory for the '791 patent, those contentions still fail to meet the requirements of the Local Rules
because they do not identify how specific components of the Accused Instrumentalities infringe
under a DOE theory on a claim-by-claim basis. *See CSR Tech.*, 2013 WL 503077, at *9 (finding
DOE contentions insufficient because the contention "references the entire Accused Product, rather
than discrete components[.]").

parties to "crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments*, 417 F. Supp. 2d at 1123. In its infringement contentions, RR states that ASUS "actively, knowingly, and intentionally induced" third parties to infringe its patents by "selling or otherwise supplying" accused products, and by "the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information" related to the accused products. Dkt. No. 196-7 at 2. Such a broad contention could contemplate indirect infringement through sales of any number of products, with any number of components, to any number of customers. These type of boilerplate contentions are insufficient under the Local Rules. *See Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-cv-06635 LHK (PSG), 2012 WL 5389775, at *5 (N.D. Cal. Nov. 2, 2012) ("Although [plaintiff] is not obligated to identify the third-party infringers, it must still disclose how exactly it believes [defendant] indirectly or contributorily infringed."); *France Telecom*, 2013 WL 1878912, at *5 (contention stating a "bare-boned recitation of the essential elements of a claim for indirect infringement" was insufficient, because the Local Rules require "a description of the acts of the alleged indirect infringer"); *Bender v. Maxim Integrated Prods., Inc.*, No. 09-cv-01152 SI, 2010 WL 2991257, at *4 (N.D. Cal. July 29, 2010) (contention that defendant "teaches, instructs, and explains in its datasheets how to carry out acts of direct infringement" not sufficient where plaintiff "[did] not identify the data sheets or the specific products to which he refers.").

RR's experts now seek to clarify the indirect infringement theories through their reports. For example, Taylor's report opines that ASUS indirectly infringes by selling "server products that do not include DDR3 SDRAM memory modules as sold" and then directing "its customers through its server specification documents to incorporate the servers with DDR3 SDRAM." Dkt. No. 196-2 at ¶¶ 224, 227. Although RR did not need to provide detailed evidence in its infringement contentions supporting this theory of indirect infringement, it did need to specifically include the theory. It cannot clarify its theory at this late stage of the litigation through an expert report.

The Court therefore grants ASUS's motion to strike portions of the Taylor and Afromowitz's reports regarding indirect infringement.

### iii.    "Tran_Speed" and "Bus_Width Bit"

Next, ASUS moves to strike references in Taylor's report regarding "Bus_Width bit" and "TRAN_SPEED slice," arguing that these data elements were not previously identified in RR's infringement contentions as infringing elements and RR cannot now identify them through experts. Dkt. No. 196 at 9. The Court agrees.

In its infringement contentions, RR specifically identifies "a HS_TIMING bit" as the element that operates to infringe the '053 patent. Dkt. No. 196-7 at 8. Now, RR's experts identify "Tran_Speed" and "Bus_Width Bit" as being the elements that possibly operate in an infringing manner. Dkt. No. 258-5 at 110, 121. Although the infringement contentions include the term "BUS_WIDTH" in a copied and pasted chart, Dkt. No. 196-7 at 9, nowhere do the contentions explain this element or how it infringes a claim in the '053 patent. RR cannot now litigate a theory that the claim limitation reads on these two elements, and ASUS's motion to strike references to "Tran_Speed" and "Bus_Width Bit" is therefore granted. *See Dynetix*, 2013 WL 4537838, at *1 (finding a "separate feature" of an identified instrumentality could not be added on the eve of trial).

### iv.    Infringement Under Section 271(g)

ASUS next moves to strike testimony regarding ASUS's alleged infringement under section 271(g). Dkt. No. 196 at 21. ASUS argues that, because RR contended that third parties—but not ASUS—infringed under § 271(g), RR's expert cannot now opine as to whether ASUS itself infringed under § 271(g). The Court agrees with ASUS. The Local Rules require the patentee to assert how "each opposing party" infringes each claim, "including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted." Patent Local R. 3-1. Asserting that a non-party infringed based on § 271(g) is not sufficient to assert that a different party infringed under that section. RR's infringement contentions did not put ASUS on notice that RR would allege ASUS itself infringed under this section, and RR's expert cannot now raise that theory. The Court therefore strikes testimony

1  regarding ASUS's alleged infringement under § 271(g).

2      **v.    Incorrect Claim Construction for BARC Limitation**

3          ASUS seeks to strike Afromowitz's opinions relating to the BARC limitation of the

4  '276 patent because ASUS contends that Afromowitz applied the wrong claim construction,

5  making his opinions irrelevant and unreliable. Dkt. No. 196 at 20-21. ASUS argues that

6  Afromowitz relied on RR's earlier proposed construction of BARC ("a coating that has an

7  index of refraction, an extinction coefficient, and a thickness"), which RR later abandoned

8  in favor of ASUS's proposed construction ("a coating that is disposed between a patterning

9  resist layer and underlying reflective structures to enhance control of critical dimensions in

10 the patterning resist layer by suppressing reflective notching, standing wave effects, and the

11 swing ratio caused by thin film interference."). *Id.* at 20. In response, RR contends that

12 Afromowitz's opinions about the BARC limitation are relevant and reliable because: 1) the

13 Court never adopted ASUS's claim construction; and 2) Afromowitz stated that his opinion

14 would not change even if he adopted ASUS's claim construction. Dkt. No. 222-3 at 19-20.

15 The Court agrees with RR.

16         Under the Federal Rules of Evidence, expert testimony is only admissible if it is

17 relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

18 "[E]vidence based upon a mistaken construction of a patent is irrelevant." *Chicago*

19 *Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 782 F. Supp. 2d 667, 673 (N.D. Ill.

20 2011). It is therefore appropriate to exclude expert opinion based on an incorrect claim

21 construction. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2

22 (Fed. Cir. 2006) (holding that district court did not abuse its discretion by excluding expert

23 testimony based on an incorrect claim construction); *Hochstein v. Microsoft Corp.*, No.

24 04-cv-073071 PDB, 2009 WL 2022815, at *1 (E.D. Mich. July 7, 2009) (excluding expert

25 testimony based on incorrect claim construction).

26         Although Afromowitz states that he agrees with RR's proposed construction, he

27 recites ASUS's proposed claim construction and expressly states that "[t]o the extent the

28 Court adopts ASUS's proposed construction for any of the above terms, that construction

Case No. 12-cv-02099 JST (NC)
ORDER ON MOTIONS TO STRIKE          9

would not change my opinion that the accused ASUS products infringe the '276 patent."
Dkt. No. 197-6 at ¶ 38. Even if RR agreed to use ASUS's proposed claim construction,
Afromowitz's opinion is relevant because he expressly considered ASUS's proposed claim
construction when he formed his opinion. The Court therefore denies ASUS's motion to
strike Afromowitz's opinions relating to the BARC limitation of the '276 patent.

### vi.   Theories New to Proposed Supplemental Contentions

When ASUS moved to strike infringement opinions in Taylor and Afromowitz's
reports that relate to theories first introduced in RR's proposed supplemental contentions,
the Court had not yet ruled on RR's motion to amend its infringement contentions. Dkt.
Nos. 155; 196 at 22; 212. The Court has since denied RR's motion. Dkt. No. 212. Because
the parties have not briefed the issue and ASUS has not identified which portions of the
reports should be stricken based on denial of the motion for leave to amend the
infringement contentions, the Court is not in a position to rule on this portion of ASUS's
motion to strike. The Court therefore denies the motion without prejudice.

### vii.   Expert Testimony Based on New Reverse Engineering Reports

ASUS moves to strike expert testimony regarding new reverse engineering reports for
image sensors, as part of the discussion of the '276 and the '353 patents. Dkt. No. 196 at
11. ASUS claims that because these image sensors were not reverse engineered in the
initial infringement contentions, including that evidence now is akin to introducing a new
theory of infringement. The Court disagrees with ASUS.

RR must be permitted to provide evidence supporting its argument that the uncharted
products infringe in the same way as the charted products. ASUS points to several
differences between the alleged manner of infringement for the newly reverse engineered
sensors, and the originally charted sensors. *Id.* ASUS should direct these arguments to
Judge Tigar or the jury. Whether RR can prove the representative nature of infringement,
i.e., that the products containing newly reverse engineered sensors infringe in the same
manner as the charted products, is a matter to be determined at summary judgment or trial.
Alleged differences between the charted and uncharted products are not a reason to strike

evidence regarding the uncharted products.

### viii. Taylor Opinions Based on Third Party Documents Not Produced

ASUS next moves to exclude testimony regarding Kingston documents that RR admits it inadvertently withheld during discovery. *Id.* When a party fails to produce discovery as required, his opponent may move to strike references to the undisclosed discovery based on Federal Rule of Civil Procedure 37. On such a motion, "[t]he violating party . . . has the burden of proving substantial justification and lack of prejudice." *Nesby v. City of Oakland*, No. 05-cv-03555 JL, 2006 WL 3388629, at *2 (N.D. Cal. Nov. 22, 2006). Here, although RR alleges that some of the documents withheld are identical to documents already in ASUS's possession, they have not demonstrated that *every* undisclosed Kingston document was already in ASUS's possession. Similarly, although ASUS's expert testified regarding some of the Kingston documents, ASUS states that had it received the Kingston documents sooner, it could have "conducted discovery of Kingston with respect to the circuits discussed in the documents to test whether the various options are actually implemented in the relevant components." Dkt. No. 258-4 at 16. RR has not met its burden of demonstrating that its withholding of the Kingston documents was justified or will not prejudice ASUS. Therefore, the Court grants ASUS's motion to strike references in RR expert reports regarding the withheld Kingston documents. The Court finds it appropriate and fair to also exclude references to the withheld documents in ASUS's rebuttal expert report.

### ix. Taylor and Yurkerwich Testimony Based on Newly Identified Infringing Products

ASUS moves to strike references in the expert reports of Taylor and Yurkerwich to allegedly infringing products that ASUS claims were not specifically identified in RR's infringement contentions. Dkt. No. 330-3. RR argues that all the products at issue were identified in the infringement contentions because: 1) RR identified products that include DDR3 memory; 2) RR identified products that have different names but are substantially similar to other identified products; or 3) RR identified specific series of infringing ASUS

Case No. 12-cv-02099 JST (NC)
ORDER ON MOTIONS TO STRIKE          11

products.

The Court finds that identifying products "that include DDR3 SDRAM memory" or otherwise practice the JEDEC standard is not sufficient to specifically identify products that may fall into those categories.  Although identifying that a component practices a standard may be useful for proving an infringement theory across several products that contain that component, identifying a standard is not sufficient to specifically name an accused product. *See Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (finding that accusing all products running Android did not specifically identify products, because "[r]epresentative examples may be a useful tool for proving an infringement case at trial, but a full list of accused products must be disclosed as part of a party's infringement contentions.").

The Local Rules place the burden on the patentee to specifically identify accused products for each claim.  The Rule requires that "[t]his identification shall be as specific as possible.  Each product, device, and apparatus shall be identified by name or model number, if known."  Patent Local R. 3-1(b).  RR does not assert that it could not have specifically identified ASUS products it alleges contain DDR3 memory in the initial infringement contentions, which appear for the first time in Taylor and Yurkerwich's expert reports. Although RR argues that identifying the standard was sufficient to put ASUS on notice of the accused products practicing the standard, the Local Rules required RR to do the work of identifying those products.  *See Oracle Am.*, 2011 WL 4479305, at *2 ("Even if it would have been easy for Google to compile an accurate list of all the devices Oracle considered to be Android devices, Rule 3-1(b) required Oracle to provide such a list in its disclosure of infringement contentions."); *see also EON CorpIP Holding LLC v. Spring Spectrum, L.P.*, No. 12-cv-01011 JST, 2014 WL 1022536, at *3 (N.D. Cal. Mar. 13, 2014) ("The Local Patent Rules do not tolerate broad categorical definitions.").  ASUS's motion to strike references to newly accused products that RR alleges were identified as practicing the JEDEC standard is therefore granted.

Similarly, the Court finds that identifying a product that has a different name, but

which RR claims is substantially similar to a named product, is not sufficient identification under the Local Rules.  RR points to evidence showing that the EP101, TF201, and the TF300TL have the same components or are otherwise similar to products identified in the infringement contentions.  RR provides no explanation for why it did not specifically identify these three products and, for the same reasons as discussed above, RR cannot now accuse these newly identified products through expert reports.  The Court therefore strikes the portions of the expert reports referencing allegedly infringing products that have different names, but which RR claims are substantially similar to a named product.

Finally, the Court finds that although somewhat more specific than identifying a product based on practicing a standard, RR's identification of a "series" of products was not sufficient under the Local Rules to identify the products within a series, as the infringement contentions did not identify each accused product as specifically as possible.

No court appears to have answered whether identifying a line or series of products is sufficient to identify the products within that series, although several cases have discussed infringement contentions identifying series of allegedly infringing products without directly addressing the issue.  *See DCG Sys. v. Checkpoint Techs.*, LLC, No. 11-cv-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (finding infringement contentions sufficiently identified infringement theory as to the "Checkpoint 300-Series"); *Elantech Devices Corp. v. Synaptics, Inc.*, No. 06-cv-01839 CRB, 2007 WL 3256229, at *2 (N.D. Cal. Nov. 5, 2007) (infringement contentions accused "TM41 series of touchpad devices"); *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1354 (Fed. Cir. 2008) (infringement contentions charted "five accused Osram product lines").  These cases do not discuss whether the series was a single product or multiple products, whether the patentee identified the products within that series or line in its infringement contentions, or whether the patentee could not have more specifically identified the products within the series.

Here, RR's list of Accused Instrumentalities itself demonstrates that naming a "series" of products was not identification that was "as specific as possible" for "[e]ach product, device, and apparatus" as required by the Local Rules.  Patent Local R. 3-1(b).  For

some series, next to the series name RR more specifically identified, by model number, certain products within the series.  For example, for the "N61 Series," RR more specifically identified in a parenthetical four devices within that series, "(N61DA; N61Ja; N61Jq; N61Jv)."  Dkt. No. 223-4 at 4.  But now, RR's expert opines on the N61V product, which was not specifically identified.

RR does not even argue, yet alone demonstrate, that at the time it served its infringement contentions it was unable to identify more specifically products within the product series, and the Court will not make that assumption.  Even if RR did not know at the time of serving its contentions about the specific model numbers of products within the series, it should have amended its contentions to add this information once ASUS provided discovery for these products and the specific model became known to RR.  *See Dynetix*, 2013 WL 4537838, at *1 (stating "if our local rules are to have any teeth, [infringing products or theories] must be adequately disclosed and supplemented along the way, should new evidence arise in discovery.").  It was not unreasonable for ASUS to believe that only those products specifically identified in parentheticals by model number, organized by series, were the accused products.  ASUS would be prejudiced by adding new products into the case at this late stage, and RR has not demonstrated that its failure to name the products was justified.  The Court therefore grants ASUS's motion to strike products within a series not specifically identified by model number.

**B.   RR's Motion to Strike**

   **i.   Baker's Reports on Prior Art and Invalidity Theories Not Disclosed in Contentions**

RR moves the Court to strike portions of Baker's reports that rely on prior art and invalidity theories not disclosed in ASUS's invalidity contentions.  Dkt. No. 246-3 at 16.  RR alleges that ASUS's invalidity contentions did not disclose the following references: Robinson for the '053 patent; Wolf, Pike, and Gehoel for the '276 patent; Wolf for the '353 patent; JESD79R1 and Atsumi for the '791 patent; JESD79R1, Item 1198 at Meeting 96, and Li for the '949 patent.  Dkt. No. 246-3 at 16.

At the hearing, counsel for ASUS indicated that new information may appear in its expert reports because ASUS did not yet know the scope of the infringement contentions, as the Court had not ruled on RR's motion to amend or ASUS's first motion to strike. ASUS provided the Court with a chart listing those references that ASUS would agree to strike if the Court were to apply the Local Rules to limit RR's newly disclosed theories. Dkt. No. 301-1. The Court orders all references stricken as agreed by ASUS in Dkt. No. 301-1. The Court addresses only those references and theories that appear to still be in dispute.

### a) New References

#### 1. Robinson for the '053 Patent

RR moves to strike the portions of Baker's report on the invalidity of the '053 patent that rely on Robinson because Robinson was not disclosed in ASUS's Invalidity Contentions. Dkt. No. 246-3 at 16. ASUS concedes that Robinson was not disclosed in its Invalidity Contentions, but contends that RR's motion is moot because ASUS does not rely on Robinson to support its invalidity case. Dkt. No. 274-3 at 11 n.8. Regardless of whether ASUS is relying on Robinson for its invalidity case, the Court finds that Robinson was not disclosed in ASUS's Invalidity Contentions but is repeatedly referenced in Baker's report on the invalidity of the '053 patent. Dkt. Nos. 246-6, 247-7. The Court therefore strikes the portions of Baker's report that rely on Robinson.

#### 2. Wolf, Pike, and Gehoel for the '276 Patent; Wolf for the '353 Patent

RR moves to strike the portions of Baker's report on the '276 patent that rely on Wolf, Pike, and Gehoel, as well as the portions of Baker's report on the '353 patent that rely on Wolf, because those references were not disclosed in ASUS's Invalidity Contentions. Dkt. No. 246-3 at 10-11. ASUS argues that the Court should not strike expert opinion relying on Wolf because Baker only relied on Wolf as "evidence of the knowledge of one of skill in the art at the time of the invention" and "evidence that planarization techniques were well known in the art." Dkt. No. 274-3 at 9-10. ASUS does not dispute that Pike and Gehoel were not disclosed in its Invalidity Contentions. Rather, ASUS argues that Baker's

reliance on those references will not prejudice RR because ASUS identified those references in its responses to interrogatories. *Id.* at 11-12.

Because Wolf was not disclosed in ASUS's Infringement Contentions, the Court strikes Baker's report to the extent that Baker relied on Wolf as an anticipation or obviousness reference. However, Baker may use Wolf for other purposes, e.g., to show the knowledge of a PHOSITA. *See Brilliant Instruments*, 2011 WL 900369, at *2 (striking portions of expert report relying on undisclosed prior art only to the extent that the reference was used as anticipatory prior art).

Because ASUS did not disclose Pike in its Invalidity Contentions, the Court strikes the portions of Baker's report that use Pike as an anticipation or obviousness reference. ASUS had a duty to amend its Invalidity Contentions, and it did not discharge that duty by disclosing Pike and Gehoel in its discovery responses. *Volterra Semiconductor*, 796 F. Supp. 2d at 1119 ("[T]he fact that Defendants may have produced some of the prior art references in discovery or disclosed them in expert reports does not excuse Defendants from their obligation to amend their invalidity contentions under the Patent Local Rules.").

### 3. JESD79R1 and Atsumi for the '791 Patent; JESD79R1, Item 1198 at Meeting 96, and Li for the '949 Patent

RR moves to strike the portions of Baker's report on the '791 patent that rely on JESD79R1 and Atsumi, as well as the portions of Baker's report on the '949 patent that rely on JESD79R1, Item 1198 at Meeting 96, and Li because ASUS did not disclose those references in its Invalidity Contentions. Dkt. No. 246-3 at 11. ASUS does not dispute that it did not disclose JESD79R1, Item 1198 at Meeting 96, and Li. Instead, ASUS argues that RR was aware of these references because ASUS used JESD79R1 as extrinsic evidence in claim construction, JESD79R1 is the standard that the '949 patent is based on, RR and ASUS both became aware of Item 1198 when they were produced by JEDEC, and Li is incorporated by reference into the '949 patent itself. Dkt. No. 274-3 at 11. ASUS concedes that Atsumi was not disclosed in its Invalidity Contentions, but argues that RR's objections are moot because ASUS is not relying on Atsumi to prove invalidity. *Id.*

Because ASUS did not disclose JESD79R1 and Atsumi in its Invalidity Contentions, the Court grants RR's motion to strike the portions of Baker's reports that rely upon those references to opine that the '791 patent is invalid. *See Volterra Semiconductor*, 796 F. Supp. 2d at 1119.

**b)     New Anticipation and Obviousness Theories or Combinations**

RR alleges that Baker presented anticipation theories and obviousness combinations not disclosed in ASUS's invalidity contentions.  Dkt. No. 246-3 at 16-17.  The Court considers RR's arguments in turn.

**1.     The '276 Patent**

RR moves to strike the portions of Baker's report that opine that Chen-981 and Fossum anticipate the '276 patent because ASUS's Invalidity Contentions allegedly did not disclose that anticipation theory. *Id.* at 10.  ASUS argues that its Invalidity Contentions did disclose an anticipation theory based on Chen-981 because ASUS provided a chart showing where in Chen-981 each limitation of the '276 patent is found.  Dkt. No. 274-3 at 7-8.

The Court agrees with ASUS.  ASUS's Invalidity Contentions do in fact show where in Chen-981 each limitation of claim 1 of the '276 patent is found, which adequately identifies the "item of prior art that allegedly anticipates each asserted claim . . . , [indicates] [w]hether each item of prior art anticipates each asserted claim . . . . [and identifies] where specifically in each alleged item of prior art each limitation of each asserted claim is found[.]"  Patent Local R. 3-3.  The Court therefore denies RR's motion to strike Baker's anticipation opinions based on Chen-981.

As to Fossum, ASUS argues that Baker did not opine that Fossum anticipates the '276 patent, but instead said that Fossum "discloses and/or renders obvious each *limitation* of claims 1, 3, 5, 8, 9, and 11."  Dkt. No. 274-3 at 8.  Even if the Court adopted ASUS's distinction between anticipating a claim and disclosing each limitation in a claim, Fossum's opinion is not supported by ASUS's Invalidity Contentions, which do not list Fossum as a reference for each claim limitation.  Dkt. No. 247-4 at 9.  The Court therefore strikes portions of Baker's report to the extent that Baker opines that Fossum anticipates the '276

1   patent.  To the extent that ASUS did not list Fossum as a reference for particular limitations

2   of claim 1, Baker's report may not opine that Fossum discloses those limitations, and the

3   Court therefore strikes those portions of the report.

### 2.      The '353 Patent

5   RR moves to strike Baker's opinions on the invalidity of the '353 patent based on

6   AAPA-353 in view of Wolf.  *Id.*  As discussed above, the Court strikes Baker's opinions to

7   the extent that they use Wolf as an obviousness reference because Wolf was not disclosed in

8   ASUS's Invalidity Contentions.

### 3.      The '949 Patent

10  RR moves to strike portions of Baker's report opining that JESD79R1 anticipates the

11  '949 patent, Li anticipates the '949 patent, and Item 1198 at Meeting 96 renders the '949

12  patent obvious in view of JESD79R1.  *Id.* at 17.  As discussed above, because these

13  references were not disclosed in ASUS's Invalidity Contentions, the portions of Baker's

14  report that rely on these references are stricken.

15  RR moves to strike Baker's opinion that Dodd renders the '949 patent obvious in

16  view of JESD79R1, Miki, Li, Delaluz, Volk, and AAPA-939; Delaluz renders the '949

17  patent obvious in view of JESD79R1, Miki, and the AAPA-949; and Volk renders the '949

18  patent obvious in view of JESD79R1, Miki, and the AAPA-949.  *Id.*  Because ASUS's

19  Invalidity Contentions only disclose Dodd, Delaluz, and Volk as anticipation references, the

20  Court strikes the portions of Baker's report that use those references in obviousness

21  combinations.

### 4.      The '791 Patent

23  RR moves to strike Baker's opinions that Mills renders the '791 patent obvious in

24  view of Atsumi, Lee, and JESD79R1; Choi renders the '791 patent obvious in view of Lee

25  and JESD79R1; and Hwang renders the '791 patent obvious in view of Atsumi, Lee, and

26  JESD79R1.  *Id.*  Because ASUS's Invalidity Contentions did not disclose those obviousness

27  combinations, the Court strikes Baker's opinions based on those combinations.

28

1
2

### ii. Baker's Report Based on Undisclosed Technical Documents and Reverse Engineering Report

3    RR next moves to strike portions of Baker's expert report that rely on technical

4  documents and a Chipworks image sensor testing report that ASUS did not produce during

5  discovery. Dkt. No. 246-3 at 18.

6    As for the Chipworks image sensor engineering report, the Court grants RR's motion

7  to strike portions of Baker's report referring to or relying upon the engineering report.

8  ASUS admits that the document was relevant and that it did not produce this report until it

9  served Baker's report. Dkt. No. 274-3 at 4. ASUS's justification is that the report was

10  attorney work product until ASUS decided to waive the privilege. Even assuming, without

11  deciding, that the report was protected as attorney work product, the Court finds that ASUS

12  waived the privilege when it used portions of the report at the Rhodes deposition. *See*

13  *Ampa Ltd. v. Kentfield Capital LLC*, No. 00-cv-00508 NRB (AJP), 2000 WL 1156860, at

14  *1 (S.D. N.Y. Aug. 16, 2000). ("Ampa's counsel waived any privilege in the Gross letter

15  when he marked it as an exhibit at a deposition he was conducting and asked a question

16  about it."). ASUS should have produced the report to RR at that time. Instead, ASUS

17  refused to answer questions regarding the origins of the documents at the deposition, and

18  provided portions of the report that did not include any identifying information. Dkt. No.

19  246-12 at 26:18-27:9. ASUS thus effectively blocked RR from conducting discovery

20  regarding the image sensor report. ASUS was not permitted to lie in the weeds with the

21  report and turn it over at the time it found preferable, despite having evidenced a clear

22  intention to rely on the report as early as the Rhodes deposition. Therefore, the Court grants

23  RR's motion to strike the portions of Baker's report that reference or rely upon the

24  Chipworks image sensor report.

25    Similarly, ASUS admits the relevance and responsiveness of the NVIDIA Tegra 2

26  manual that its expert references, despite ASUS not having identified or produced the

27  manual to RR prior to serving its expert reports. Dkt. No. 274-3 at 6. As discussed earlier

28  when analyzing ASUS's motion to strike based on withheld documents, on a Rule 37

motion, "[t]he violating party . . . has the burden of proving substantial justification and lack of prejudice." *Nesby*, 2006 WL 3388629, at *2 (citations omitted).  ASUS has not met its burden.  ASUS does not explain why it could not have identified or produced the document sooner, and RR has shown it was prejudiced by the late disclosure.  References to this document are therefore stricken.

### iii.    Ugone's Report based on Facts Withheld on Privilege

RR moves to strike portions of the expert report of Dr. Keith Ugone, ASUS's damages expert, which relied on information that ASUS previously withheld on the basis of privilege.  Dkt. No. 246-3 at 20.  In the deposition of ASUS employee Jacky Lu, ASUS objected on privilege grounds when RR attempted to ask Lu about the factors that ASUS considers when entering into patent license agreements.  *See* Dkt. No. 246-9.  But in Ugone's report, it is clear that Lu shared that privileged information with Ugone, as Ugone references in his expert report the conversations that he had with Lu on this topic.  *See* Dkt. No. 246-8.  RR therefore claims that it is prejudiced by ASUS sharing the information with its expert, but not allowing RR to question Lu on the same topic.

ASUS does not deny that Ugone references information that it previously withheld on privilege grounds.  Instead, ASUS argues that the prejudice to RR is minimal because Ugone did not exclusively rely on information obtained from Lu in reaching any of his conclusions, and that whatever prejudice exists can be cured by allowing RR a further deposition of Lu on this topic.  The Court agrees with ASUS.  After reviewing Ugone's report, it appears that Ugone had several bases for reaching each of his conclusions, and did not rely exclusively on the information gathered from Lu.  Nonetheless, Ugone did rely on this information to some extent, and therefore some prejudice remains because RR was denied a fair opportunity during discovery to explore this issue with Lu.  The Court therefore orders ASUS to provide Lu for a further deposition, to be held in the Bay Area and not to exceed two hours, on the subject of ASUS's negotiation of patent licenses.  The Court notes that it is very late in the game for depositions to take place, and the parties must therefore complete this additional deposition within 14 days of this order.  If RR wishes to

Case3:12-cv-02099-JST   Document374   Filed04/11/14   Page21 of 21

amend its expert reports based on the information it obtains from Lu, it must do so within 7 days of receipt of the deposition transcript.

## CONCLUSION

The Court grants in part and denies in part each party's motion to strike portions of expert reports, as discussed above.  Because the parties did not provide the Court with a list of the paragraphs or lines of reports that they seek to strike, organized argument by argument, the Court is not in a position to order the specific paragraphs to be stricken.  The parties must immediately exchange their expert reports redacted to comply with this order. If the parties cannot agree as to the portions that should be stricken based on this order, then they must submit a joint letter brief to the undersigned judge, within 7 days of this order, explaining the disagreement and including each party's list of proposed paragraphs or lines of expert reports to be stricken, organized by argument, as set forth in this order.  The Court recognizes that this is a tight time frame, but finds it necessary based on the stage of this litigation.  The parties are encouraged to take reasonable positions and come to an agreement as to the sections to be stricken.

Any party may object to this order to Judge Tigar within 14 days.  Fed. R. Civ. P. 72(a).

IT IS SO ORDERED.

Date:  April 11, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 12-cv-02099 JST (NC)
ORDER ON MOTIONS TO STRIKE          21